IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NOKIA CORPORATION, | |
| Plaintiff, | |
| v. | C.A. No. 09-791-GMS |
| APPLE INC., | |
| Defendant. | |
| APPLE INC., | |
| Counterclaim-Plaintiff, | |
| v. | |
| NOKIA CORPORATION and NOKIA INC., | |
| Counterclaim-Defendants. | |

**JOINT STATUS REPORT**

In accordance with the Court's March 2, 2010 Order Scheduling Rule 16 Teleconference (D.I. 22), counsel for Nokia Corporation and Nokia Inc. (collectively "Nokia") and counsel for Apple Inc. ("Apple") submit this Joint Status Report in preparation for the Status and Scheduling Conference on March 12, 2010 at 2:45 p.m.

**I.      JURISDICTION AND VENUE**

The parties agree that the Court has jurisdiction over the subject matter of, and the parties to, this action, and that venue is proper in this Court.  All parties have been served.  However, to the extent Apple seeks a declaration regarding the validity, infringement, essentiality, or appro-

priate FRAND compensation for patents Nokia has not accused Apple of infringing in this litigation, Nokia denies that the Court has jurisdiction over such claims.

## II.   SUBSTANCE OF ACTION

### A.   Nokia's Position

Nokia filed this action on October 22, 2009 against Apple, charging Apple with infringement of ten Nokia U.S. patents:  5,946,651; 5,802,465; 5,862,178; 6,359,904; 6,694,135; 6,775,548; 6,882,727; 7,009,940; 7,403,621; 7,092,672 (the "Nokia patents").  (D.I. 1).  The accused Apple products include Apple's iPhone, iPhone 3G, and iPhone 3GS.  Nokia has declared the Nokia patents as essential to certain wireless standards and is requesting FRAND compensation for Apple's alleged infringement.

Apple filed an Answer and Counterclaims on December 11, 2009 denying infringement and asserting counterclaims against Nokia alleging infringement of thirteen Apple patents, violations of the California Unfair Competition Statute § 17200, breach of contract, promissory estoppel, and various declaratory relief.  (D.I. 14).  On February 19, 2010, Apple amended its Answer and Counterclaims, dropping allegations of infringement of four Apple patents, dropping its California § 17200 claim, and adding a Sherman Act § 2 antitrust claim.  There are currently nine Apple patents for which Apple is currently alleging infringement:  5,634,074; 5,555,369; 6,239,795; 5,315,703; 6,189,034; 7,469,381; 5,455,854; 7,383,453; and 5,848,105 (the "Apple patents").

On March 11, 2010, Nokia will respond to Apple's counterclaims with a motion seeking dismissal of Apple's non-patent claims for failure to state a claim upon which relief can be granted.

***Response to Apple's Position Set Forth Below***.  Nokia believes that the third and fourth paragraphs of Apple's description of the case are not appropriate for this joint status report. They are not a description of the substance of the action, but unsupported attorney argument about Apple's contentions.  Nokia strongly disagrees with Apple's baseless allegations, which appear to be an attempt to draw attention away from the fact that Apple is using Nokia's patented technology without paying for it—which was of course the basis for this action.  Nokia will address the lack of merit in Apple's non-patent claims in its forthcoming motion to dismiss those claims.

### B.      Apple's Position

Apple asserts counterclaims against Nokia for willful infringement of nine Apple patents covering a wide-range of Apple technology.  Nokia is infringing the Apple patents-in-suit in numerous products, including, for example, Nokia products having USB functionality; Carbide.c++, applications developed using Carbide.c++, and phones having applications developed using Carbide.c++; Nokia handsets using the Series 40, S60, Maemo, and/or Symbian platforms; and Nokia handsets having GSM functionality.

Apple also asserts counterclaims against Nokia for breach of contract, promissory estoppel, and for violation of Section 2 of the Sherman Act, as well as claims for declaratory relief, including a judicial declaration that Nokia has misused its purported standards-essential patents. These claims arise out of a wrongful course of conduct whereby Nokia, in order to convince standards setting organizations ("SSOs") to adopt its technologies, both promoted its technologies to the SSOs without disclosing its claimed intellectual property rights ("IPR") in those technologies, and, when it did disclose its IPR, falsely promised to license its patented technologies on fair, reasonable and nondiscriminatory ("FRAND") terms.

Apple also makes the following allegations arising out of the binding commitments that Nokia made to SSOs to grant FRAND terms to all implementers of the standards.  Apple asserts that instead of honoring those commitments, Nokia demanded exorbitant royalties and insisted without justification that Apple grant Nokia a license to "picks" of Apple's proprietary, non-standards-essential technologies.  Nokia's demands were neither fair nor reasonable because, among other reasons, Nokia demanded a royalty rate based on a percentage of the full sales price of the iPhone as a complete unit, even though the phone is only one function performed by the device and the phone feature alone does not drive consumer demand.  In addition, Nokia refused to provide information even on an anonymous basis concerning its other licenses of purported standards-essential patents, depriving Apple of the ability to negotiate nondiscriminatory terms.  Accordingly, Nokia's refusal to offer Apple a license on FRAND terms to the patents it claims are standards-essential constitutes a breach of contract.

In addition, Apple alleges that Nokia's course of misconduct in connection with its IPR violates Section 2 of the Sherman Act.  Apple asserts that by concealing its IPR during the standards-setting process and by making false FRAND commitments, Nokia wrongfully acquired monopoly power in the markets for each of the technologies purportedly covered by Nokia's patents and incorporated into the relevant standards.  Before the standards were implemented, alternatives were competing to perform the various functions covered by Nokia's purported essential patents.  Had the SSOs known that Nokia had patent applications covering various technologies it was promoting for adoption into the standards or that Nokia's FRAND promises were false and that it did not intend to offer FRAND rates to all implementers of the standards, the SSOs would not have included Nokia's technology in the standard.  Instead, the SSOs would have selected other alternative technologies to cover the functionality or would not have included those

functionalities at all, particularly where many were *de minimis* modifications.  Nokia abused its

wrongfully obtained monopoly power when it refused to grant Apple FRAND terms for its li-

cense.  Nokia further abused its power by suing Apple for patent infringement, even though Ap-

ple has a license to Nokia's standards-essential patents as a matter of law as a result of Nokia's

FRAND commitments, and Nokia's only remedy – as Nokia itself has asserted in other litigation

– is to seek FRAND royalties.  As a result of Nokia's Sherman Act violations, Apple has sus-

tained damages including, without limitation, the costs of defending this baseless infringement

action.

Finally, Apple seeks judicial declarations that Nokia has not offered Apple FRAND

terms; that Nokia is not entitled to injunctive relief in connection with its infringement action

against Apple; and that Nokia's misconduct in connection with its purported standards-essential

patents constitutes misuse of those patents, rendering them unenforceable.

## III.   IDENTIFICATION OF ISSUES

### A.   Nokia's Position

The issues to be decided in this action include the following:

**1.   Apple's alleged infringement of the Nokia patents.**

1.   The validity of the Nokia patents.

2.   The amount of FRAND compensation allegedly owed to Nokia by Apple for in-

fringement of the Nokia patents, and any other appropriate relief.

3.   Whether Apple's Amended Answer and Counterclaims states a claim for violation

of section 2 of the Sherman Act.

4.   Whether Apple's Amended Answer and Counterclaims states a claim for breach

of contract.

5.      Whether Apple's Amended Answer and Counterclaims states a claim for promissory estoppel.

6.      Whether Apple's various requests for declaratory relief improperly overlap Apple's substantive claims.

7.      Nokia's alleged infringement of the Apple patents.

8.      The amount of damages under the U.S. Patent Act allegedly owed to Apple by Nokia.

9.      Whether injunctive relief against Nokia is available based on its alleged infringement of the Apple patents.

**B.      Apple's Position**

The issues to be decided in this action include the following:

1.      Whether any party infringes or has infringed any of the patents-in-suit.

2.      Whether any infringement by Nokia has been willful.

3.      Whether each of the patents-in-suit is valid and enforceable.

4.      Whether any party is entitled to prevail on any affirmative defense.

5.      The amount of any party's damages for any infringement of any valid and enforceable claim.

6.      Whether any party is entitled to attorneys' fees and costs pursuant to 35 U.S.C. § 285.

7.      Whether Nokia has breached its FRAND commitments by refusing to offer Apple FRAND terms to license patents Nokia claims are essential to various standards.

8.      Whether Nokia is estopped from not honoring its promises to various SSOs that it would license its purported essential patents on FRAND terms.

9.    Whether Nokia willfully acquired and/or maintained monopoly power as a result of its wrongful course of conduct including conduct before SSOs.

10.    Whether Apple has suffered antitrust injury as a result of Nokia's unlawful monopolization.

11.    What terms would satisfy Nokia's obligation to provide Apple with a FRAND license for Nokia's purported standards-essential patents.

12.    Whether, as a result of Nokia's FRAND commitments, its remedy is limited to seeking a FRAND royalty.

13.    Whether Nokia's conduct before standards-setting organizations constitutes misuse of its purported standards-essential patents.

## IV.    NARROWING OF ISSUES

### A.    Nokia's Position

The dispute between the parties is principally one involving alleged infringement of nineteen patents.  On March 11, 2010, Nokia will move to dismiss Apple's non-patent counterclaims for failure to state a claim.  These non-patent claims by Apple are neither well-founded nor well-pled.  These non-patent claims are unnecessary and antithetical to an efficient resolution of the actual dispute between the parties.  The granting of Nokia's motion to dismiss would properly focus this case and allow it to be efficiently resolved.  If the Court denies Nokia's motion to dismiss, Nokia may seek to amend its Complaint to add non-patent claims similar in nature to those asserted by Apple.

For efficient trial management, Nokia believes that there should be separate trials. Nokia's patent claims should be tried first, followed by Apple's patent claims and any remaining non-patent claims.  Each party's patent claims relate to distinct technology and varying accused

products, which do not provide for an efficient single trial on all issues.  As plaintiff, Nokia's claims should be tried first.

Apple proposes that its contractual claims (three of its thirty-five) counterclaims be tried first.  This approach does not make sense for several reasons.  First, it ignores the fact that those claims will be subject to a motion to dismiss.  There is no reason to expedite proceedings on claims that may well be resolved through Nokia's motion.  Second, if any of Apple's non-patent claims survive Nokia's motion to dismiss, resolution of those claims first will not streamline the case or focus resolution of any remaining issues.  This dispute is about patent infringement and Apple's refusal to compensate Nokia for Apple's use of Nokia's patented technology.  Apple's contractual claims are essentially defenses to Nokia's patent infringement claims and will, at most, determine the amount of damages owed by Apple to Nokia if Nokia prevails on its claims of patent infringement.  However, the Court should first determine Apple's liability before trying the damages resulting from that liability.  Moreover, Nokia disagrees with Apple's characterizations of Nokia's positions in prior litigation.

### B.    Apple's Position

Apple disputes Nokia's allegations that its counterclaims are not "well-founded."  First, Nokia has asserted nearly identical claims to those asserted here by Apple in Nokia's prior litigation against Qualcomm, Inc. in the Delaware Chancery Court (*Nokia Corporation, et al. v. Qualcomm, Inc.,* Civil Action No. 2330-N), and in prior litigation against Interdigital Technology Corp. (*In the Matter of Certain 3G Mobile Handsets and Components Thereof*, International Trade Commission Inv. No. 337-TA-613).  Indeed, Nokia reveals its true understanding of the strength of Apple's counterclaims when it concedes that:  "If the Court denies Nokia's motion to dismiss, Nokia may seek to amend its Complaint to add non-patent claims similar in nature to

those asserted by Apple."  Apple's counterclaims have strong support in recent decisions of the Third Circuit and other federal courts.

Apple believes judicial efficiency would be promoted by bifurcating the case and trying first the contract, promissory estoppel, and related declaratory judgment claim that Nokia has not offered FRAND terms, separately from the antitrust and various patent infringement claims.  The contract claim depends only on the existence of a contract (which Apple believes Nokia will not dispute) and evidence concerning whether license terms demanded by Nokia were unfair, unreasonable and/or discriminatory.  On the other hand, the patent infringement claims involve complex validity and infringement questions with respect to ten Nokia patents, nine Apple patents, dozens of products, and a wide range of technology.  The antitrust claims involve complex and distinct issues such as market definition and power, the timing of Nokia's patent applications and disclosure thereof, Nokia's promotion of its technologies to the SSOs, and what would have happened to the standards had Nokia timely disclosed its IPR and the falsity of its FRAND commitments.

If Apple prevails on its contract claims, the parties will have a determination of what a FRAND royalty for Nokia's portfolio of declared essential patents would be, and Nokia would be limited to a FRAND royalty as a remedy.  Apple believes that the narrowing of remedies to a FRAND royalty will likely facilitate settlement of the entire case and eliminate the need to try the remaining issues.  At the same time, there would be no prejudice to Nokia in trying the contract claims first and separately because the patent infringement claims are exceedingly more complex and will not be ready for trial as early the contract claims.  Indeed, Nokia also sought to have its contractual right to a FRAND license tried in advance of the relevant patent infringement claims in its earlier litigation with Qualcomm in the Delaware Chancery Court.

Nokia proposes that there be separate trials with its patents being tried first.  It is premature to determine how best to try the nineteen asserted patents.  Accordingly, Apple has proposed a pretrial conference in January 2012 – after the close of discovery and after the submission of letters (if any) seeking permission to file summary judgment motions – at which time a fair and efficient trial plan can be developed to account for overlap of evidence, witnesses, technology, and other issues.

## V.      RELIEF

### A.      Nokia's Request of Relief

As set forth in the Complaint, Nokia requests that the Court determine the amount of FRAND compensation that Apple owes Nokia to compensate it for Apple's acts of infringement, and any other appropriate relief.  Nokia further seeks recovery of its attorneys' fees and costs due to the exceptional nature of this case, in accordance with 35 U.S.C. § 285.  Nokia asks that the Court declare that Apple take nothing by its counterclaims against Nokia and that it dismiss the counterclaims with prejudice and adjudge Apple's patents not infringed and invalid.

### B.      Apple's Request of Relief

Apple seeks the following relief:

1.      Dismissal of Nokia's complaint in its entirety, with prejudice;

2.      Judgment in favor of Apple and against Nokia;

3.      Judgment that Nokia is liable for breach of contract (Count I), promissory estoppel (Count II), and violation of Section 2 of the Sherman Act, 15 U.S.C. § 2 (Count III);

4.      Pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15, judgment against Nokia for treble the amount of Apple's damages, an injunction barring Nokia from de-

manding from Apple non-FRAND terms for Nokia's purportedly essential patents, and an award to Apple of all reasonable attorneys' fees and costs;

5.    Judgment declaring that the terms offered by Nokia to Apple to license patents it claims are essential to implement GSM, GPRS, EDGE, UMTS, and WLAN standards, including the patents at issue in the Complaint, are not FRAND terms;

6.    Judgment declaring that Nokia is not entitled under any circumstances to seek injunctive relief preventing Apple from practicing the GSM, GPRS, EDGE, UMTS, and WLAN standards;

7.    Judgment declaring that Nokia's purported essential patents, including the patents-in-suit, are unenforceable by virtue of Nokia's patent misuse;

8.    A declaration that Apple has not infringed, and is not infringing, any valid claim of the Nokia patents-in-suit;

9.    A declaration that one or more claims of each of the Nokia patents-in-suit is invalid, void, and/or unenforceable against Apple;

10.    A declaration that Nokia has infringed one or more claims of each of the Apple patents-in-suit;

11.    A declaration that Nokia's infringement of one or more claims of the Apple patents-in-suit is and/or has been willful;

12.    A preliminary and permanent injunction prohibiting Nokia, its subsidiaries, divisions, agents, servants, employees, and those in privity with Nokia from infringing, contributing to the infringement of, and inducing infringement of the Apple patents-in-suit, and for further proper injunctive relief;

13. Award to Apple damages for Nokia's infringement with interest, as well as costs (including expert fees), disbursements, and reasonable attorneys' fees incurred in this action, including 35 U.S.C. § 285; and

14. Award treble damages to Apple pursuant to 35 U.S.C. § 284.

## VI.   AMENDMENT OF PLEADINGS

### A.   Nokia's Position

If the Court allows Apple's non-patent counterclaims to proceed in light of Nokia's forthcoming motion to dismiss, Nokia intends to seek to amend its pleadings to assert its own non-patent claims against Apple.  Accordingly, the Court should allow Nokia to freely amend its Complaint until at least the date Nokia's answer is due to Apple's counterclaims under Rule 12(a)(4)(A).  Otherwise, all other amendments to the pleadings should be by motion and filed by July 2, 2010, with the exception that amendments made to plead inequitable conduct may be made later without undue delay by motion upon an appropriate showing that facts giving rise to such a claim were newly discovered.

### B.   Apple's Position

Unless the Court orders otherwise, all motions to amend the pleadings shall be filed by July 2, 2010, with the exception that amendments made to plead inequitable conduct may be made no later than 30 days before the end of fact discovery.

## VII.   JOINDER OF PARTIES

The parties are not aware of any additional parties that need to or should be joined in this action at this time, but reserve the right to join additional parties by stipulation or by leave of the Court should the need arise.

## VIII.  DISCOVERY

### A.      Nokia's Statement Regarding Discovery

Nokia will require discovery concerning, among other things, the accused Apple products; the development, design, structure and operation of the accused Apple products; the sales, revenue, profits and marketing associated with the accused Apple products; Apple's knowledge of the Nokia patents and any analysis or opinions concerning the Nokia patents; Apple license agreements concerning the accused products and related technology and other factors affecting the measure and extent of damages; Apple's negotiations with Nokia; the bases for Apple's defenses to Nokia's claims of infringement; the Apple patents; the conception and development of the subject matter of the Apple patents; the design, development, manufacture, commercialization, marketing, and sale of any embodiments of the Apple patents; licensing related to the Apple patents; prosecution of the applications for the Apple patents; prior art relating to the Apple patents; and the bases for Apple's claims of infringement.

Nokia submits that discovery relating to Apple's non-patent claims should be stayed pending Nokia's motion to dismiss those claims.  In the event Apple's antitrust claim is not dismissed, discovery with respect to that claim should be postponed until resolution of Nokia's patent claims against Apple.  For Apple to prevail on its antitrust claim, Nokia's patents must be essential to a wireless standard, a fact that Apple disputes.  Until that issue is resolved, there is no reason for the parties to engage in burdensome and costly discovery on Apple's antitrust claim.

If the Court denies Nokia's motion to dismiss, the following additional discovery would be necessary.  Discovery into the market, Apple's market share, market power, monopolistic practices, anti-competitive behavior, unfair and deceptive trade practices, fraudulent statements, standards setting misconduct, and false advertising.

### B.    Apple's Statement Regarding Discovery

As set forth in Section IV above, Apple plans to move to bifurcate this litigation, proposing to try Count I (Breach of Contract – F/RAND), Count II (Promissory Estoppel), and Count IV (Declaratory Judgment that Nokia's offers have not been on F/RAND terms) of Apple's Counterclaims separately from the patent infringement claims and the remainder of Apple's counterclaims alleging violation of Section 2 of the Sherman Act and seeking other declaratory relief.  While Apple does not propose to stay discovery on those remaining claims, it does believe that discovery on Counts I, II, and IV would be much more limited and could be completed more expeditiously.  In particular, Apple believes that fact discovery on Counts I, II and IV of its Counterclaim could be completed in seven months, and that expert discovery on those claims could be completed in an additional three months.  Apple believes that fact discovery on the remaining claims in the case should be completed in fourteen months, and that expert discovery on those claims should be completed in an additional six months.

### C.    Documents and Electronically Stored Information

The parties will continue to meet and confer on the scope of discovery of documents and electronically stored information pursuant to Federal Rule of Civil Procedure 26(f) and will exchange proposals regarding such.

### D.    Discovery Limitations

The parties agree to adhere to the limitations on discovery set forth in the Federal Rules of Civil Procedure, except as set forth below or as further ordered by the Court:

**<u>Depositions</u>**:

Each side will be limited to (i) 250 hours of on-the-record time to conduct 30(b)(1) depositions of the other side's employees and any third party depositions, and (ii) 50 hours of on-the-record time to conduct 30(b)(6) depositions of the other side.  Depositions of non-expert indi-

- 14 -

viduals (30(b)(1)) are presumptively limited to 7 hours per witness, provided that in cases where a witness testifies primarily in a language other than English, the parties will confer in good faith to reach agreement regarding an extension of the deposition time.  Each 30(b)(1) deposition will count for at least 4 hours against this limit, even if the actual deposition lasts fewer than 4 hours. Promptly after the parties serve their expert reports, the parties will confer in good faith in an effort to reach agreement regarding limits on expert deposition time.  The parties each reserve their right to seek relief from the Court to limit the length of any particular deposition or to take depositions in excess of the presumptive limits described above.

**Interrogatories**:

The parties agree that each side may propound, in total, no more than fifty (50) interrogatories to the other side (including subparts) in accordance with Local Rule 26.1(b).  A single interrogatory may address more than one patent and more than one product.

**Requests for Admission**:

The parties agree that each side may propound, in total, no more than fifty (50) requests for admission (including subparts) in accordance with Local Rule 26.1(b), except that this limitation shall not apply to requests for admission that are directed to the authenticity of documents or admissibility into evidence of such documents.

**Document Requests**:

There shall be no limit on the number of document requests that may be served by either side.

### E.   Schedule

#### 1.   Nokia's Position

Nokia proposes that the schedule below be entered with respect to the parties' respective patent claims.  With respect to Apple's non-patent counterclaims, Nokia will submit a proposed

schedule upon resolution of Nokia's motion to dismiss and any subsequent amendments to the

pleadings by Nokia.

| Event | Proposed Date |
|---|---|
| Initial Disclosures | April 7, 2010 |
| Deadline to Amend Pleadings or Join Additional Parties | 20 days after ruling on motion to dismiss Apple's Counterclaims |
| Infringement Contentions | April 21, 2010 |
| Invalidity Contentions | June 21, 2010 |
| Parties exchange proposed claim terms in need of construction | December 15, 2010 |
| Parties exchange proposed constructions, along with intrinsic evidence relied upon | January 10, 2011 |
| Parties file Joint Claim Construction Chart | January 24, 2011 |
| Opening Claim Construction Briefs | February 1, 2011 |
| Answering Claim Construction Briefs | March 1, 2011 |
| Claim Construction Hearing | April 2011 – To be set by Court |
| Close of Fact Discovery | July 15, 2011 |
| Opening Expert Reports (Burden of Proof) | August 15, 2011 |
| Responsive Expert Reports | September 15, 2011 |
| Opening Summary Judgment Letter Briefs | September 9, 2011 |
| Answering Summary Judgment Letter Briefs | September 16, 2011 |
| Reply Summary Judgment Letter Briefs | September 23, 2011 |
| Deadline to complete expert discovery | November 22, 2011 |
| Summary Judgment Status Conference | October 2011– date to be set at discretion of the Court |
| Opening Summary Judgment Briefs (if permitted by the Court) | November 1, 2011 |
| Answering Summary Judgment Briefs | November 18, 2011 |
| Reply Summary Judgment Briefs | December 2, 2011 |
| Motions *in Limine* (opening, answering and reply) | February 2012– dates to be set by the Court |
| Joint Pretrial Order | February 2012– date to be set by the Court |
| Pretrial Conference | March 2012– date to be set by the Court |
| Trials | April-May 2012– dates to be set by the Court |

## 2.     Apple's Position

As set forth above, Apple proposes bifurcation of Counts I, II, & IV of its Counterclaim and that the Court expedite resolution of those claims.  Accordingly, Apple offers the following schedules for the proposed expedited claims and the remaining claims:

| | Counts I, II, & IV of Apple's Counterclaims | | Remaining Claims |
|---|---|---|---|
| 4/7/2010 | Beginning of Fact Discovery & Rule 26(a)(1) disclosures due | 4/7/2010 | Beginning of Fact Discovery & Rule 26(a)(1) disclosures due |
| 10/22/2010 | Completion of Fact Discovery (approximately 7 months from start of fact discovery) | 5/27/2011 | Completion of Fact Discovery (approximately 14 months from start of fact discovery) |
| 11/19/2010 | Opening (Burden of Proof) Expert Reports Due (approximately 1 month from close of fact discovery) | 11/5/2010 | Exchange of proposed terms for construction |
| 12/17/2010 | Rebuttal Expert Reports Due (approximately 1 month from exchange of opening expert reports) | 12/10/2010 | Exchange of proposed constructions |
| 1/28/2011 | Completion of Expert Discovery (approximately 1 month from exchange of rebuttal reports) | 12/24/2010 | Submission of joint claim construction chart |
| 2/4/2011 | Letter seeking permission to file summary judgment motions | 2/1/2011 | Opening Claim Construction Briefs Due |
| 2/11/2011 | Answering letter | 3/18/2011 | Responsive Claim Construction Briefs Due |
| 2/18/2011 | Reply letter | A date convenient for the Court in April 2011 | Technology Tutorial |
| A date convenient for the Court in February | Intermediate Pretrial Conference to determine whether summary judgment motions may be filed | A date convenient for the Court in April 2011 | Claim Construction Hearing |

| | Counts I, II, & IV of Apple's Counterclaims | | Remaining Claims |
|---|---|---|---|
| 2011 | | | |
| 3/4/2011 | Opening Summary Judgment Briefs (if permitted) | 8/15/2011 | Opening (Burden of Proof) Expert Reports Due |
| 3/18/2011 | Answering Summary Judgment Brief | 9/15/2011 | Rebuttal Expert Reports Due |
| 3/25/2011 | Reply Summary Judgment Brief | 11/4/2011 | Completion of Expert Discovery |
| 21 days before Pretrial Conference | Submission of Joint Proposed Pretrial Order | 12/2/2011 | Letter seeking permission to file summary judgment motions |
| 21 days before Pretrial Conference | Motions *in Limine* Fully Submitted (intermediate briefing dates to be set by the Court) | 12/16/2011 | Answering letter |
| A date convenient for the Court in April 2011 | Pretrial Conference | 12/23/2011 | Reply letter |
| A date convenient for the Court in April 2011 | Trial | A date convenient for the Court in January 2012 | Intermediate Pretrial Conference to determine whether summary judgment motions may be filed and how to sequence and organize the patents for trial |
| | | 2/20/2012 | Opening Summary Judgment Briefs (if permitted) |
| | | 3/19/2012 | Answering Summary Judgment Briefs |
| | | 4/2/2012 | Reply Summary Judgment Briefs |
| | | 5/4/2012 | Motions *in Limine* Fully Submitted (intermediate briefing dates to be set by the Court) |

| | Counts I, II, & IV<br>of Apple's Counterclaims | | Remaining Claims |
|---|---|---|---|
| | | 21 days before Pretrial Conference | Submission of Joint Proposed Pretrial Order |
| | | A date convenient for the Court in June 2012 | Pretrial Conference |
| | | A date convenient for the Court in July 2012 | Trial |

## IX.    ESTIMATED TRIAL LENGTH

### A.    Nokia's Statement on Trial Length

As stated in Section IV.A, Nokia proposes that there be two separate trials.  The first trial would determine the issues relating to the Nokia patents (including infringement, enforceability and the applicable rate of FRAND damages) and the second trial, if necessary, would determine the issues relating to Apple's patent claims and any other claims brought by Apple.  Nokia estimates that each trial on the patent claims will take approximately ten (10) days.

### B.    Apple's Statement on Trial Length

Apple proposes that Counts I, II, and IV of Apple's Counterclaims should be ready for trial in about one year, and estimates that approximately four days of trial will be required for these claims.  Apple proposes that a separate trial be held on the remaining claims, and that approximately two to three days of trial time be allotted with respect to each patent to be tried, and approximately seven days of trial time be allotted with respect to its Sherman Act and patent misuse claims.

## X.      JURY TRIAL

Both parties have requested a jury trial on all issues that are so triable to a jury.

## XI.     SETTLEMENT

The parties have had formal settlement discussions before and after the filing of the law-suit.  The parties believe that discussing settlement before the Magistrate Judge and/or mediator would be appropriate.

## XII.    OTHER MATTERS

### A.      Claim Construction Briefing

Given that there are nineteen patents-in-suit, the parties request that they be permitted forty (40) pages for their opening and answering claim construction briefs.

### B.      Protective Order

Because confidential information will have to be exchanged in this action, the parties agree that a protective order will be necessary and will attempt to agree on the form of such an order.

## XIII.   CONFIRMATION OF RULE 26(F) CONFERENCE

Counsel for the parties have conferred about each of the above matters.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP                POTTER ANDERSON & CORROON LLP

*/s/ Rodger D. Smith II*                             */s/ Richard L. Horwitz*
Jack B. Blumenfeld (#1014)                          Richard L. Horwitz (#2246)
Rodger D. Smith II (#3778)                          David E. Moore (#3983)
1201 North Market Street                            Hercules Plaza, 6th Floor
P.O. Box 1347                                       1313 N. Market Street
Wilmington, DE 19899                                Wilmington, DE  19899
(302) 658-9200                                      (302) 984-6000
jblumenfeld@mnat.com                                rhorwitz@potteranderson.com
rsmith@mnat.com                                     dmoore@potteranderson.com
 *Attorneys for Plaintiff Nokia Corporation*         *Attorneys for Defendant and*
                                                     *Counterclaim-Plaintiff Apple Inc.*

OF COUNSEL:

Patrick J. Flinn
John D. Haynes
ALSTON & BIRD, LLP
1201 W. Peachtree Street
Atlanta, Georgia 30309
(404) 881-7000

OF COUNSEL:

William F. Lee
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA  02109
(617) 526-6000

Mark D. Selwyn
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1117 California Avenue
Palo Alto, CA  94304
(650) 858-6000

Kenneth H. Bridges
Michael T. Pieja
WONG CABELLO
540 Cowper Street
Suite 100
Palo Alto, CA
(650) 681-4475

March 8, 2010

3436469