IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NOKIA CORPORATION,<br><br>      Plaintiff,<br><br>      v.<br><br>APPLE INC.,<br><br>      Defendant. | C.A. No. 09-791 (GMS) |
| APPLE INC.,<br><br>      Counterclaim-Plaintiff,<br><br>      v.<br><br>NOKIA CORPORATION and NOKIA INC.,<br><br>      Counterclaim-Defendants. | |

## NOKIA CORPORATION'S AND NOKIA INC.'S
## <u>OPENING BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS</u>

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
rsmith@mnat.com

OF COUNSEL:

Patrick J. Flinn
Peter Kontio
John D. Haynes
Mark A. McCarty
Adam J. Biegel
ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA  30309
(404) 881-7000

*Attorneys for Nokia Corporation
and Nokia Inc.*

March 11, 2010

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................... 1

NATURE AND STAGE OF THE PROCEEDING........................................................... 2

SUMMARY OF THE ARGUMENT ............................................................................ 2

STATEMENT OF FACTS ....................................................................................... 4

ARGUMENT ........................................................................................................ 6

    I.     IMPLAUSIBLE CLAIMS MUST BE DISMISSED............................................6

    II.    APPLE FAILS TO STATE A CLAIM FOR MONOPOLIZATION UNDER
          SECTION 2 OF THE SHERMAN ACT (COUNT III)......................................7

        A.  Apple's Inconsistent Allegations about Market Power Prevent It
             from Maintaining A Monopolization Claim for Damages and
             Injunction at This Time..................................................................8

        B.  Apple's Conclusory Allegations Do Not As A Matter of Law
             Constitute Actionable Exclusionary Conduct...............................10

           1.  The Pleadings Show Nokia Appropriately and Truthfully Disclosed
               Its IPR. ................................................................................12

           2.  The Pleadings Show Nokia Complied with Its FRAND Obligations
               and Sought Compensation It Is Owed. ....................................14

           3.  The *Noerr-Pennington* Doctrine Immunizes Nokia's Lawsuit..............16

    III.   APPLE'S CLAIM FOR BREACH OF CONTRACT (COUNT I) LACKS
          THE REQUISITE FACTUAL ALLEGATIONS...............................................17

    IV.   APPLE'S CLAIM FOR PROMISSORY ESTOPPEL (COUNT II) IS
          BARRED BECAUSE THE PLEADINGS ESTABLISH THE PARTIES
          HAVE AN ENFORCEABLE CONTRACT. ...................................................19

    V.    APPLE'S CLAIMS FOR DECLARATORY RELIEF (COUNTS IV-VI)
          ARE DUPLICATIVE AND SHOULD BE DISMISSED. ................................20

CONCLUSION......................................................................................................20

## TABLE OF AUTHORITIES

**Cases**

*Arthur S. Langenderfer, Inc. v. S.E. Johnson Co.*,
    917 F.2d 1413 (6th Cir. 1990) ...........................................................................7

*Ashcroft v. Iqbal*,
    129 S.Ct. 1937 (2009).................................................................2, 3, 6, 10

*Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,
    459 U.S. 519 (1983)...........................................................................................7

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007).................................................................2, 3, 6, 7, 8, 10

*Broadcom Corp. v. Qualcomm Inc.*,
    501 F.3d 297 (3d Cir. 2007)..............................................................9, 11, 12, 13

*Brown Shoe Co. v. United States*,
    370 U.S. 294 (1962)........................................................................................14

*Brown v. SAP Am., Inc.*, No. 98-507-SLR,
    1999 U.S.Dist. LEXIS 15525 (D. Del. Sept. 13, 1999)....................................19

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
    429 U.S. 477 (1977)..........................................................................................8

*C.R. Bard, Inc. v. M3 Systems. Inc.*,
    157 F.3d 1340 (Fed. Cir. 1998).......................................................................16

*CBC Companies, Inc. v. Equifax, Inc.*,
    561 F.3d 569 (6th Cir. 2009) ......................................................................7, 15

*Cheminor Drugs, Ltd. v. Ethyl Corp.*,
    168 F.3d 119 (3d Cir. 1999)............................................................................16

*Chemtech Int'l, Inc. v. Chemical Injection Techs.*,
    170 F. App'x 805 (3d Cir. 2006) .....................................................................15

*Circuit City Stores, Inc. v. Citgo Petroleum Corp.*,
    No. 92-CV-7394, 1994 WL 483463 (E.D. Pa. Sept. 7, 1994) ............................3

*Colida v. Nokia, Inc.*,
    347 F. App'x 568 (Fed. Cir. 2009) ..................................................................10

*Conley v. Gibson*,
   355 U.S. 41 (1957)...................................................................................................6

*Del. State Univ. Student Hous. Found. v. Ambling Mgmt. Co.*,
   556 F. Supp. 2d 367 (D. Del. 2008).....................................................................20

*Digene Corp. v. Third Wave Techs., Inc.*,
   323 F. App'x 902 (Fed. Cir. 2009) .........................................................................8

*Eastern R.R. Presidents Conference v. Noerr Motor Freight*,
   365 U.S. 127 (1961)...............................................................................................16

*Fox v. Rodel, Inc.*,
   No. 98-531-SLR, 1999 U.S.Dist. LEXIS 15502 (D. Del. Sept. 13, 1999) ........19

*Genencor Int'l, Inc. v. Novo Nordisk A/S*,
   766 A.2d 8 (Del. 2000) .........................................................................................19

*Gen. Motors Corp. v. New A.C. Chevrolet, Inc.*,
   263 F.3d 296 (3d Cir. 2001)..................................................................................15

*Gruntal & Co. v. Steinberg*,
   837 F. Supp. 85 (D.N.J. 1993) ..............................................................................20

*Hancock v. Hood*, No. 09-00026, 2010 WL 653758
   (S.D. Ala. Feb. 18, 2010) .................................................................................7, 10

*Harrison Aire, Inc. v. Aerostar Int'l, Inc.*,
   423 F.3d 374 (3d Cir. 2005)....................................................................................9

*Hopper v. Banana Republic, LLC*, No. 07 Civ. 8526,
   2008 WL 490613 (S.D.N.Y. Feb. 25, 2008).....................................................7, 10

*In re Dell Computer Corp.*,
   121 F.T.C. 616 (F.T.C. 1996) ...............................................................................12

*In re U.S. West, Inc. Sec. Litig.*,
   201 F. Supp. 2d 302 (D. Del. 2002).......................................................................19

*In re Union Oil Co. of Cal.*, No. 9305,
   2005 WL 2003365 (F.T.C. 2005) ..........................................................................12

*McKell v. Wash. Mut., Inc.*,
   49 Cal. Rptr. 3d 227 (Ct. App. 2006)...............................................................18, 19

*Millett v. TrueLink, Inc.*,
   533 F. Supp. 2d 479 (D. Del. 2008)..................................................................17, 18

*Nucor Corp. v. Aceros Y Maquilas de Occidente, S.A. de C.V.*,
   28 F.3d 572 (7th Cir. 1994) ........................................................................20

*Phillips v. County of Allegheny*,
   515 F.3d 224 (3d Cir. 2008)...................................................................7, 18

*Pixton v. B&B Plastics, Inc.*,
   291 F.3d 1324 (Fed. Cir. 2002)..................................................................17

*Premier Technical Sales, Inc. v. Digital Equip. Corp.*,
   11 F. Supp. 2d 1156 (N.D. Cal. 1998) ......................................................19

*Queen City Pizza, Inc. v. Domino's Pizza, Inc.*,
   124 F.3d 430 (3d Cir. 1997).................................................................8, 15

*Rambus Inc. v. Fed. Trade Comm'n*,
   522 F.3d 456 (D.C. Cir. 2008) .............................................................12, 15

*Rotella v. Wood*,
   528 U.S. 549 (2000).................................................................................13

*Seroctin Research & Techs., Inc. v. Unigen Pharm., Inc.*,
   541 F. Supp. 2d 1238 (D. Utah 2008)........................................................17

*Smithkline Beecham Corp. v. Continental Ins. Co.*,
   No. Civ.A 04-2252, 2004 WL 1773713 (E.D. Pa. Aug. 4, 2004)....................20

*Sprig Elec. Co. v. Los Angeles Unified Sch. Dist.*,
   No. B152367, 2002 WL 804611 (Cal. Ct. App. Apr. 30, 2002)......................19

*Totes-Isotoner Corp. v. United States*,
   __ F.3d __, 2010 WL 396160 (Fed. Cir. 2010) ...........................................7

*United Mine Workers of Am. v. Pennington*,
   381 U.S. 657 (1965).................................................................................16

*United States v. Grinnell Corp.*,
   384 U.S. 563 (1966)...................................................................................8

*Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*,
   540 U.S. 398 (2004)...................................................................................8

*Weiss v. Nw. Broad. Inc.*,
   140 F. Supp. 2d 336 (D. Del. 2001)..........................................................19

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
   401 U.S. 321 (1971).................................................................................14

**Statutes**

15 U.S.C. § 15(a) ...................................................................................................8

Fed. R. Civ. P. 8 ...................................................................................................6

Fed. R. Civ. P. 11 ...............................................................................................12

Fed. R. Civ. P. 12(a)(4) .......................................................................................2

Fed. R. Civ. P. 12(b)(6) ........................................................................................6

**INTRODUCTION**

Sometimes a patent dispute is just a patent dispute.  Nokia originally filed this action because Apple is using intellectual property invented and patented by Nokia and not paying Nokia any royalties for that use.  In response, Apple asserted patent counterclaims based on similar theories.  Apple also alleged six non-patent counterclaims, each of which Nokia now moves to dismiss because they are implausible, conclusory and self-contradictory and, therefore, fail to state a claim under current Supreme Court precedent.  These non-patent counterclaims are designed to divert attention away from free-riding off of Nokia's intellectual property, a practice Apple evidently believes should only be of paramount concern when it is the alleged victim.

The non-patent counterclaims all stem from a pro-competitive standard-setting process and an unremarkable series of offers and counteroffers made during patent licensing negotiations between Nokia and Apple.  Both parties allege that Nokia – as a holder of patents essential to certain wireless telecommunications standards – is legally obligated to license those essential patents to manufacturers of standards-compliant products on terms that, depending on which standard-setting organization (SSO) is involved, are either (i) reasonable and demonstrably free of any unfair discrimination (RAND), or (ii) fair, reasonable and non-discriminatory (FRAND).[1]  And both parties allege that Nokia and Apple engaged in extensive negotiations over FRAND licensing terms for Nokia's essential patents that proved unsuccessful.

Through what charitably could be called an attempt at legal alchemy, Apple employs revisionist history, misleading characterizations, unsupported allegations and flawed and contradictory legal theories to turn these fruitless negotiations into a multi-count federal lawsuit for antitrust violations, breach of contract, promissory estoppel and declaratory judgment.

---

[1]     These two overlapping requirements are collectively referred to herein as FRAND.

Apple contends that all of the royalty terms offered by Nokia are too high and the contractual terms offered by Nokia are unacceptable.  But, try as it might, Apple cannot change the fact that a license offer does not become *unlawful* simply because one of the parties finds it subjectively unacceptable.  To allow Apple to proceed with burdensome litigation, and in particular antitrust litigation, on claims that are inconsistent and rest upon implausible allegations would violate the Supreme Court's recent admonitions regarding pleading requirements, stand antitrust and intellectual property law on their heads, and encourage the assertion of similar claims to complicate and delay virtually every future patent litigation involving essential patents, potentially undermining the recognized pro-competitive impact of SSO activities.

## NATURE AND STAGE OF THE PROCEEDING

On October 22, 2009, Nokia Corporation filed a complaint against Apple Inc. for infringing 10 patents essential to certain wireless technology standards (DI 1).  On December 11, 2009, Apple filed an answer and counterclaims asserting infringement of 13 patents and six non-patent infringement counts (DI 14).  On February 19, 2010, Apple amended its answer and counterclaims, dropping four patent infringement claims and its claim of unfair competition under California law, adding an antitrust claim under Section 2 of the Sherman Act and adding Nokia Inc. (Nokia Corporation's US subsidiary) as a defendant (collectively Nokia) (DI 21).  Nokia now moves to dismiss all six non-patent counterclaims.

## SUMMARY OF THE ARGUMENT

Apple's non-patent claims (Counts I-VI) should be dismissed for multiple reasons.[2]  First, Apple's Sherman Act Section 2 monopolization claim (Count III) fails to meet the plausibility standards for pleadings set forth in *Bell Atlantic v. Twombly* and *Ashcroft v. Iqbal* because it:

---

[2]   Based on the plain language of Federal Rule of Civil Procedure 12(a)(4), this motion extends the time for Nokia to answer Apple's Counterclaim, even though Nokia does not move

(1)     relies on assertions by Apple that Nokia possesses monopoly power derived from the essentiality of the patents-in-suit to certain standards despite Apple's unequivocal statements that Nokia's patents-in-suit are not essential to practice the relevant standards (all in the context of a situation where Nokia has done nothing more than make offers to Apple and then file this lawsuit seeking remedies that comply with Nokia's FRAND obligations) (*see* Section II.A); and

(2)     fails to adequately or consistently plead details setting forth how or why Nokia engaged in acts harmful to competition by (i) participating in a standard setting process in which, even according to Apple's allegations, Nokia disclosed its patents and legally obligated itself to license such patents on FRAND terms and conditions that, when ultimately reviewed by the courts as in this case, prevent supracompetitive royalties, all in a timeframe predating the statute of limitations, (ii) engaging in legitimate and multi-step FRAND negotiations that simply failed to satisfy Apple (though Apple alleges absolutely no details about why Nokia's offers are not FRAND), and (iii) filing an infringement suit seeking FRAND compensation, and an injunction if, and only for so long as, Apple refuses to pay court-approved FRAND compensation for the Nokia technology it is using.

Second, Apple's breach of contract claim (Count I) also fails to meet *Twombly* and *Iqbal*'s plausibility threshold because Apple (i) fails to adequately allege any specifics of the obligations it seeks to enforce and why the royalty rates proposed by Nokia purportedly breach those obligations, and (ii) makes contradictory allegations regarding offers to license non-essential patents (namely that Nokia improperly conditioned its offers on or demanded a license back of non-essential Apple patents when Apple's own allegations are that *Apple* itself offered to license some non-essential patents and that Nokia made multiple offers that did not require Apple to grant such a license).

Third, Apple's other non-patent claims are similarly deficient because promissory estoppel (Count II) cannot exist where an enforceable contract (the ETSI FRAND licensing

---

as to every count.  Courts agree that a partial motion to dismiss extends a party's time to answer as to all claims.  *See, e.g.*, *Circuit City Stores, Inc. v. Citgo Petroleum Corp.*, No. 92-CV-7394, 1994 WL 483463, at *4 (E.D. Pa. Sept. 7, 1994).  Thus, Nokia will file answers to Apple's remaining Counterclaims after the relevant pleading issues have been resolved by the Court.

obligation) exists, and declaratory relief (Counts IV-VI) is inappropriate when such claims are duplicative of other defenses or substantive claims or seek adjudication of past conduct.

## STATEMENT OF FACTS

Apple designs and markets personal computers, portable digital music players and mobile communications devices such as the iPhone (Amended Counterclaim (ACC) [DI 21] Introductory Statement ¶ 5).  Apple does not allege that it has paid Nokia any royalties for any Nokia patents that might be used in these products.

Apple acknowledges that both it and Nokia have been members of the European Telecommunications Standards Institute (ETSI), an SSO developing certain telecommunications interoperability standards (ACC ¶¶ 62, 71; Answer to ¶ 23).  Nokia has participated in ETSI's work on mobile wireless communications standards (*id*. ¶ 62).  As a result of its membership and participation in ETSI, Nokia is bound by the ETSI Rules of Procedure, including the ETSI Intellectual Property Rights (IPR) Policy (*id*.).  Nokia has represented to Apple that it owns a number of patents essential to certain ETSI standards, and Nokia has publicly declared those essential patents to ETSI, committing to grant irrevocable licenses to such patents on FRAND terms pursuant the ETSI IPR policy (*id*. ¶¶ 63, 66).

Nokia also has represented to Apple that it owns a number of patents that are essential to the wireless local area network (WLAN) standard 802.11 (*id*. ¶ 78).  Nokia has submitted letters of assurance to the Institute of Electrical and Electronics Engineers (IEEE), stating that it would license these patents to an unrestricted number of applicants under reasonable terms and conditions that are demonstrably free of any unfair discrimination (*id*. ¶ 79).  Apple admits that it implements the IEEE's 802.11 standard in its products (*id*. ¶ 82).

In late 2007, Apple and Nokia began negotiating a potential license agreement for Nokia's patents essential to the ETSI standards (*id*. ¶ 86).  Apple admits that, at the start of the

negotiations, and again in September 2009, Nokia offered license terms to Nokia's essential patents that did not require Apple to grant any license back to Apple's non-essential patents (*id.* ¶¶ 86, 91).[3]  Apple acknowledges its rejection of Nokia's "standard" license terms (*id.* ¶¶ 85, 91, 92).  Apple's unhappiness about these offers seems only to be that Nokia was asking for what Apple considered too much money for Nokia's essential patents (*see id.* ¶ 91).

Apple further admits that it was willing to grant Nokia a cross-license to certain Apple patents that are not claimed to be essential to any of the standards listed above (*id.* ¶ 87).  Apple avers that, in Spring 2008, Nokia made another license offer, proposing Apple expand its prior offer to give Nokia the right to pick a limited number of Apple non-essential patents that would be licensed (*id.* ¶ 89).  Apple states that it rejected the proposal (*id.*).  According to Apple, Nokia made additional offers in May and September 2009 (the latter included, for the first time, WLAN patents), both of which Apple rejected (*id.* ¶¶ 90-91).  Apple also admits that "Nokia defined both a portfolio rate and an average per patent royalty rate" that did not require any license-back of non-essential patents (*id.* Answer to ¶ 44).  Once again, Apple's only problem with these offers is the amount of money involved (*id.* ¶ 91).

Apple does not allege that contract negotiations with Nokia have ceased.  Nor does Apple assert that it ceased selling products as a result of the stalled license negotiations, or that it has paid expenses (other than attorneys' fees for this litigation) as a result of its failure to agree to license terms with Nokia.  Apple does not allege that it has lost customers or profits as a result of Nokia's conduct.  Instead, Apple alleges simply that Nokia's offers to license essential patents during this give-and-take were subjectively unacceptable, and thus unlawful and anticompetitive.

---

[3]      These stated facts regarding the negotiations are based solely on Apple's counterclaims regarding them, and Nokia reserves the right to enforce limitations on Apple's dissemination of specified information under applicable confidentiality agreements.

**ARGUMENT**

## I.     IMPLAUSIBLE CLAIMS MUST BE DISMISSED

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), the Supreme Court held

that, to avoid dismissal under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim

to relief that is plausible on its face."  Using an antitrust case as its vehicle for renouncing the

"no set of facts" test of *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), the Court explained that

Rule 8 "*requires a 'showing,'* rather than a blanket assertion, of entitlement to relief."  *Id*. at 556

n.3 (emphasis added).  Where "the plaintiffs here have not nudged their claims across the line

from conceivable to plausible," the Court found that their claims should be dismissed.  *Id.*   In

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), the Supreme Court clarified and underscored the

comprehensive applicability of this standard, holding that a complaint must contain more than a

simple "the-defendant-unlawfully-harmed-me accusation."  *Id*. at 1949.  A complaint that offers

"'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" is

insufficient as a matter of law.  *Id.*  Where "the well-pleaded facts do not permit the court to infer

more than the mere possibility of misconduct," the plaintiff has failed to state a legally

cognizable claim for relief, and dismissal is appropriate.  *Id*. at 1950.

The deficiency of Apple's non-patent counterclaims under *Twombly* and *Iqbal* is clear.

Although Apple used 61 pages for its amended counterclaims, the factual allegations in Counts I-

VI are both empty and inconsistent at the same time, and, thus, implausible.  As discussed below,

these claims are the precise type of "the-defendant-unlawfully-harmed-me accusation" that

cannot survive a motion to dismiss because they are inconsistent with Federal Rule of Civil

Procedure 8 and Supreme Court precedent.  *Iqbal,* 129 S. Ct. at 1949.  Apple needed to allege its

claims with sufficient "factual content that allows the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged." *Id.*[4]  As such, it needed to avoid the self-

inflicted wound of internal contradiction, as "[d]etermining whether a complaint states a

plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on

its judicial experience and common sense." *Id.* at 1950.[5]  Counts I-VI thus should be dismissed

because Apple has failed to meet these standards.

### II.     APPLE FAILS TO STATE A CLAIM FOR MONOPOLIZATION UNDER SECTION 2 OF THE SHERMAN ACT (COUNT III)

A Sherman Act Section 2 monopolization claim is a serious charge.  As a result, even

before *Twombly*, courts routinely cast aside spurious allegations that commercial dissatisfaction

is appropriately salved by the federal antitrust laws.[6]  After *Twombly*, the need for a critical

judicial eye was made even more crucial.[7]  Apple's attempt in its antitrust counterclaim to recast

its contract negotiations with Nokia over legally binding FRAND licensing terms into

---

[4]     *See, e.g., Totes-Isotoner Corp. v. United States*, __ F.3d __, 2010 WL 396160, at *6 (Fed. Cir. 2010) (affirming dismissal based on insufficiency); *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) ("it is no longer sufficient to allege mere elements of a cause of action; instead a complaint must allege facts suggestive of the proscribed conduct") (citation omitted).

[5]     *See, e.g., Hancock v. Hood*, No. 09-00026, 2010 WL 653758, at *13 (S.D. Ala. Feb. 18, 2010) (dismissing with prejudice implausible claims based on multiple inconsistencies); *Hopper v. Banana Republic, LLC*, No. 07 Civ. 8526, 2008 WL 490613, at *2 (S.D.N.Y. Feb. 25, 2008) (dismissing claim based on "inherently contradictory and therefore implausible" facts).

[6]     *See Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526-27 (1983) (concluding alleged conduct "might constitute a breach of contract [or other unlawful act], but . . . such activities are plainly not subject to review under the federal antitrust laws"); *see also Arthur S. Langenderfer, Inc. v. S.E. Johnson Co.*, 917 F.2d 1413, 1428 (6th Cir. 1990) (Section 2 does not "require the monopolist to accede to every demand of its competitors or customers").

[7]     *See CBC Companies, Inc. v. Equifax, Inc.*, 561 F.3d 569, 572-73 (6th Cir. 2009) (affirming dismissal of Section 2 complaint because alleged facts suggest plaintiff's "fundamental frustration is with the price terms of the [relevant contract], rather than specific anticompetitive behavior" and that "antitrust law is not a negotiating tool for a plaintiff seeking better contract terms").

anticompetitive conduct simply because it was not satisfied with the terms or royalties offered cannot survive this scrutiny.

In order to state a Section 2 claim, Apple must sufficiently allege "(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *United States v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966).[8]  Apple's Amended Counterclaim fails to adequately plead these elements, both of which are required if Apple is to be allowed to proceed with the club of burdensome modern antitrust litigation. *Twombly*, 550 U.S. at 557-61.[9]  In addition, Apple fails to allege Nokia's purportedly improper activities fell within the appropriate statute of limitations period.[10]

> **A.**     **Apple's Inconsistent Allegations about Market Power Prevent It from Maintaining A Monopolization Claim for Damages and Injunction at This Time**

First, internal inconsistencies within Apple's own pleading make the asserted monopolization claim against Nokia impossible.  A facially plausible allegation that Nokia has monopoly power, or "the power to control prices or exclude competition in the alleged relevant

---

[8]     The first element is satisfied by proper identification of the relevant market and demonstration that the defendant exercises monopoly power within such a market. *See Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 437 (3d Cir. 1997).  To satisfy the second element, Apple must show that the acquisition or possession of that monopoly power was accompanied by anticompetitive conduct. *Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004).  *See, e.g., Digene Corp. v. Third Wave Techs., Inc.*, 323 F. App'x 902, 912 (Fed. Cir. 2009) (requiring "evidence of anticompetitive effect").

[9]     These burdens are particularly relevant to patent antitrust matters.  550 U.S. at 558.

[10]     Other elements of a claim for damages under the Sherman Act include demonstration that a plaintiff (1) suffered loss to business or property, and (2) "antitrust standing," which involves a multi-factor test that includes evaluating whether the alleged injury is of the type that the antitrust laws were intended to prevent. *See* 15 U.S.C. § 15(a); *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977).  For brevity, Nokia includes Apple's failure to adequately plead antitrust standing as part of its overlapping argument concerning the absence of exclusionary or predatory conduct harmful to competition in Apple's claims.

market," is a critical element of a Sherman Act Section 2 monopolization claim.  *Harrison Aire,*

*Inc. v. Aerostar Int'l, Inc*., 423 F.3d 374, 380 (3d Cir. 2005).  Here, where Apple claims an

antitrust cause of action has already accrued and Apple claims it is already entitled to damages

and an injunction but where Apple has paid nothing for Nokia's essential patents and Nokia has

done nothing more than file this lawsuit seeking FRAND-compliant remedies, Apple fatally

undermines its allegation with regard to Nokia's market power by taking diametrically opposed

positions about whether the patents-in-suit are essential to practice the relevant standards.

Throughout its pleadings, Apple denies the patents-in-suit are essential to the relevant standards

(*e.g.,* ACC [DI 21] Answers to ¶¶ 2, 51, 53, 55, 57).  For example, in its Answer, Apple "denies

that it infringes *any* valid claim of [the patents-in-suit]" and denies that "the Nokia Asserted

Patents are essential to *any* standard" (*id*. Answer to ¶ 2).  And, in its counterclaim, Apple

characterizes Nokia's infringement claims as "baseless" and repeats its allegation that Nokia's

patents are not "essential to any standard" (*id.* ¶¶ 1, 6).  Apple even goes so far as to assert

declaratory judgment claims that Apple does not infringe any of the patents-in-suit and to plead

*in its own Sherman Section 2 claim* that it is defending against "Nokia's baseless patent

infringement claims" (*id*. ¶¶ 124, 139-98).

But Apple knows that, in order to state a Section 2 claim under recent case law

concerning violations of SSO obligations, the IPR incorporated into a standard *must* effectively

be essential, for that is the way that the IPR holder can potentially obtain market power.

*Broadcom Corp. v. Qualcomm Inc.,* 501 F.3d 297, 310 (3d Cir. 2007).  Unlike the claims

allowed to proceed in *Broadcom,* in the very same pleading where Apple denies the essentiality

of the patents-in-suit, Apple also insists Nokia possesses market power because of their

essentiality and that Nokia has the ability to abuse that power to harm Apple and competition

generally (ACC [DI 21] ¶¶ 53, 54, 85, 96, 97, 99, 102-04, 120-24).  These baldly inconsistent assertions, render Apple's claim that Nokia possesses monopoly power wholly implausible and make Count III ripe for dismissal under *Twombly* and *Iqbal*.[11]  This is especially true in a case where Nokia has not repudiated the enforceability of its FRAND commitment, sought to collect supracompetitive (*i.e.*, exceeding FRAND) royalties from Apple in this litigation, or sought an injunction against Apple's practice of the essential patents even if Apple pays FRAND compensation or commits to pay such compensation, and where Apple has in its pleadings not acknowledged any obligation to pay for practicing Nokia's essential patents but still seeks the disproportionate remedies of treble damages and an injunction.  Although it is Apple's legitimate right to challenge the essentiality, infringement and validity of Nokia patents, doing so makes the presented antitrust claims for affirmative relief at this stage simply non-existent and too hypothetical with regard to the critical issue of monopoly power.[12]

### B.   Apple's Conclusory Allegations Do Not As A Matter of Law Constitute Actionable Exclusionary Conduct.

Even if Apple concedes the essential nature of the patents-in-suit (as it must to establish monopolization in this context), its claim is missing another crucial element – exclusionary conduct.  Apple recognizes it cannot simply point to its subjective dissatisfaction with Nokia's FRAND licensing offers to meet this test.  In attempting to dress up its dissatisfaction as anticompetitive conduct by Nokia, however, Apple repackages this concept with conclusory allegations and logically inconsistent arguments that Nokia violated the Sherman Act by:

---

[11]   *See, e.g., Colida v. Nokia, Inc.*, 347 F. App'x 568, 569-70 (Fed. Cir. 2009) (affirming dismissal because "claims were facially implausible"); *Hancock,* 2010 WL 653758, at *13; *Hopper,* 2008 WL 490613, at *2.

[12]   This is not a situation where the only antitrust remedy Apple seeks is a compulsory license to Nokia's patents on FRAND terms if the Court determines Nokia's patents are essential.  Instead, Apple currently seeks both treble damages for what Apple claims are current antitrust violations and an injunction prohibiting these purported violations from continuing.

      (1)      belatedly disclosing four essential patents during the standards-setting process (despite the fact that Nokia disclosed all four patents-in-suit to the relevant SSO over six years ago and made an irrevocable and legally enforceable FRAND commitment at that time that protects all prospective licensees from supracompetitive royalties);

      (2)      falsifying and breaching its FRAND commitment by proposing rates not satisfactory to Apple (despite the fact that Apple cannot explain how or why those rates are unfair, unreasonable or discriminatory in any way); and

      (3)      filing this infringement action against Apple and seeking an injunction (despite the fact Nokia seeks nothing more than FRAND compensation for the Nokia technology used by Apple without compensation and, if necessary, an injunction to force Apple to pay the FRAND royalties approved by this court but only for so long as Apple refuses to pay FRAND royalties).

No matter how artfully Apple seeks to cobble deficient, contradictory and implausible allegations of anticompetitive acts into a cognizable monopolization claim, the holes are still there, and Count III fails.  Again, unlike other allegations of SSO misconduct found to survive a motion to dismiss, *see Broadcom*, 501 F.3d at 314, the allegations here simply do not match up and require a different result.[13]

---

[13]      Apple frames its allegations to invite comparisons to *Broadcom*.  But the underlying monopolization complaint there contained a detailed pattern of years of specific, widespread and fruitful wrongdoing in support of theories that Qualcomm made false FRAND promises and clearly breached those promises.  That detailed pattern of conduct is vastly different from Apple's scant and conclusory allegations here that, at most, attack offers Nokia made in unsuccessful negotiations.  Broadcom's complaint included allegations that Qualcomm  (i) leveraged its *1,400-plus* patents to garner 90 percent market share for its chipset (*see* First Amended Complaint (FAC) at ¶¶ 62-64, Civ. A. 05-3350 (D.N.J.), filed Sept. 9, 2005); (ii) expressly discriminated between purchasers of Qualcomm chipsets and other licensees (*see* FAC ¶¶ 17, 74, 92-98); (iii) repudiated the enforceability of its FRAND obligations and successfully carried out anticompetitive activities against multiple manufacturers around the world (*see* FAC ¶¶ 20, 65, 103); and (iv) threatened other SSO members with price increases or supply cutbacks if they did not vote to put Qualcomm technology into the standards (*see* FAC ¶¶ 75-80).  It is also noteworthy that, although *Broadcom* cited *Twombly* briefly, the Supreme Court's decision was issued after briefing and was not proffered by the parties as relevant authority.

Contrary to instances in which SSO misconduct has been described as supporting a Section 2 violation,[14] Apple does not – and cannot consistent with Rule 11 standards – make any factual allegations that Nokia failed to declare its essential IPR, failed to make binding and legally enforceable FRAND commitments, failed to engage in legitimate negotiations to reach mutually acceptable FRAND terms, or sought relief in this action that is in any way inconsistent with its FRAND obligations.  Moreover, unlike in *Broadcom*, Nokia has acknowledged the binding and legally enforceable nature of its FRAND commitments and, rather than seeking whatever royalties it can extract, Nokia has put those obligations squarely before the Court and has asked for compensation that complies with its FRAND obligations.  There is simply no plausible way that Nokia's conduct can be construed as exclusionary.[15]

### 1.     The Pleadings Show Nokia Appropriately and Truthfully Disclosed Its IPR

Standard-setting in the telecommunications industry by private groups such as ETSI is often necessary and highly pro-competitive.  *See Broadcom*, 501 F.3d at 303-04.  And, as Apple admits, ETSI has adopted an IPR Policy to govern procedures for the timely disclosure of IPR (ACC [DI 21] Answers to ¶¶ 25, 27).  Here, Apple's assertion that Nokia engaged in exclusionary conduct by abusing that process, while a cognizable concept in some situations, is simply not borne out here by Apple's own allegations.

---

[14]     *See, e.g., Rambus Inc. v. Fed. Trade Comm'n*, 522 F.3d 456, 460 (D.C. Cir. 2008) (alleging express refusal to license on FRAND terms after encouraging standardization of IPR); *In re Union Oil Co. of Cal.*, No. 9305, 2005 WL 2003365, at *5 (F.T.C. Aug. 2, 2005) (alleging affirmative false statements to SSO regarding ownership of IPR); *In re Dell Computer Corp.*, 121 F.T.C. 616, 624 (F.T.C. 1996) (alleging affirmative false statements regarding ownership of IPR where evidence showed SSO would likely have adopted different standard with proper disclosure).

[15]     This is supported by *Rambus* where, even after rich allegations of misconduct (involving withdrawal to avoid IPR disclosure, no FRAND obligations and a refusal to engage in FRAND licensing) were *proven*, the D.C. Circuit still found no liability.  *Rambus*, 522 F.3d at 460, 461.

Apple claims that Nokia belatedly declared four patents as essential to ETSI standards. As Apple explains, the potential competitive harm that arises from such purported activity is "patent hold-up" (*id.* ¶¶ 34-35).  But Apple admits the remedy under ETSI's IPR Policy for the "hold-up problem" is a legally enforceable commitment from essential IPR owners that they will limit themselves to FRAND compensation (*id.* ¶ 38).  *See Broadcom,* 501 F.3d at 314 (calling such commitments "important safeguards against monopoly power").

Nokia has alleged – and Apple has not denied – that Nokia did publicly disclose to ETSI the four patents-in-suit Apple claims were belatedly disclosed and, as part of that process, irrevocably committed to license those patents on FRAND terms (ACC [DI 21] ¶¶ 64, 68; Answer to ¶ 39).  Apple has also admitted that commitment is a binding obligation enforceable by this Court (ACC [DI 21] ¶ 70).  Thus, under Apple's allegations, there simply is no "hold-up problem" that could constitute the requisite anticompetitive conduct by Nokia.[16]

In addition, to the extent Apple's claims are based on the purported nondisclosure of information to ETSI, the four-year statute of limitations for such nondisclosure began to run from the time that Nokia purportedly failed to disclose IPR to ETSI (according to Apple, as early as 1996 and as late as 2001).  *Rotella v. Wood*, 528 U.S. 549, 558 (2000) (noting that in antitrust cases, "a cause of action accrues and the statute begins to run when a defendant commits an act that injures a plaintiff's business") (citation omitted).  Moreover, it has been more than four years since Nokia fully disclosed the existence of its essential IPR (with, according to Apple, the latest such disclosure coming in 2004).  Any potential antitrust liability based on these

---

[16]     Even if the FRAND obligation did not eliminate the possibility of harm, Apple undercuts its claim that Nokia's disclosure was untimely by failing to assert that: (i) the "claimed priority date" (ACC [DI 21] ¶ 64) triggered any disclosure duty; (ii) the Nokia IPR at issue was sufficiently well-developed or published that it should have been disclosed to ETSI; (iii) Nokia failed to act in accordance with industry standards; or (iv) Nokia violated ETSI policies (including the IPR Policy) in place at the relevant time or currently in place.

allegations is therefore time-barred.  *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S.

321, 338 (1971).

**2.      The Pleadings Show Nokia Complied with Its FRAND
Obligations and Sought Compensation It Is Owed**

Apple's second theory of exclusionary conduct claims Nokia falsely promised to license

patents on FRAND terms, and that Nokia then breached this commitment by asking for

"excessive" royalties during negotiations (ACC [DI 21] ¶¶ 68, 91).  The sole basis for this

allegation is that Nokia and Apple, years after Nokia made its declarations, were unable to agree

on terms.  The counterclaim contains no plausible factual allegation whatsoever that, at the time

that Nokia submitted FRAND declarations, it intended not to abide by them.  Nor does it plead

facts demonstrating any lack of obligation to or genuine interest from Nokia in negotiating a

FRAND agreement.  To the contrary, Apple concedes Nokia engaged in more than a year's

worth of negotiations with Apple and made a number of offers to Apple (*id.* ¶¶ 63-66, 85-92).

Nokia's FRAND commitment and subsequent activities – including the limited, FRAND-based

remedies sought in this suit – negate, in a legally binding way, Nokia's ability to use its patents

to harm competition by seeking supracompetitive royalties.

In short, Apple's refusal to pay FRAND compensation for Nokia's patents and the

unsuccessful FRAND negotiations cannot serve as the basis for an antitrust claim because the

alleged acts do not constitute exclusionary or predatory acts harmful to competition.  Not all acts

that displease businesses violate the Sherman Act, because that law is designed for "the

protection of competition, not competitors."  *Brown Shoe Co. v. United States*, 370 U.S. 294, 320

(1962).  And not all disagreements about contractual performance constitute valid antitrust

claims.[17]  Apple's allegation that Nokia's alleged offers "threaten[] to further increase costs

---

[17]      *See CBC*, 561 F.3d at 572-73; *Queen City Pizza,* 124 F.3d at 435.

associated with" mobile communications devices flies in the face of the holding in *Rambus* in which even alleged deception before an SSO resulting in a seller's higher price was not found to automatically constitute harm to competition.  522 F.3d at 466.

Additional support for the implausibility of this theory is that, despite railing about Nokia's offers not being FRAND-compliant, Apple does not offer a single specific allegation to explain how or why Nokia's offers – which included offers to license portfolios of essential patents as well as "a la carte" patent-by-patent terms – were unfair, unreasonable or discriminatory.  Apple fails to specify any of the contours, rights or obligations of the relevant FRAND commitments and how Nokia's offers strayed from those obligations.  Unlike other SSO cases, Apple's complaint is not that Nokia refused to engage with Apple over FRAND terms. Instead, Apple claims that Nokia's offers to Apple somehow did not constitute FRAND terms. Apple's claim thus fails by not explaining the limits it believes exist in the FRAND obligations and why Nokia purportedly violated them.[18]

For example, Apple simply characterizes Nokia's royalty requests as "unwarranted," "unjustifiable," "unfair," "unreasonable," "discriminatory," "exorbitant," or "highly excessive," or states that one Nokia offer was higher than another (ACC [DI 21] ¶¶ 10, 11, 85, 90, 91 and Introductory Statement ¶¶ 3, 9).  Apple makes no attempt to define what a FRAND royalty is under the relevant SSO obligations or to compare Nokia's offers to that definition.  Apple simply recites its own subjective *ipse dixit* that whatever Nokia offered was unreasonable and unfair. Regarding discrimination, Apple alleges that it asked Nokia what other licensees were paying, but Nokia purportedly refused to share that confidential, third-party information (ACC [DI 21] ¶ 92).  Thus, Apple concedes that it simply does not know one way or the other whether Nokia's

---

[18]     *See, e.g., Chemtech Int'l, Inc. v. Chemical Injection Techs.*, 170 F. App'x 805, 808 (3d Cir. 2006); *Gen. Motors Corp. v. New A.C. Chevrolet, Inc.*, 263 F.3d 296, 331-33 (3d Cir. 2001).

offers were discriminatory (*id.*).  In the end, all that can be discerned from Apple's pleading is that the amount Nokia asked for was more than Apple was willing to pay, which is factually insufficient to support its claims.[19]

> 3.      The *Noerr-Pennington* Doctrine Immunizes Nokia's Lawsuit.

Finally, Apple characterizes this lawsuit to recover FRAND compensation from Apple for Apple's use of ten Nokia's patents (for which Apple has paid nothing) as anticompetitive conduct.  This flies in the face of established doctrine insulating the filing of a legitimate complaint from antitrust liability.[20]

Although "sham" litigation can constitute anticompetitive activity, it takes more than a mere label to fit that bill.  The Federal Circuit has held that "[n]either the bringing of an unsuccessful suit to enforce patent rights, nor the effort to enforce a patent that falls to invalidity, subjects [plaintiff] to antitrust liability."  *C.R. Bard, Inc. v. M3 Systems. Inc.*, 157 F.3d 1340, 1369 (Fed. Cir. 1998).  Nokia has brought an objectively and subjectively meritorious suit to force Apple to pay patent royalties for the valid patents at issue that Apple is currently infringing.  Nokia simply asks this Court to enforce Apple's obligation to pay FRAND terms for certain essential patents Nokia believes Apple is using without payment.[21]

Apple appears to object in particular to the fact that Nokia has denominated its complaint as one for patent infringement when Apple contends it has a license (which, based on Apple's lack of payment to date, Apple appears to think is free) (ACC [DI 21] ¶¶ 104, 111, 124).  But the

---

[19]      To the extent Apple also asserts the discussion of non-essential patents is part of the breach theory in the antitrust claims, those allegations are also insufficient.  *See* Section III.

[20]      *See Eastern R.R. Presidents Conference v. Noerr Motor Freight*, 365 U.S. 127 (1961); *United Mine Workers of Am. v. Pennington*, 381 U.S. 657 (1965).

[21]      Even evidence of anticompetitive intent or purpose cannot transform otherwise legitimate activity into a sham.  *Cheminor Drugs, Ltd. v. Ethyl Corp.*, 168 F.3d 119, 122 (3d Cir. 1999).

fact is that courts routinely allow patent licensors to bring claims for patent infringement if the licensee refuses to pay royalties under the license.[22]  Thus, Apple's claim that Nokia breached the antitrust laws by purportedly placing the wrong label on its claim against Apple for FRAND compensation is not only implausible but legally inaccurate.

Apple also criticizes Nokia's request for an injunction.  But Apple ignores the relief that Nokia actually seeks.  Nokia does not seek an order enjoining Apple from practicing the essential patents-in-suit.  Instead, faced with Apple's current refusal to pay FRAND compensation for the Nokia IPR it is using, Nokia asked that injunctive relief be granted *only* in the event that Apple stubbornly refuses to pay FRAND compensation even after such compensation has been ordered by this Court and only for so long as Apple refuses to pay (*see* Complaint [DI 1] ¶¶ 139-40). Thus, this suit cannot plausibly be an anticompetitive act birthing Apple's antitrust claim.

### III.   APPLE'S CLAIM FOR BREACH OF CONTRACT (COUNT I) LACKS THE REQUISITE FACTUAL ALLEGATIONS

Although an independent claim against Nokia for breaching commitments to license essential patents on FRAND terms and conditions could be a potential cause of action, Apple fails to allege any real or plausible facts about the provisions of the contracts at issue or how Nokia purportedly breaches those provisions.[23]  Each of the elements of breach must be pled, and, as the Third Circuit recently noted, "it is no longer sufficient to allege mere elements of a cause of action; instead 'a complaint must allege facts suggestive of [the proscribed] conduct.'"

---

[22]   *See, e.g., Pixton v. B&B Plastics, Inc.*, 291 F.3d 1324 (Fed. Cir. 2002); *Seroctin Research & Techs., Inc. v. Unigen Pharm., Inc.*, 541 F. Supp. 2d 1238 (D. Utah 2008).

[23]   Apple does not even identify what law governs the contract it seeks to enforce.  But, under the law of this forum or Apple's principal place of business, California, its allegations are insufficient.  *See e.g. Millett v. TrueLink, Inc.*, 533 F. Supp. 2d 479 (D. Del. 2008) (requiring a contract, defendant's breach of an obligation and resulting damage); *McKell v. Wash. Mut., Inc.*, 49 Cal. Rptr. 3d 227 (Ct. App. 2006) (adding element of plaintiff's performance or excuse).

*Phillips*, 515 F.3d at 233.  As discussed in Section II.B.2, Apple fails to outline any of the contours of the underlying agreement it contends are breached or how they were breached.

Apple also claims Nokia breached its FRAND obligations by purportedly conditioning FRAND offers on obtaining licenses to Apple's non-essential patents.  Apple's theory, however, is defeated by the other counterclaim allegations.  By admitting that Nokia made offers that were clearly *not* conditioned on "grant-backs" of non-essential patents (*e.g.*, ACC [DI 21] ¶¶ 87, 91), and, by admitting that Apple itself offered licenses to at least some of its non-essential patents (*id.* ¶ 87), all Apple has established is that both sides discussed letting Apple pay royalties on essential patents with part of the consideration in a form other than cash.  There is no legal theory (and certainly no FRAND contractual provision or SSO IPR policy provision cited by Apple) that makes it unlawful to discuss using a cross license to non-essential patents as a partial substitute for cash royalties in negotiations over rights to essential patents.

Next, Apple alleges Nokia breached its contractual FRAND commitments by filing an infringement lawsuit seeking FRAND compensation and "threatening" Apple with an injunction in this lawsuit.  But, as in the *Noerr-Pennington* context discussed above, Apple's claim is fatally flawed because it ignores the relief Nokia seeks in its Complaint (*compare* ACC [DI 21] ¶¶ 91, 103-04, 124 *with* Complaint [DI 1] ¶¶ 139-40).  Nokia only seeks FRAND compensation for patents that the Court finds Apple infringes and to enjoin Apple if and for so long as Apple continues to use Nokia's patents for free after the Court has ordered Apple to pay FRAND royalties.  There is no credible theory under which Nokia's pursuit of this inherently FRAND-

compliant and judicially-approved relief would violate the contractual commitments at issue, and

Apple cites no contractual provision or SSO IPR policy that renders such behavior a breach.[24]

### IV.    APPLE'S CLAIM FOR PROMISSORY ESTOPPEL (COUNT II) IS BARRED BECAUSE THE PLEADINGS ESTABLISH THE PARTIES HAVE AN ENFORCEABLE CONTRACT

Apple's promissory estoppel claim also fails because it relies on equitable principles that

are unavailable where (as here) a contract provides an adequate remedy at law.  Both Nokia and

Apple acknowledge the existence of binding contractual commitments regarding ETSI FRAND

(ACC [DI 21] ¶¶ 70, 82, 108-09).  Regardless of what may be determined about the terms of the

contract in question, the pleadings show the existence of an express contact.  As such,

"promissory estoppel has no application."  *In re U.S. West, Inc. Sec. Litig.*, 201 F. Supp. 2d 302,

308 (D. Del. 2002).[25]  Though a party may plead breach of contract and promissory estoppel in

the alternative, once the court finds that a contract exists, the promissory estoppel claim should

be dismissed.  *See Fox v. Rodel, Inc.*, No. 98-531-SLR, 1999 U.S. Dist. LEXIS 15502, at *33

(D. Del. Sept. 13, 1999).  Indeed, where, as here, the parties agree there is an enforceable

contract for ETSI FRAND, there can be no parallel estoppel claim.  *Brown v. SAP Am., Inc.*,

No. 98-507-SLR, 1999 U.S. Dist. LEXIS 15525, at *44 (D. Del. Sept. 13, 1999).

---

[24]      Apple also fails to allege that it performed its own obligations under the relevant contract or contracts, as required by California law.  This failure naturally flows from Apple's inability to specify anything about the duties of either party under the contract.  As a result, Apple has no yardstick to measure its own performance either.

[25]       *See Genencor Int'l, Inc. v. Novo Nordisk A/S,* 766 A.2d 8, 12 (Del. 2000); *Weiss v. Nw. Broad. Inc.,* 140 F. Supp. 2d 336, 345 (D. Del. 2001).  The same analysis would apply if this issue were decided under California law.  *See Sprig Elec. Co. v. Los Angeles Unified Sch. Dist.*, No. B152367, 2002 WL 804611, at *5 (Cal. Ct. App. Apr. 30, 2002); *Premier Technical Sales, Inc. v. Digital Equip. Corp.*, 11 F. Supp. 2d 1156 (N.D. Cal. 1998).

## V.     APPLE'S CLAIMS FOR DECLARATORY RELIEF (COUNTS IV-VI) ARE DUPLICATIVE AND SHOULD BE DISMISSED

Counts IV-VI are defective because they seek declaratory relief that is duplicative of, and subsumed within, Apple's patent misuse defense to Nokia's infringement claims, as well as Apple's contract claim.  Indeed, the underlying alleged conduct and theories in Apple's patent misuse defense and breach of contract claim are identical to those in Counts IV-VI.  A court should not grant declaratory relief "'if it finds that a declaratory judgment action will not serve a useful purpose or is otherwise undesirable.'" *Gruntal & Co. v. Steinberg,* 837 F. Supp. 85, 89 (D.N.J. 1993) (citation omitted).  Courts routinely decline to exercise jurisdiction and dismiss declaratory claims where the same relief could be granted by virtue of a well-pled contract claim.[26]  In addition, in Count IV, Apple seeks a declaration that Nokia has *already breached* its FRAND commitments, and, consequently, its failure to pay the licensing fees proposed by Nokia was proper.  A declaratory judgment is inappropriate solely to adjudicate past conduct.  *Id.* at 89. The purpose of such actions is to enable parties to understand their rights and liabilities so that they can adjust their *future action* to avoid accruing avoidable damages.  *Nucor Corp. v. Aceros Y Maquilas de Occidente, S.A. de C.V.*, 28 F.3d 572, 577 (7th Cir. 1994).  The purported conduct Apple complains about has already occurred.  Thus, a declaration Nokia acted improperly will be tantamount to a breach of contract.  As such, the appropriate remedy would be the relief sought by Apple in its patent misuse defense or breach of contract claim.  Finally, the declaratory claim in Count VI should be dismissed based on the aforementioned deficiencies in Count III.

### CONCLUSION

For the foregoing reasons, Nokia's Motion to Dismiss should be granted.

---

[26]     *See, e.g., Del. State Univ. Student Hous. Found. v. Ambling Mgmt. Co.*, 556 F. Supp. 2d 367, 372-75 (D. Del. 2008); *Smithkline Beecham Corp. v. Continental Ins. Co.,* No. Civ.A 04-2252, 2004 WL 1773713, at * 2 (E.D. Pa. Aug. 4, 2004).

MORRIS, NICHOLS, ARSHT & TUNNELL LLP


*/s/ Rodger D. Smith II*
_____

Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
rsmith@mnat.com

*Attorneys for Plaintiff Nokia Corporation*

OF COUNSEL:

Patrick J. Flinn
Peter Kontio
John D. Haynes
Mark A. McCarty
Adam J. Biegel
ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA  30309
(404) 881-7000

March 11, 2010
3444952

## CERTIFICATE OF SERVICE

I hereby certify that on March 11, 2010, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to:

> Richard L. Horwitz, Esquire
> David E. Moore, Esquire
> POTTER ANDERSON & CORROON LLP

I further certify that I caused to be served copies of the foregoing document on March 11, 2010, upon the following in the manner indicated:

Richard L. Horwitz, Esquire                                      *VIA ELECTRONIC MAIL*
David E. Moore, Esquire
POTTER ANDERSON & CORROON LLP
Hercules Plaza – 6th Floor
1313 North Market Street
Wilmington, DE  19801

William F. Lee, Esquire                                          *VIA ELECTRONIC MAIL*
Mark D. Selwyn, Esquire
WILMERHALE
60 State Street
Boston, MA  02109

Kenneth H. Bridges, Esquire                                      *VIA ELECTRONIC MAIL*
Michael T. Pieja, Esquire
WONG, CABELLO, LUTSCH, RUTHERFORD
  & BRUCCULERI, LLP
540 Cowper Street
Palo Alto, CA  94301

> */s/ Rodger D. Smith II*
> _____
> Rodger D. Smith II (#3778)