IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NOKIA CORPORATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 09-791 (GMS) |
| | ) |
| APPLE INC., | ) |
| | ) |
| Defendant. | ) |
| APPLE INC. | ) |
| | ) |
| Counterclaim-Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| NOKIA CORPORATION and NOKIA INC., | ) |
| | ) |
| Counterclaim-Defendants. | ) |

**NOKIA'S OPENING BRIEF IN SUPPORT OF MOTION TO BIFURCATE
AND TO STAY DISCOVERY OF ANTITRUST AND CONTRACT ISSUES**

                                                Morris, Nichols, Arsht & Tunnell LLP
                                                Jack B. Blumenfeld (#1014)
                                                Rodger D. Smith II (#3778)
                                                1201 North Market Street
                                                P.O. Box 1347
                                                Wilmington, DE  19899
                                                (302) 658-9200

OF COUNSEL:                        jblumenfeld@mnat.com
                                                rsmith@mnat.com

Patrick J. Flinn
Peter Kontio                          *Attorneys for Nokia Corporation and Nokia Inc.*
John D. Haynes
Mark A. McCarty
Adam J. Biegel
Alston & Bird LLP
1201 W. Peachtree Street
Atlanta, GA  30309-3424
(404) 881-7000

March 18, 2010

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................. 1

NATURE AND STAGE OF THE PROCEEDING.......................................................... 2

SUMMARY OF THE ARGUMENT ............................................................................... 2

STATEMENT OF FACTS ............................................................................................... 4

ARGUMENT .................................................................................................................... 7

    I.    THE ANTITRUST AND CONTRACT ISSUES SHOULD
         BE BIFURCATED. .......................................................................................7

         A.  The Issues Sought To Be Tried Are Significantly Different. ..........................9

         B.  The Issues Will Require Different Witnesses and Proof. .............................10

         C.  Bifurcation Is More Efficient........................................................................11

         D.  Apple Will Not Be Substantially Prejudiced if the Issues Are Bifurcated. ..13

    II.   DISCOVERY RELATED TO THE ANTITRUST AND
         CONTRACT ISSUES SHOULD BE STAYED................................................14

CONCLUSION............................................................................................................... 15

**TABLE OF AUTHORITIES**

**CASES**

*Akzona Inc. v. E.I. du Pont de Nemours & Co.*,
   607 F. Supp. 227 (D. Del. 1984) .................................................................................. *passim*

*ASM Am., Inc. v. Genus, Inc.*,
   No. 01-2190, 2002 U.S. Dist. Lexis 1351 ............................................................... 8, 12, 14-15

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) .................................................................................................................14

*Brown Shoe Co. v. United States*,
   370 U.S. 294 (1962) ...................................................................................................................9

*Eurand Inc. v. Mylan Pharms., Inc.*,
   Civ. No. 08-889, 2009 WL 3172197 (D. Del. Oct. 1, 2009) ......................................... *passim*

*Fischer & Porter Co. v. Sheffield Corp.*,
   31 F.R.D. 534 (D. Del. 1962) ...............................................................................................8, 10

*Harrison Aire, Inc. v. Aerostar Int'l., Inc.*,
   423 F.3d 374 (3d Cir. 2005) .......................................................................................................9

*In re Hydrogen Peroxide Antitrust Litig.*,
   552 F.3d 305 (3d Cir. 2008) .....................................................................................................13

*In re Innotron Diagnostics,*
   800 F.2d 1077 (Fed. Cir. 1986) ........................................................................................8, 10, 12

*Monsanto Co. v. E.I. du Pont de Nemours & Co.*,
   No. 09-CV-686, 2009 WL 3012584 (E.D. Mo. Sept. 16, 2009) ..................................... 8, 12-13

*Official Comm. of Unsecured Creditors v. Shapiro*,
   190 F.R.D. 352 (E.D. Pa. 2000) .................................................................................................8

*Queen City Pizza, Inc. v. Domino's Pizza, Inc.*,
   124 F.3d 430 (3d Cir. 1997) .......................................................................................................9

*Synopsys, Inc. v. Magma Design Automation,*
   C.A. No. 05-701, 2006 U.S. Dist. Lexis 33751 (D. Del. May 25, 2006) .................................8

*United States v. Grinnell Corp.*,
   384 U.S. 563 (1966) ...................................................................................................................9

*Warner Lambert Co. v. Purepac Pharm. Co.*,
   No. Civ.A. 98-02749, 2000 WL 34213890 (D.N.J. Dec. 22, 2000) ..................................8, 12

**R**ULES AND **S**TATUTES

Federal Rule of Civil Procedure 12(b)(6) ..................................................................................1

Federal Rule of Civil Procedure 42(b)......................................................................................7

## INTRODUCTION

The lawsuit began when Nokia sued Apple for not paying any royalties for the use of 10 patents declared essential to the practice of mobile phone technology standards. In response, Apple has counterclaimed for infringement of 9 of its own patents and seeks a declaratory judgment that all 10 of the Nokia patents are invalid and not infringed. In addition to seeking to litigate the validity and scope of nineteen patents, Apple also added antitrust and contract counterclaims in its recent, amended Answer and Counterclaims.[1] Apple also re-casts its antitrust claims in the form of a patent misuse affirmative defense.

Apple's antitrust claims (and the overlapping misuse defense) are relevant and ripe for adjudication only if Nokia's 10 patents are found to be valid, enforceable, and essential to certain telecommunications standards *and* if Apple is found to infringe those patents and, therefore, needs a license. If any of these preconditions is not present, Apple's antitrust and patent misuse claims and overlapping misuse defense become moot. Moreover, to the extent that Apple's antitrust and contract counterclaims go beyond the 10 Nokia patents in this case, they expand and complicate this proceeding by potentially sweeping in hundreds of Nokia essential patents (many of them issued by foreign jurisdictions) that that are not at issue in this litigation.

Nokia Corporation and Nokia Inc. ("Nokia") accordingly move to bifurcate the non-patent counterclaims (and the antitrust-premised misuse defense) and stay them pending disposition of the merits of the patent case. Bifurcation and stay are appropriate because (1) the antitrust and other non-patent issues depend on the outcome of the merits of Nokia's patent claims, (2) there is very little factual overlap between the patent and non-patent issues, and

---

[1] Nokia has moved to dismiss these claims under Federal Rule of Civil Procedure 12(b)(6) because they are, *inter alia*, implausible, insufficient and duplicative (Motion to Dismiss [DI 25]).

(3) the factual and legal scope of the case is enlarged enormously if the antitrust issues and the alleged misuse of hundreds of other Nokia patents are litigated at the same time as the merits of the 19 patents already in the case.

## NATURE AND STAGE OF THE PROCEEDING

On October 22, 2009, Nokia Corporation filed a complaint against Apple Inc. for infringing the 10 Nokia patents, which are declared to be essential to certain wireless technology standards (DI 1). On February 19, 2010, Apple amended its answer and counterclaims[2], alleging infringement of 9 patents. In addition, Apple asserted contract claims arising out Nokia's participating in the standards-setting process. The amended counterclaim also added, for the first time, a claim under Section 2 of the Sherman Act and adding Nokia Inc. (Nokia Corporation's US subsidiary) as a defendant (DI 21). On March 11, 2010, Nokia moved to dismiss Apple's contract and antitrust counterclaims (DI 25). A status and scheduling conference in this matter has been scheduled for April 9, 2010 (DI 24.) Nokia now moves to bifurcate and stay discovery of the antitrust, contract, and misuse issues to the extent any survive the pleading stage.

## SUMMARY OF THE ARGUMENT

Apple's contract, antitrust, and patent misuse counterclaims and overlapping misuse defense should be bifurcated from adjudication of the parties' patent infringement claims for four reasons.

1. Apple's antitrust and patent misuse counterclaims and overlapping misuse defense (to the extent they are based on the Nokia Asserted Patents) rise or fall based upon resolution of two key issues: (i) whether the Nokia Asserted Patents are valid, enforceable, essential and infringed; and (ii) whether the license offers that Nokia has made to Apple comply

---

[2] Among other changes from its original counterclaim, Apple dropped a claim for unfair competition under California law.

with Nokia's commitments to license on a fair, reasonable and non-discriminatory (FRAND) basis. If the Nokia Asserted Patents are not valid, enforceable, essential and infringed, then Nokia most likely lacks the market power required for Apple to state an antitrust or patent misuse claim. And if the FRAND compensation awarded by the Court for the Nokia Asserted Patents is in line with Nokia's licensing offers to Apple and Nokia's FRAND licensing commitments, then Nokia has not engaged in any anticompetitive exclusionary conduct and has not breached its FRAND obligations. Both of these issues will be resolved in the course of adjudicating Nokia's patent infringement claims. Therefore, judicial efficiency and common sense strongly counsel in favor of adjudicating Nokia's patent infringement claims in an initial phase before addressing Apple's antitrust, contract and patent misuse claims and overlapping misuse defense.

2. To the extent Apple's antitrust, contract, and patent misuse counterclaims go beyond the Nokia Asserted Patents to all of Nokia's essential patent portfolio, they radically expand the scope of discovery and the litigation to include hundreds of Nokia patents, including a substantial number of foreign patents. In order to litigate these claims, the parties and the Court would have to address the validity, enforceability, essentiality, infringement and potentially even the value of each of these patents (including the foreign ones). That entire exercise may be unnecessary if the Court determines, in the course of adjudicating Nokia's patent infringement claims, that FRAND compensation for the Nokia Asserted Patents is in line with Nokia's licensing offers to Apple and Nokia's FRAND commitments. In that case, Apple would likely forego its antitrust, contract and patent misuse claims with regard to Nokia's entire essential patent portfolio.

3.      Apple has conceded that its antitrust and patent misuse claims and overlapping misuse defense raise "complicated and distinct" issues that make them appropriate for bifurcation.

4.      Apple will suffer no prejudice from bifurcating the antitrust and contract issues. Apple has admitted that it does not have any pecuniary, out-of-pocket loss in connection with its non-patent counterclaims and, in fact, Apple will be saved the trouble and expense of litigating those non-patent counterclaims if certain key elements are decided against Apple in the course of adjudicating Nokia's patent infringement claims. And, beyond the 10 Nokia patents at issue here, none of the remaining patents in Nokia's essential patent portfolio are the subject of any enforcement effort in this Court or anywhere else.  All that has happened is that Nokia made offers to Apple to license these patents that Apple found unacceptable.  Accordingly, there is no prejudice in phasing Apple's expansive antitrust, contract, and patent misuse counterclaims after the parties' patent infringement claims.

## STATEMENT OF FACTS

As described in pleadings already submitted in this case, between 2007 and 2009, Apple and Nokia engaged in negotiations over a potential license agreement for the use of Nokia's essential patents.  During the course of negotiations, Nokia proposed both rates for a license to Nokia's entire portfolio of essential patents for each of various telecommunications standards and "a la carte" rates for Apple to license individual Nokia essential patents.

Those negotiations were ultimately fruitless, and Nokia brought suit against Apple on October 22, 2009, for infringing 10 Nokia patents (DI 1).  The 10 patents cover a wide range of technologies needed to implement GSM, UMTS, and IEEE 802.11 standards: U.S. Patents Nos. 5,802,465; 5,862,178; 5,946,651; 6,359,904; 6,694,135; 6,775,548; 6,882,727; 7,009,940; 7,092,672; and 7,403,621.  Broadly speaking, they fall into groups relating to wireless data

transmission, speech coding, and security. The wireless data patents cover technologies including formation of a virtual channel (465 Patent), transferring data in octet form (905 Patent), polling codes for communication during downlink transfer (135 Patent), accessing the radio network (548 Patent), and reporting signal quality measurements (672 Patent). The speech coding patents include a multiple-stage channel coding scheme (178 Patent), and a postfilter for processing speech signals derived from an excitation code book and adaptive code book of a speech decoder (651 Patent). Finally, the security patents involve encryption and integrity algorithms for improved security in parallel transmissions (727 and 940 Patents), and ensuring secure communication during a network handover (621 Patent).

Nokia has declared these and hundreds of other patents as essential to certain wireless standards and has agreed to limit itself to FRAND compensation for use of the patents by manufacturers of standards-compliant products. Nokia seeks such FRAND compensation for the 10 Nokia patents asserted in this litigation.

Apple counterclaims against Nokia for infringement of 9 of its own patents, none of which have been declared to be essential to the practice of any technology standard: 5,848,105; 5,555,369; 7,469,381; 5,634,074; 7,383,453; 6,189,034; 5,455,854; 6,239,795; and 5,315,703. These patents involve equally complicated technology that, for the most part, does not overlap with that covered by Nokia's patents. Broadly speaking, Apple's patents are directed to signal processing techniques to exploit cyclostationary properties of Gausian Minimum Shift Keyed signals (105 Patent), computer application development platforms (369 Patent), management and control over aspects of user interface (381 Patent and 795 Patent), computer interface signal processing (074 Patent), processor voltage manipulation for minimizing static

power leakage (453 Patent), and telephony call processing and notification systems using object oriented computing principles (034 Patent, 703 Patent, and 854 Patent).

Moreover, rather than agreeing that it should pay royalties for the Nokia patents and litigating the proper amount of FRAND compensation for them, Apple's response to Nokia's lawsuit was to deny that the patents are essential to any standard, deny that Apple infringed any valid claims of any of the patents and request a declaratory judgment of non-infringement for all 10 of the patents (ACC [DI 21] Answers to ¶¶ 2, 51, 53, 55, 57, 59, 61, 63, 65, 67, 69, First and Fifth Defense, and Counterclaim ¶¶ 1, 3, 139-98). Apple alleges, without further elaboration or explanation, that Nokia's FRAND offers for its portfolio of essential patents and the "a la carte" per patent rates were "unwarranted," "unjustifiable," "unfair," "unreasonable," "discriminatory," "exorbitant," or "highly excessive," and Apple asserts claims for breach of contract, promissory estoppel *and* declaratory judgment, arguing that Nokia breached its FRAND commitments when it made both its portfolio offers and per-patent offers (ACC [DI 21] Introductory Statement ¶¶ 3, 9, Answers to ¶¶ 5-6, 45-47, 134-14, and Counterclaim ¶¶ 10, 85, 90, 91, 107-18, 125-28). Nokia has moved to dismiss these claims.

Moreover, in addition to wanting to litigate the scope and validity of 19 patents, and the FRAND compensation for the 10 Nokia patents, Apple alleges that Nokia engaged in monopolization in violation of Section 2 of the Sherman Act by: (1) belatedly disclosing four of the 10 Nokia patents during the standards-setting process; (2) making false FRAND commitments that Nokia purportedly never intended to keep and then breaching the commitments by requesting amounts in license negotiations Apple thought were too high and asking, at certain points in the negotiations, that Apple grant a license to certain Apple patents that were not essential to any standard; and (3) bringing this suit against Apple (ACC [DI 21]

Counterclaim ¶¶ 7, 11, 64-65, 68-69, 80-81, 93-106, and 120-124). Apple also asserts an entirely duplicative patent misuse defense and counterclaim based on this same alleged "course of misconduct enabl[ing] Nokia to obtain monopoly power," "Nokia's assertion of its wrongfully obtained monopoly power," and this alleged misconduct's supposed "anticompetitive effects" and "threatened injury" to competition and consumers (ACC [DI 21] Sixth Defense and Counterclaim ¶¶ 134-38). As Apple acknowledged in the Joint Status Report submitted to this Court on March 8, 2010 [DI 23] these issues should be bifurcated because:

> [t]he antitrust claims involve complex and distinct issues such as market definition and power, the timing of Nokia's patent applications and disclosure thereof, Nokia's promotion of its technologies to the SSOs, and what would have happened to the standards had Nokia timely disclosed its IPR and the falsity of its FRAND commitments.

## ARGUMENT

### I. THE ANTITRUST AND CONTRACT ISSUES SHOULD BE BIFURCATED.

The Court has the inherent power to sequence and structure this litigation in a way that: (1) eliminates the need to litigate claims or defenses that might ultimately become moot; and (2) provides the parties with some guidance on fundamental issues before they launch into litigating broader, more complicated, time consuming, and expensive claims and defenses. Pursuant to Rule 42(b), this Court may order a separate trial of any claim "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy." Fed. R. Civ. P. 42(b). Courts, in exercising their discretion regarding whether to bifurcate claims such as those raised in this litigation, examine factors such as (1) whether the issues sought to be bifurcated are significantly different, (2) whether resolution of those issues would require the testimony of different witnesses and different evidence, (3) whether bifurcation will lead to greater efficiency in resolving the litigation, and (4) whether the party opposing the bifurcation

will be substantially prejudiced if it is granted. *In re Innotron Diagnostics,* 800 F.2d 1077, 1085 (Fed. Cir. 1986); *Official Comm. of Unsecured Creditors v. Shapiro*, 190 F.R.D. 352, 355 (E.D. Pa. 2000); *Fischer & Porter Co. v. Sheffield Corp.*, 31 F.R.D. 534, 535, 539-40 (D. Del. 1962).

As part of its exercise of discretion, each court must "evaluate the facts and circumstances of each case." *Akzona Inc. v. E.I. du Pont de Nemours & Co.*, 607 F. Supp. 227, 232 (D. Del. 1984). *See also Synopsys, Inc. v. Magma Design Automation,* C.A. No. 05-701, 2006 U.S. Dist. Lexis 33751, at *11 (D. Del. May 25, 2006). Courts applying this analysis to cases involving both patent infringement claims and antitrust counterclaims frequently find that these factors warrant staying the antitrust counterclaims until after the resolution of patent invalidity issues. *Innotron,* 800 F.2d at 1085; *Masimo Corp. v. Philips Electronics N. Am. Corp.*, Civ. No. 09-80, at 3-4 (D. Del. March 13, 2010) (Ex. 1); *Eurand Inc. v. Mylan Pharms., Inc.,* Civ. No. 08-889, 2009 WL 3172197, at *1 (D. Del. Oct. 1, 2009); *Monsanto Co. v. E.I. du Pont de Nemours & Co.*, No. 09-CV-686, 2009 WL 3012584, at *1 (E.D. Mo. Sept. 16, 2009); *ASM Am., Inc. v. Genus, Inc.*, No. 01-2190, 2002 U.S. Dist. Lexis 1351, at **18-19 (N.D. Cal. Jan 9, 2002); *Akzona,* 607 F. Supp. at 232-36; *Warner Lambert Co. v. Purepac Pharm. Co.*, No. Civ.A. 98-02749, 2000 WL 34213890, at *11 (D.N.J. Dec. 22, 2000); *Fischer & Porter*, 31 F.R.D. at 535, 539-40.

The application of these factors to the counterclaims and defenses asserted by Apple demonstrates that, as an initial matter, Apple's antitrust and contract counterclaims and overlapping misuse defense involve significantly different legal issues and assert far different underlying facts encompassing vastly disparate time periods and geographies. In addition, these counterclaims with regard to the Nokia Asserted Patents could be mooted entirely or narrowed significantly by resolution of Nokia's infringement claims and determination of appropriate

FRAND compensation for the Nokia Asserted Patents. And finally, Apple has largely agreed that these antitrust issues should be bifurcated and tried after the infringement issues in this case.

### A. The Issues Sought To Be Tried Are Significantly Different.

One important factor militating in favor of bifurcation of this dispute is the vast difference between the patent validity and infringement issues on one hand and the contract, antitrust and patent misuse issues on the other. *See, e.g., Eurand*, 2009 WL 3172197, at *2. Resolution of the patent infringement claims involves such issues as the essentiality and validity of each of the 10 Nokia patents in this case, the infringement of each of the patents by Apple, and the amount of FRAND compensation that Apple owes Nokia for these 10 patents.

In order to prevail at trial on its Sherman Act Section 2 claim and derivative patent misuse claim, however, Apple must satisfy an entirely different – and *vastly* broader – set of elements. For example, Apple must first properly define what it now vaguely asserts are an unspecified number of "Input Technologies Markets" consisting of worldwide "markets for technologies that – before the standards were implemented – were competing to perform each of the various functions" covered by each of the ten Nokia Asserted Patents (ACC [DI 21] Counterclaim ¶¶ 100-01). *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 437 (3d Cir. 1997). Second, in order to pursue a monopolization claim under Section 2 of the Sherman Act, Apple must prove that Nokia has monopoly power, i.e., "the power to control prices or exclude competition in" each of these "Input Technologies Markets." *Harrison Aire, Inc. v. Aerostar Int'l., Inc.*, 423 F.3d 374, 380 (3d Cir. 2005). Third, Apple must show that the monopoly power was willfully and wrongfully acquired or maintained. *United States v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966). Fourth, Apple must go beyond showing harm to a competitor, i.e. itself, and must show harm to competition. *Brown Shoe Co. v. United States*, 370 U.S. 294, 320 (1962).

In order to prevail on its patent misuse case, Apple must similarly establish Nokia's monopoly power, bad faith and anticompetitive purpose. *Eurand*, 2009 WL 3172197, at *2; *Akzona*, 607 F. Supp. at 235. These extensive and complex antitrust and patent misuse issues, which will doubtlessly also engender substantial expert testimony, have no bearing on the resolution of Nokia's and Apple's alleged patent infringement or validity claims, and this deliberate and unnecessary sideshow should be shelved to aid the resolution of the truly potentially dispositive issues in this case.

### B. The Issues Will Require Different Witnesses and Proof.

An additional element demonstrating the need for bifurcation is the need for different proof and witnesses to establish the antitrust claims. *Innotron,* 800 F.2d at 1085 ("Avoidance of prejudice and confusion is served in trying first the patent issues, without injecting the different [antitrust] counterclaim issues which require different proof and different witnesses."); *Masimo*, Civ. No. 09-80, at 4; *Fischer & Porter*, 31 F.R.D. at 535, 539-40. In this litigation, proof of the antitrust issues depends on a wide array of factual documentary evidence and testimony dating from the 1990s and 2000s – much of it *from third parties* and entirely irrelevant to the patent infringement claims – regarding, e.g., Apple's allegations that:

(1) Nokia improperly delayed disclosure of the IPR related to the 621 patent between 2000 and 2004;

(2) Nokia improperly delayed disclosure of the IPR related to the 672 patent between 1999 and 2001;

(3) Nokia improperly delayed disclosure of the IPR related to the 178 patent between 1994 and 1997;

(4) Nokia improperly delayed disclosure of the IPR related to the 940 patent between 2000 and 2001;

(5) for each of the foregoing patents, that the "relevant working group" within either ETSI or IEEE would have not incorporated the relevant IPR into the relevant standard if it had been aware that Nokia possessed relevant IPR;

- 10 -

(6)   at the time that Nokia entered into each FRAND commitment for each Nokia patent at issue – over a period of several years – Nokia intended not to honor that FRAND commitment;

(7)   during that same time period, the standard settings organizations would not have incorporated each Nokia patent at issue into the relevant standards if they had known that Nokia intended not to honor the FRAND commitment;

(8)   reasonable technological substitutes existed at the time for each of Nokia's patented inventions at issue; and

(9)   Nokia's actions have injured competition and customers.

(ACC [DI 21] Counterclaim ¶¶ 64-83, 120-24, and 135-38).  These factual determinations are not relevant to any of the patent infringement issues.  Producing and presenting this evidence would waste resources and distract the fact finder from the litigation's true fact issues.

Proof of Apple's contract counterclaims would require determination of whether Nokia's portfolio and "a la carte" per-patent offers for its essential patents, which included hundreds of patents issued in jurisdictions throughout the world, satisfied Nokia's FRAND commitments.  In order to determine whether Nokia complied with its FRAND commitments for each one of these patents (because Nokia made those commitments on an individual, patent-by-patent basis), the Court would have to adjudicate the individual essentiality, scope, validity, and potentially the value of these hundreds of Nokia patents from around the world. Assuming that the Court even has jurisdiction to adjudicate issues related to foreign patents (or should exercise that jurisdiction, if it exists, given considerations of comity to foreign courts on issues concerning foreign patent), this exercise would impose a tremendous (and unnecessary) burden on both the parties and the Court to resolve a dispute that cannot be tied to any concrete harm to Apple.

        **C.**    **Bifurcation Is More Efficient.**

This case is particularly well-suited for bifurcation because resolution of the legal and factual issues relevant to the 10 Nokia patents will either entirely do away with Apple's

burdensome and tangential antitrust claims and related contract claims or will vastly streamline them. *Innotron*, 800 F.2d at 1085; *Masimo*, Civ. No. 09-80, at 5; *Eurand*, 2009 WL 3172197, at *1; *Monsanto*, 2009 WL 3012584, at *2; *ASM*, 2002 U.S. Dist. Lexis 1351, at **18-21; *Akzona*, 607 F. Supp. at 234; *Warner Lambert*, 2000 WL 34213890, at *12.

First, Apple has argued that none of the 10 Nokia patents are essential. If a fact finder agreed that these patents were not essential and that Apple did not infringe those, then Nokia would have no market power in the markets as defined by Apple, and Apple's antitrust claims would be entirely mooted (as would be Apple's argument that Nokia engaged in patent misuse by abusing its monopoly power – a point established by Apple's own patent misuse counterclaim, which cites the dispute over the essentiality of the 10 Nokia patents as the sole basis for declaratory judgment jurisdiction). And even if a fact finder only found that certain of Nokia's patents were not essential, the scope of the antitrust and contract discovery and fact-finding would be proportionately reduced.

Second, Apple alleges that Nokia intended, years ago, to breach its FRAND commitments because Nokia is allegedly currently breaching its FRAND commitments in its negotiations with Apple. If a fact finder determined the appropriate level of FRAND compensation for the Nokia Asserted Patents and that compensation was consistent with Nokia's prior offers to Apple, then Apple's antitrust, contract, and misuse allegation would evaporate with regard to at least the 10 patents in this case and potentially other essential patents in Nokia's portfolio, thereby sparing the Court and the parties any need to examine Nokia's subjective intent regarding its FRAND commitment for each of the 10 Nokia patents-in-suit over a period of several years and certainly avoiding the need to determine whether Nokia's offers for its entire portfolio of hundreds of essential patents complied with FRAND. Indeed, the latter exercise that

would require the Court to examine the validity, essentiality, infringement and potentially value of hundreds of patents issued in jurisdictions around the globe.

Third, and by the same token, if it were determined that FRAND compensation for the Nokia Asserted Patents was in line with Nokia's per-patent offers and, therefore, Nokia had complied with its FRAND commitments, then Apple would have suffered no injury to its business or property, and could not maintain *any* antitrust claims. Injury to business or property is necessary to show antitrust standing, and where a plaintiff cannot show that is has suffered such an injury, its claim fails. *In re Hydrogen Peroxide Antitrust Litig.,* 552 F.3d 305, 311 (3d Cir. 2008). Such a determination would also be fatal to Apple's contention that Nokia engaged in exclusionary conduct by falsely promising to abide by Nokia's FRAND commitment.

In short, the only outcome from an initial adjudication of Nokia's patent infringement claims that would not necessarily streamline the remaining issues in the case would be a determination that the Nokia Asserted Patents are valid, enforceable, essential and infringed by Apple but that the appropriate FRAND compensation for the Nokia Asserted Patents is well below the financial terms offered by Nokia to Apple in its license offers.

### D. Apple Will Not Be Substantially Prejudiced if the Issues Are Bifurcated.

Apple, in the Joint Status Report submitted to this Court on March 8, 2010 [DI 23], also suggested that the antitrust and patent misuse issues should be bifurcated and should take secondary importance. Even if Apple were to oppose bifurcation of the antitrust claims until after the patent litigation is complete, Apple would be highly unlikely to demonstrate substantial prejudice, in light of the fact that Apple did not see fit to raise any antitrust claims until it needed to respond to Nokia's claims of patent infringement, and only then in its *amended* answer and counterclaims as a seeming afterthought. *Masimo*, Civ. No. 09-80, at 5; *Monsanto*, 2009 WL

3012584, at *2; *ASM*, 2002 U.S. Dist. Lexis 1351, at *18.  In addition, any prejudice that could conceivably be claimed by Apple with regard to placing the antitrust and contract counterclaims and overlapping misuse defenses after the patent infringement claims is outweighed by the delay, expense and inconvenience which Nokia, Apple and the Court are likely to experience if trial of the potentially dispositive issues of validity, enforceability, essentiality, infringement, and value of the Nokia Asserted Patents is yoked to the vastly more complex and time consuming elements of Apple's antitrust, contract, and misuse claims and derivative misuse defense.

Moreover, to the extent that Apple's antitrust, contract, and misuse counterclaims address patents other than the Nokia Asserted Patents, the dispute between the parties over those patents is not even ripe for resolution.  Nokia has not taken any steps to enforce those patents against Apple, and Apple's claims are therefore apparently based solely on offers that Nokia made to Apple.  The simple act of making an offer has not caused Apple any harm and Apple pleads no such harm.  Given this fact, there simply is no compelling reason for the parties or the Court to invest substantial time and money in litigating claims that are based on patents other than the Nokia Asserted Patents in suit.

## II.  DISCOVERY RELATED TO THE ANTITRUST AND CONTRACT ISSUES SHOULD BE STAYED.

As the Supreme Court recently noted in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007), "proceeding to antitrust discovery can be expensive" and can involve a "potentially massive factual controversy."  As is detailed in sections I.A. and B. above, the potential antitrust discovery in this litigation will be massive, as would discovery regarding the essentiality, infringement, validity, and FRAND compensation of hundreds of Nokia patents worldwide (assuming the Court would even have jurisdiction to consider such matters).  These distinguishable issues, involving entirely different time periods, witnesses and geographies, can

be easily stayed while the potentially dispositive patent infringement issues are being determined. Because resolution of these patent infringement issues in any one of several manners, as detailed in section I.C. above, has potential to obviate the need for some or all of this burdensome discovery, staying discovery in this instance is also warranted. *Masimo*, Civ. No. 09-80, at 6-10; *Eurand*, 2009 WL 3172197, at *2; *ASM*, 2002 U.S. Dist. Lexis 1351, at *21; *Akzona*, 607 F. Supp. at 236.

## CONCLUSION

For the foregoing reasons, Nokia's Motion to Bifurcate and Stay should be granted.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jack B. Blumenfeld*

Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
rsmith@mnat.com

*Attorneys for Nokia Corporation and Nokia Inc.*

OF COUNSEL:

Patrick J. Flinn
Peter Kontio
John D. Haynes
Mark A. McCarty
Adam J. Biegel
ALSTON & BIRD LLP
1201 W. Peachtree Street
Atlanta, GA  30309-3424
(404) 881-7000

March 18, 2010
3462392

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 18, 2010 I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing to:

> Richard L. Horwitz, Esquire
> David E. Moore, Esquire
> POTTER ANDERSON & CORROON LLP

I further certify that I caused to be served copies of the foregoing document on March 18, 2010 upon the following in the manner indicated:

| | |
|---|---|
| Richard L. Horwitz, Esquire<br>David E. Moore, Esquire<br>POTTER ANDERSON & CORROON LLP<br>Hercules Plaza – 6th Floor<br>1313 North Market Street<br>Wilmington, DE  19801 | *VIA ELECTRONIC MAIL* |
| William F. Lee, Esquire<br>Mark D. Selwyn, Esquire<br>WILMERHALE<br>60 State Street<br>Boston, MA  02109 | *VIA ELECTRONIC MAIL* |
| Kenneth H. Bridges, Esquire<br>Michael T. Pieja, Esquire<br>WONG, CABELLO, LUTSCH, RUTHERFORD<br>  & BRUCCULERI, LLP<br>540 Cowper Street<br>Palo Alto, CA  94301 | *VIA ELECTRONIC MAIL* |

*/s/ Jack B. Blumenfeld*

Jack B. Blumenfeld (#1014)