## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

NOKIA CORPORATION,                    )
                                      )
      Plaintiff,                   )
                                      )
    v.                             )     C.A. No. 09-791-GMS
                                      )
APPLE INC.,                           )
                                      )
      Defendant.                   )
                                      )
_____      )
APPLE INC.,                           )
                                      )
      Counterclaim-Plaintiff,      )
                                      )
    v.                             )
                                      )
NOKIA CORPORATION and NOKIA INC.,     )
                                      )
      Counterclaim-Defendants.     )

## APPLE INC.'S OPPOSITION TO
## NOKIA CORPORATION'S AND NOKIA, INC.'S MOTION TO DISMISS

OF COUNSEL:

William F. Lee
Mark D. Selwyn
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109

Mark D. Selwyn
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1117 California Avenue
Palo Alto, CA 94304

Kenneth H. Bridges
Michael T. Pieja
WONG CABELLO
540 Cowper Street, Suite 100
Palo Alto, CA

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19899
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant/Counterclaim-Plaintiff
Apple Inc.*

Dated: March 29, 2010
959209 / 35035

# TABLE OF CONTENTS

I.      INTRODUCTION ...........................................................................................................1

II.     NATURE AND STAGE OF THE PROCEEDING.....................................................2

III.    SUMMARY OF THE ARGUMENT .........................................................................3

IV.     STATEMENT OF FACTS ..........................................................................................4

        A.      IPR Policies At Standards-Setting Organizations..................................................4

        B.      Nokia's Subversion Of The Standardization Process .............................................5

        C.      Nokia's Non-FRAND Demands To Apple...............................................................5

        D.      Nokia's Inconsistent Positions................................................................................6

V.      ARGUMENT .................................................................................................................7

        A.      Standard Of Review................................................................................................7

        B.      Apple's Sherman Act Counterclaim Pleads A Well-Established Antitrust
                Violation, Supported By Recent Third Circuit And Other Federal Precedent ........8

                1.      Apple's Allegations Are Supported By Established Law............................8

                2.      Apple Adequately Pleads Monopolization ...............................................11

                3.      Apple Adequately Pleads Exclusionary Conduct .....................................13

        C.      Apple States A Claim For Breach Of Contract Based On Nokia's Attempt
                To Extract Excessive Royalties Despite Its FRAND Commitments.....................18

        D.      The Declaratory Judgment Claims Are Not Duplicative And There Is No
                Reason To Dismiss Them .....................................................................................19

VI.     CONCLUSION............................................................................................................20

# TABLE OF AUTHORITIES

<u>Federal Cases</u>

*Ashcroft v. Iqbal,*
 129 S. Ct. 1937 (2009) ................................................................................................ 7, 15

*Bell Atlantic Corp. v. Twombly,*
 550 U.S. 544 (2007) ............................................................................................ 8, 9, 16

*Berkey Photo, Inc. v. Eastman Kodak Co.,*
 603 F.2d 263 (2d Cir. 1979) ............................................................................................ 14

*Broadcom Corp. v. Qualcomm Inc.,*
 501 F.3d 297 (3d Cir. 2007) ..................................................................................... *passim*

*Del. State Univ. Student Hous. Found. v. Ambling Mgmt. Co.,*
 556 F. Supp. 2d 367 (D. Del. 2008) ............................................................................... 20

*Devon Robotics v. DeViedma,*
 No. 09-3552, 2010 WL 300347 (E.D. Pa. Jan. 25, 2010) ........................................... 16

*DiscoVision Assocs. v. Disc Mfg., Inc.,*
 C.A. Nos. 95-21, 95-345, 1997 WL 309499 (D. Del. Apr. 3, 1997) ........................... 18

*Glass Equip. Dev., Inc. v. Besten, Inc.,*
 174 F.3d 1337 (Fed. Cir. 1999) ...................................................................................... 18

*Gruntal & Co. v. Steinberg,*
 837 F. Supp. 85 (D.N.J. 1993) ................................................................................... 3, 20

*In re Gen. Datacomm Indus., Inc.,*
 309 B.R. 848 (D. Del. 2004) ........................................................................................... 19

*In re Neurontin Antitrust Litig.,*
 No. 02-1390, 2009 WL 2751029 (D.N.J. Aug. 28, 2009) ........................................... 18

*Indep. Enters. v. Pittsburgh Water & Sewer Authority,*
 103 F.3d 1165 (3d Cir. 1997) ......................................................................................... 11

*Prof'l Real Estate Investors, Inc. v. Columbia Pictures, Indus. Inc.,*
 508 U.S. 49 (1993) .......................................................................................................... 18

*Qualcomm, Inc. v. Broadcom, Corp.,*
 548 F.3d 1004 (Fed. Cir. 2008) ...................................................................................... 10

*Rambus Inc. v. Fed. Trade Comm'n,*
 522 F.3d 456 (D.C. Cir. 2008) ....................................................................................... 11

*Rambus, Inc. v. Infineon Techs. AG,*
    330 F. Supp. 2d 679 (E.D. Va. 2004) ................................................................. 11

*Research In Motion Ltd. v. Motorola, Inc.,*
    644 F. Supp. 2d 788 (N.D. Tex. 2008) .......................................................... *passim*

*SmithKline Beecham Corp. v. Apotex Corp.,*
    383 F. Supp. 2d 686 (E.D. Pa. 2004) ............................................................ 8, 15

*Sun Microsystems, Inc. v. Versata Enters., Inc.,*
    630 F. Supp. 2d 395 (D. Del. 2009) .................................................................. 15

*Unites States v. Grinnell Corp.,*
    384 U.S. 563 (1966) ............................................................................................ 8

*Zenith Radio Corp. v. Hazeltine Research, Inc.,*
    401 U.S. 321 (1971) .......................................................................................... 13

*Zenith Radio Corp. v. Matsushita Elec. Indus. Co.,*
    513 F. Supp. 1100 (E.D. Pa. 1981) .................................................................... 8

Federal Statutes

28 U.S.C. § 2201 ..................................................................................................... 20

Federal Rules

Fed. R. Civ. P. 8 ..................................................................................................... 11

Fed. R. Civ. P. 54 ................................................................................................... 20

Other Authority

8-40 Corbin on Contracts § 4017 (2009) ............................................................... 19

## I.      INTRODUCTION

Nokia's opening brief observes that "[s]ometimes a patent dispute is just a patent dispute."[1] However, as Nokia well knows from championing against Qualcomm the very claims it now asks this Court to dismiss, sometimes a patent dispute is not just a patent dispute but in fact raises serious antitrust and contract issues.

The detailed allegations supporting Apple's counterclaims show that Nokia wrongfully acquired monopoly power in the markets for the technologies covered by its purported standards-essential patents by deceiving the relevant standards-setting organizations ("SSOs"), falsely promising to license its patents on fair, reasonable, and non-discriminatory ("FRAND") terms, and concealing its intellectual property rights ("IPR") in technologies it advocated for inclusion in standards, in violation of SSO disclosure rules. Nokia then abused its ill-gotten monopoly power by demanding exorbitant royalties from Apple and – despite conceding that Apple has a license – by asserting baseless claims against Apple for patent infringement when Apple refused to accede to Nokia's unreasonable demands.

Apple's allegations state a claim for breach of contract and monopolization. As to the contract claim, Nokia's opening brief concedes that its representations to the relevant SSOs created "binding contractual commitments." *See* MTD at 19. As to the monopolization claims, Apple's claims mirror the core allegations, based on misconduct before SSOs, that were sustained by the Third Circuit in *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 314 (3d Cir. 2007), and by another federal court in *Research In Motion Ltd. v. Motorola, Inc.*, 644 F. Supp. 2d 788 (N.D. Tex. 2008). Nokia's motion to dismiss misconstrues and/or ignores Third Circuit precedent.

---

[1] *See* Nokia Corp. & Nokia, Inc.'s Opening Br. in Support of Their Motion to Dismiss ("MTD") at 1, D.I. 26 (Mar. 11, 2010).

Nokia's arguments also flatly contradict positions it has strongly advocated in similar litigation. Nokia submitted an *amicus curiae* brief in *Broadcom*, 501 F.3d 297, successfully urging the Third Circuit to sustain against Qualcomm antitrust claims mirroring Apple's claims because:

> This is not a mere commercial dispute between two companies about the terms of a license; it is about safeguarding the standards[-setting] process against deceptive conduct and ensuring that standards are not converted into licenses to eliminate competition in the implementation of standardized technology.[2]

Nokia itself asserted claims against Qualcomm for failure to honor FRAND commitments in *Nokia Corp. v. Qualcomm Inc.*, C.A. No. 2330-N (Del. Ch.).

Nokia apparently believes that one set of principles applies to its own claims and another to Apple's claims. That is not the case. Under well-established precedent, Apple's counterclaims amply plead the elements of each claim Nokia now seeks to have dismissed. Nokia's motion should be denied.

## II.    NATURE AND STAGE OF THE PROCEEDING

On February 19, 2010, Apple filed its Amended Answer and Counterclaims, D.I. 21 ("CC"), which included, in addition to claims that Nokia infringed nine Apple patents, counterclaims for breach of contract (Count I), promissory estoppel (Count II), and violation of § 2 of the Sherman Act (Count III). Apple also seeks declarations that Nokia's licensing demands were not FRAND (Count IV), that Nokia is not entitled to injunctive relief (Count V), and that Nokia's exclusionary conduct constitutes misuse of its purported standards-essential patent portfolio (Count VI). On March 11, 2010, Nokia moved to dismiss Counts I-VI, *see* D.I. 26.

---

[2] *See* Ex. A., Br. of *Amici* Texas Instruments, Inc., Nokia Corp., and Telefoniaktiebolaget LM Ericsson In Support of Appellant Broadcom Corp. for Reversal ("Nokia 3d Cir. Br.") at 26-27, *Broadcom Corp. v. Qualcomm Inc.*, No. 06-4292 (3d Cir. Dec. 22, 2006); *id.* at 2 n.1 ("Each amicus party agrees with the statements set forth in this brief."). For the Court's convenience, this and other materials have been filed herewith as lettered Exhibits A though E.

## III.   SUMMARY OF THE ARGUMENT

1.     Apple's antitrust claim for Nokia's abuse of the standards-setting process easily satisfies the elements of a § 2 claim under the Sherman Act. *See infra* § V(B). As the Third Circuit has confirmed, at Nokia's urging, a patent holder violates § 2 when it deceptively induces SSOs to incorporate patented technology into standards, and then abuses the monopoly power it acquired by failing to honor its commitments and instead demanding non-FRAND royalties. *See id.* Apple's antitrust claims are not inconsistent with its patent claims – they are directed at patents that Nokia alleges are essential – and Nokia's other arguments are contrary to both controlling precedent and Nokia's own prior positions. *See infra* § V(B)(1)-(2).

2.     Nokia explicitly acknowledges that its representations to the relevant SSOs created "binding contractual commitments" to license its purported standards-essential patents on FRAND terms.  MTD at 19.  Apple has amply pleaded Nokia's breach of these commitments. *See infra* § V(B)(3)(d), V(C).  Nokia's motion to dismiss the contract claim is inconsistent with the relevant pleading standard, inconsistent with Nokia's own arguments in its litigation against Qualcomm, and raises factual disputes that are inappropriate for resolution on a motion to dismiss. *See id.*

3.     Apple's claims for declaratory relief are not duplicative of other claims or defenses because they are based on Nokia's conduct with respect to its entire purported standards-essential patent portfolio, not just the ten patents Nokia has asserted against Apple in this litigation (the "Nokia Asserted Patents"). *See infra* § V(D).  Moreover, the declaratory judgment claim will serve the "useful purpose" of guiding the parties in resolving their dispute. *Gruntal & Co. v. Steinberg*, 837 F. Supp. 85, 89 (D.N.J. 1993).

## IV.    STATEMENT OF FACTS

### A.    IPR Policies At Standards-Setting Organizations

Mobile wireless telecommunications and wireless Internet access (or Wi-Fi) involve networks of devices and equipment. CC ¶¶ 30, 50. To facilitate the interoperability necessary for various manufacturers' products to function on those networks, industry members developed technical standards establishing specifications for essential components of the technologies. *Id.* at ¶¶ 30-31. Two SSOs are relevant to this case: ETSI (which issued the GSM/GPRS/EDGE/UMTS standards), and IEEE (which issued the Wi-Fi standard). *Id.* at ¶¶ 31, 44-48, 52.

Industry members, including Nokia, participate in SSO working groups during standards development, and propose and advocate for the incorporation of, certain features. CC ¶¶ 37, 64-65. The working groups evaluate competing technical proposals on the basis of both technical merit and perceived cost. *Id.* Because technical standards succeed only if they are widely adopted, and because those standards are widely adopted only if the costs (including licensing costs) are not prohibitively high, SSOs are particularly concerned about standardizing patent-protected technologies. *Id.* at ¶ 36. Simply put, a patent holder that controls an essential feature of the standard is in a position to demand excessive royalties that deter implementation of the standard and undermine its pro-competitive purpose. *Id.* at ¶¶ 34-35; *see also* Nokia 3d Cir. Br. at 4 (Ex. A) (value of patents included in standard is "dramatically enhanced.").

ETSI and IEEE, like most SSOs, have developed IPR policies to address this concern. CC ¶¶ 36, 57-61, 73-77. These IPR policies require participants to disclose IPR (including patent applications) that may be essential to a proposed specification. *Id.* at ¶¶ 36, 58, 73. These disclosures allow the working group to consider the potential cost of various proposals and to consider either adopting alternative technologies or not standardizing that feature at all. *Id.* at ¶

4

37. The IPR policies also require commitments to license potentially essential IPR on FRAND terms. *Id.* at ¶¶ 38, 59, 74. ETSI's and IEEE's policies provide that, without such an undertaking, the SSO will not incorporate the proposed technology. *Id.* at ¶¶ 60, 77.

### B.   Nokia's Subversion Of The Standardization Process

Apple's counterclaims seek to recover for Nokia's subversion of these IPR policies. Nokia claims to hold numerous patents that cover essential components of ETSI's GSM, GPRS, EDGE, and UMTS standards, as well as IEEE's Wi-Fi standard. *Id.* at ¶¶ 63, 78; *see also* Compl. ¶ 3. Nokia has publicly stated that the royalties owed to essential patentees on a given standard should be based, at least in part, on the proportion of essential patents held by that party. CC at ¶ 8. Nokia has inflated the size of its standards-essential patent portfolio by:

> (1)    in all cases, falsely committing to offer FRAND licenses to its claimed standards-essential patents, thereby deceiving SSOs into adopting the technologies purportedly covered by the patents, *see, e.g., id.* at ¶¶ 66-72, 80-84; and
>
> (2)    in some cases, concealing the existence of IPR from the SSOs altogether until after adoption of the relevant technical proposal (many of which were championed by Nokia, including by the named inventor on the concealed IPR), *see, e.g., id.* at ¶¶ 1, 7, 64(a)-(d).

But for Nokia's deceptive non-disclosure and false FRAND commitments, the SSOs would have either selected a competing technology or declined to make that feature essential to the standard. *Id.* at ¶¶ 65-72, 80. As a result of its deceptive conduct, Nokia acquired monopoly power in the markets for technologies that perform the various functions covered by Nokia's purported essential patents (the "Input Technologies Markets"). *Id.* at ¶¶ 100, 103, 105, 120-24.

### C.   Nokia's Non-FRAND Demands To Apple

Nokia does not dispute that its representations to the relevant SSOs create "binding contractual commitments" to license patents on FRAND terms. MTD at 19. Nokia has engaged in a pattern of conduct in violation of these binding commitments. In mid-2007, Apple launched

the iPhone, which combined in a single product a mobile phone, a widescreen iPod with touch controls, and an Internet communications platform. CC at ¶ 22. A Nokia executive candidly admitted that, with the launch of the iPhone, "the market changed suddenly and [Nokia was] not fast enough changing with it." *Id.* at ¶ 25. Nokia concedes in its Complaint, at ¶ 40, that Nokia's FRAND commitments gave Apple a license to Nokia's patents sufficient to launch the iPhone, and that the parties could later agree upon specific FRAND terms.

In 2007, Nokia approached Apple and, to make up for Nokia's losses in the marketplace, demanded excessive, non-FRAND royalties from Apple. In an attempt to catch up to Apple, Nokia sought to coerce Apple into granting Nokia rights to Apple's highly valuable, non-essential patents. CC ¶¶ 29, 85-92. Nokia also demanded that Apple sign a non-disclosure agreement ("NDA"), cloaking the details of the negotiation in secrecy. *Id.* at ¶ 92; *see also* MTD at 5 n.3. In the course of a two year negotiation, Nokia demanded excessive royalties and grant-backs of Apple's non-essential patents. In fact, a year into the negotiations, Nokia *tripled* its already excessive royalty demand without justification. CC ¶¶ 85-92. Finally, when Apple refused to accede to these demands, Nokia brought infringement claims against Apple in this Court, notwithstanding Nokia's admission that Apple is licensed to those patents subject to payment of a FRAND royalty. *Id.*; Complt. at ¶ 40.

### D.   Nokia's Inconsistent Positions

Although Nokia claims in its motion to dismiss that Apple's allegations are insufficient to state a claim for monopolization, breach of contract, or a declaratory judgment, Nokia has advocated positions similar to Apple's in two comparable litigations. In *Nokia Corp. v. Qualcomm Inc.,* C.A. No, 2330-N (Del. Ch.), Nokia asserted that Qualcomm's commitments to ETSI to license its standards-essential patents on FRAND terms were enforceable contracts and

sought, *inter alia*, a declaratory judgment that Qualcomm's proposed licensing terms were not FRAND. *See* Ex. B, Nokia's First Am. Verified Compl., ¶ 142, *Nokia Corp. v. Qualcomm Inc.*, C.A. No. 2330 (Del. Ch. Mar. 31, 2008) ("Nokia's *Qualcomm* Compl."). And in *Broadcom*, Nokia argued in support of Broadcom's claims that Qualcomm made false FRAND commitments, inducing incorporation of its technologies into a standard, and then breached those commitments, and that these allegations stated a claim under § 2 of the Sherman Act. *See* Nokia's 3d Cir. Br. at 7-8 (Ex A.). The Third Circuit agreed. *Broadcom*, 501 F.3d at 314. For all of the same reasons that Nokia itself urged in these two litigations, Apple's claims are well founded, and are more than sufficient to state a claim for relief.

## V.    ARGUMENT

### A.    <u>Standard Of Review</u>

Nokia premises much of its motion to dismiss on a misreading of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). In *Twombly*, the Supreme Court held that a complaint must contain "enough facts to state a claim to relief that is plausible on its face," *id*. at 570, so that the complaint "raise[s] a right to relief above the speculative level." *Id*. at 555. In other words, the Court required a plaintiff to plead facts sufficient to "nudge[] their claims across the line from conceivable to plausible," or suffer dismissal. *Id*. at 570. Legal conclusions can provide the complaint's framework, but they must be supported by factual allegations; a court should assume that all well-pleaded factual allegations are true, and then determine whether they plausibly give rise to an entitlement to relief. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 1949. Apple's counterclaim easily meets this bar.

Moreover, Nokia's motion to dismiss asks the Court to artificially divide the four elements of the alleged anticompetitive scheme (untimely disclosure of IPR, false FRAND commitments to SSOs, subsequent breach of FRAND commitments, and baseless infringement suit) and attacks each as a stand-alone claim. That is improper. Courts must view complaints as a whole. *Twombly*, 550 U.S. at 569 n. 14 (reviewing whether complaint *"in toto"* rendered plaintiffs' entitlement to relief plausible); *SmithKline Beecham Corp. v. Apotex Corp.*, 383 F. Supp. 2d 686, 700 (E.D. Pa. 2004) ("defendants' behavior will be evaluated, and all inferences will be drawn, in light of the allegations as a whole."). Given Apple's detailed factual allegations on each of the four elements of the scheme, this is most definitely not a situation, such as in *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 513 F. Supp. 1100, 1310-1311 (E.D. Pa. 1981), where the Court properly dismissed a complaint because "[n]othing plus nothing times nothing still equals nothing." *Id.* at 1311. Each element of the scheme states a claim, and Nokia does not even attempt to explain why the scheme as a whole is not actionable.

**B.     Apple's Sherman Act Counterclaim Pleads A Well-Established Antitrust Violation, Supported By Recent Third Circuit And Other Federal Precedent**

**1.     Apple's Allegations Are Supported By Established Law**

To state a claim for monopolization under § 2, Apple must allege that Nokia (1) "possess[es] monopoly power in the relevant market[s]"; and (2) "willful[ly] acqui[red] or maint[ained]…that power" through exclusionary conduct rather than by "growth or development as a consequence of a superior product, business acumen, or historic accident." *United States v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966); *see also Broadcom*, 501 F.3d at 307.

At Nokia's urging, the Third Circuit held in *Broadcom* that an antitrust plaintiff may meet this standard for stating a § 2 claim by alleging that the defendant deceptively failed to disclose IPR during the standards-setting process, or falsely promised to license essential IPR on

8

FRAND terms, and that this deception resulted in standardization of its patented technology. *Broadcom*, 501 F.3d at 314 ("Deceptive FRAND commitments, no less than deceptive nondisclosure of IPRs, may result in [harm to the competitive process]."); *see also RIM*, 644 F. Supp. 2d at 796 (applying *Twombly*, and sustaining § 2 claim where complaint alleged "IEEE and ETSI relied on Motorola's false promises that it would license its patents on FRAND terms"). Indeed, in its *amicus* brief in *Broadcom*, Nokia stressed to the Third Circuit that the "harmful effects" of false FRAND commitments and their subsequent breach "implicate the core concerns of the antitrust laws." Nokia 3d Cir. Br. at 8 (Ex. A).

Apple surely states a claim for monopolization under these controlling precedents. In particular, the counterclaim alleges that (1) Nokia deliberately and deceptively concealed the existence of certain IPR during the standards-setting process (thus concealing the true cost of the technology under consideration); (2) Nokia falsely committed to license its claimed essential IPR on FRAND terms (on a number of occasions after incorporation of the relevant technology); (3) as a result of Nokia's misconduct, the SSO working groups adopted standards Nokia alleges cannot be implemented without practicing its IPR; and (4) but for Nokia's deceptive conduct, alternative technologies would have been selected or the features allegedly covered by Nokia's IPR would not have been standardized. *See, e.g.,* CC ¶¶ 1, 7, 64-70, 80, 85-92, 122. The counterclaim also pleads that once Nokia wrongfully obtained monopoly power, it sought to exploit it by demanding exorbitant royalties and other unfair terms – in breach of its FRAND commitments. The counterclaim further alleges that when Apple refused to accede to those demands, Nokia brought baseless patent infringement claims against Apple even though Apple has a license to any standards-essential patents and could not be infringing. *Id.* at ¶¶ 85-92, 103.

As to monopoly power, Nokia argued in *Broadcom,* and the Third Circuit agreed, that
adoption of patented technologies by ETSI for inclusion in mandatory industry standards confers
monopoly power on holders of those essential patents. *See Broadcom*, 501 F.3d at 314; Nokia
3d Cir. Br. at 5 (Ex. A) (FRAND commitments intended to prevent "the owner of patents
essential to the standard ... [from] freely exercis[ing] monopoly power in the market for the
standardized technology."). Before standardization, the value of a patented technology is
constrained by the existence of alternative technologies that perform the same function; but
"[w]hen a patented technology is incorporated in a standard, adoption of the standard eliminates
alternatives to the patented technology." *Id; see also* CC ¶¶ 34-35. Industry participants who
have invested heavily in implementing the standard become "locked in," and holders of essential
patents have leverage to demand excessive royalties. *Broadcom*, 501 F.3d at 310; CC ¶¶ 34-35.
SSOs' IPR policies, including those described above, are pro-competitive safeguards intended to
give SSOs an understanding of the potential costs associated with the competing technical
proposals and to address this type of "patent hold-up." *Broadcom*, 501 F.3d at 310; CC at ¶ 36.

As to exclusionary conduct, as Nokia again argued in *Broadcom,* "[b]reach of FRAND
commitments is inherently an attempt to acquire the monopoly power that was foresworn as part
of the standards bargain, and therefore offends Section 2 of the Sherman Act." Nokia 3d Cir. Br.
at 6 (Ex. A). The Third Circuit agreed: "Deception in a consensus-driven private standards
setting environment harms the competitive process by obscuring the costs of including
proprietary technology in a standard and increasing the likelihood that patent rights will confer
monopoly power on the patent holder." *Broadcom*, 501 F.3d at 314 ; *see also RIM*, 644 F. Supp.
2d at 796; *cf. Qualcomm, Inc. v. Broadcom, Corp.*, 548 F.3d 1004 (Fed. Cir. 2008) (finding
waiver, equitable estoppel and "exceptional case" warranting award of attorneys' fees where

Qualcomm failed to disclose asserted IPR to SSO); *see also Rambus, Inc. v. Infineon Techs. AG*, 330 F. Supp. 2d 679, 698-99 (E.D. Va. 2004) (covertly pursuing IPR to cover proposed standard is exclusionary under "[a]ny sensible interpretation of [§ 2]").[3]

### 2.   Apple Adequately Pleads Monopolization

Nokia does not contest that essential patents confer monopoly power on the holder, but instead argues that Apple's monopoly power allegations are "inconsistent" with Apple's asserted defense that the ten Nokia Asserted Patents are not essential. *See* MTD at 9. Nokia's argument misapprehends the practice of alternative pleading permitted by the Federal Rules as well as the actual breadth of Apple's monopolization claim.

First, Nokia's argument ignores its own *repeated* allegations in its Complaint that the Asserted Patents *are* essential. Apple is entitled to premise its counterclaims on these allegations and to argue, in the alternative, that if the patents are essential, Nokia wrongfully acquired and abused its monopoly power in the markets for the technologies covered by the patents.. *See* Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency."); *Indep. Enters. v. Pittsburgh Water & Sewer Auth.*, 103 F.3d 1165, 1175 (3d Cir. 1997) ("[Rule 8(d)] permits inconsistency . . . a court 'may not construe [one] claim as an admission against another alternative or inconsistent claim.'") (internal citations omitted).

This is expressly what Apple has done: it has reserved its right to contend that specific patents are not essential while also alleging that, if Nokia is correct that they are essential, Nokia

---

[3] Nokia's argument that Apple's § 2 claim "flies in the face" of *Rambus Inc. v. Fed. Trade Comm'n*, 522 F.3d 456 (D.C. Cir. 2008), mischaracterizes the decision. The court in *Rambus* expressly "assume[ed] without deciding" a plaintiff could support a monopolization claim by proving that, but-for deceptive non-disclosure of IPR, an SSO would not have included the relevant technology (as Apple alleges here, CC ¶ 64-65, 122). *Id.* at 463. In *Rambus*, however, the D.C. Circuit vacated an FTC order because the Commission had conceded that the SSO might have incorporated the technology even if Rambus had disclosed its IPR. *Id.* at 467. *Rambus* thus involves a failure of proof, not insufficiency of pleading.

wrongfully acquired and abused market power in the technologies covered by the patents. *See, e.g.,* CC ¶¶ 69, 102.[4]

Second, Nokia reads the antitrust counterclaim too narrowly. Nokia's claimed standards-essential patent portfolio is orders of magnitude larger than the ten patents asserted in this action. CC ¶¶ 16, 63, 78. Apple's counterclaim is based on Nokia's wrongful conduct with respect to its entire portfolio of claimed standards-essential patents, for which Nokia has demanded royalties from Apple.. *See, e.g.,* CC ¶ 11, ¶ 100, ¶ 102. Apple has not determined (because there has been no need to) that there are no essential patents in that vast portfolio, only that the ten Nokia sued on are not essential.

In its own dispute with Qualcomm, Nokia – urging that it could seek broad relief with respect to Qualcomm's licensing terms even though it had not conceded it was practicing any specific patent – emphasized the distinction between specific patent claims and claims implicating the larger portfolio. *See* Ex. D, Nokia Letter to Hon. Leo Strine, *Nokia Corp. v. Qualcomm Inc.,* C.A. No. 2330-N (Del. Ch. Mar. 2, 2007), at 1 ("Qualcomm fails to address how a stipulation as to 1, 17, or even 100 patents will help the Court resolve the merits of Qualcomm's obligations as to each of the 2470 patents it has declared as essential to the UMTS standard."); *id.* at 4 ("While Nokia's ETSI license may be a defense to a patent infringement

---

[4] Alternative pleading is particularly appropriate in this case given the complexity of determining whether a patent is essential to a standard. As Nokia argued in *Qualcomm,* among other things, "a patent may not be actually essential, as many companies over-declare patents as essential to standards to increase the perceived value of their portfolio." Ex. C, Br. of Pls. Nokia Inc. & Nokia Corp. Answering Pre-Trial Br., at 4, *Nokia Corp. v. Qualcomm Inc.,* C.A. No. 2330-N (Del. Ch. Nov. 3, 2006). Moreover, "a patent may be declared essential to a portion of the standard that is optional, and therefore not necessarily implemented in standard-complaint products." *Id.* Also, "many cellular patent claims are so complex that no company meets every limitation or uses them in practice." *Id.* at 5.

action, it also gives Nokia separately litigable contractual rights that have nothing to do with patent infringement.").

### 3.   Apple Adequately Pleads Exclusionary Conduct

Nokia's arguments regarding the exclusionary conduct allegations are equally unfounded.

### a)   *Apple Adequately Alleges Deceptive Untimely Disclosure Of IPRs*

Nokia argues that Apple does not plead enough facts to demonstrate a violation of the SSO disclosure rules. MTD at 13 n.16. Nokia is wrong. Apple expressly alleges that the relevant IPR policies require disclosures of both patents *and patent applications* that "might be essential" to a technical proposal. *See* CC ¶ 58. Apple provides several specific examples of undisclosed IPR, including the identity of the patent applications that were not disclosed, when these applications were filed, the Nokia participants who participated in the relevant standard-setting meetings, including named inventors on the concealed IPR, when the working groups deliberated, and when the IPR was ultimately disclosed (in each case, after the proposal was already incorporated into the standard). These specific allegations easily satisfy Rule 8.[5]

Nokia's related argument – that the statute of limitations has run on these allegations – is equally unfounded. It is black-letter law that an antitrust claim accrues not on the date the alleged violation takes place, but rather when the plaintiff is injured by the anticompetitive conduct. *See Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 339 (1971) (antitrust

---

[5] *E.g.,* CC ¶ 64(a): "[T]he claimed priority date for the '621 patent (based on the filing of a related, foreign application) is November 2000. A few months later, in February 2001, Nokia filed a second foreign priority application related to the '621 patent and then, a week later, submitted a request to the security working group proposing the addition of the technology Nokia now claims is covered by the patent to specification 25.331. Valtteri Niemi, one of the named inventors on the '621 patent, participated in the relevant standards working groups and pushed for the adoption of the technology. In March 2001, Nokia's proposal was adopted. Nokia, however, did not disclose the existence of its IPR as essential to the UMTS standard until three years later, in July 2004."; *see also* ¶ 64(b) (regarding the '672 patent); ¶ 64(c) (regarding the '178 patent); ¶ 64(d) (regarding the '940 patent).

cause of action "will accrue only on the date they are suffered; thereafter the plaintiff may sue to recover them at any time within four years from they date they were inflicted"). Apple could not have been injured by Nokia's deceptive conduct, including concealment of its IPR, until, at the very earliest, Nokia sought to abuse the monopoly power it obtained to seek to impose a non-FRAND royalty. CC ¶¶ 85-92; *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263, 295 (2d Cir. 1979). Accordingly, Apple's antitrust counterclaim is timely.

> b) *Nokia's Nominal FRAND Commitments Do Not Negate The Existence Of An Antitrust Violation*

Nokia also advances the untenable argument that, merely because it eventually disclosed its IPR and nominally made FRAND commitments (even though it has breached them), that somehow negates even the possibility of competitive harm from its abuse of the standards-setting process. MTD at 14. This argument is exactly the *opposite* of the position that Nokia urged – and the Third Circuit adopted – in *Broadcom*. As Nokia acknowledged, "[b]reach of FRAND commitments is inherently an attempt to acquire the monopoly power that was foresworn as part of the standards bargain, and therefore offends Section 2...." Nokia 3d Cir. Br. at 6 (Ex. A). The Third Circuit so held. *See Broadcom*, 501 F.3d at 314 (false FRAND commitment and subsequent breach "is actionable anticompetitive conduct"); *RIM*, 644 F. Supp. 2d at 795.

Nokia's deceptive non-disclosure and false FRAND commitments not only "harmed" but eliminated competition in the relevant Input Technologies Markets, in which Nokia is a seller and Apple is a purchaser. *See* CC ¶ 100. Injury to competition in the technologies markets was precisely the basis for liability in *Broadcom* where, as urged by Nokia (*see* Nokia 3d Cir. Br. at 9-10 (Ex. A)), the court recognized that false FRAND commitments "induced relevant [SSOs] to incorporate a technology ... that they would not have considered absent a FRAND commitment." 501 F.3d at 315.

14

          c)      *Apple Adequately Alleges False FRAND Commitments By Nokia*

Nokia also contends that the mere fact that it engaged in negotiations for more than one year and made a number of offers to Apple somehow undermines Apple's allegation that Nokia's FRAND commitments were false in the first place. MTD at 14-15. But the duration of the negotiations says nothing about their content. Nokia's claim that its FRAND commitments were not false raises a factual dispute that cannot be resolved on a motion to dismiss. Apple's allegation, made on information and belief, that the commitments were false is sufficient to state a claim. CC ¶¶ 10, 29, 55, 85-92; *Sun Microsystems, Inc. v. Versata Enters., Inc.*, 630 F. Supp. 2d 395, 405 (D. Del. 2009). Moreover, Nokia's conduct must be evaluated, and all inferences must be drawn, in light of the allegations as a whole. *Smith Kline Beecham Corp.*, 383 F. Supp. 2d at 700. Given Nokia's motive to inflate the size of its standards-essential patent portfolio, CC ¶¶ 8, 55, and the inconsistency between Nokia's FRAND commitment and its non-FRAND demand to Apple, *id.* at ¶¶ 85-92, the court may reasonably infer that Nokia's FRAND commitment was false when made. *Iqbal*, 129 S. Ct. at 1949-50.

          d)      *Apple Adequately Alleges Breach Of Nokia's FRAND Commitments*

Nokia also suggests that Apple has not adequately alleged breach of Nokia's FRAND contract with sufficient particularity, and that Apple's allegations amount to no more than that the parties "were unable to agree on terms." MTD at 15-16. These arguments also lack merit. Apple amply describes the nature and circumstances of the breach. Nokia violated its commitment to license its patents on FRAND terms by (1) demanding excessive royalties for its purported standards-essential IPR; (2) insisting on grant-backs to Apple's non-standards essential IPR as a condition for agreeing to a royalty rate; (3) agreeing to drop its demand for grant-backs only in the context of a highly unreasonable offer; and (4) more than a year into the negotiation,

tripling its already excessive royalty demand. *Id.* at ¶¶ 85-92. Although not required to do so, Apple also pleads a motive that makes the breach highly "plausible": Nokia sought to exploit its wrongfully-acquired monopoly power to regain what it has lost in competition with the iPhone. *Id.* at ¶ 29. The counterclaim cites Nokia's admission that it copied the iPhone, a strong motivation for Nokia improperly to demand grant-back licenses to Apple's proprietary technology. *Id.* at p. 4, ¶ 8. Nokia refused to provide any evidence that its offers were consistent with its other standards-essential licenses, even on an anonymous or aggregated basis. *Id.* at ¶ 92.

Apple's allegations easily satisfy *Twombly*. While attempting not to violate the NDA by furnishing actual royalty terms, Apple has set out a well-pleaded and plausible claim that Nokia's offers were not FRAND because of its excessive royalty demands and demands for grant-backs. As the court in *RIM* recently held concerning generalized allegations:

> RIM's complaint alleges that Motorola "has refused to extend FRAND ... licensing terms to RIM for any of Motorola's purportedly essential patents ... and has instead demanded of RIM terms that are unfair, unreasonable, and, on information and belief, discriminatory." ... At this stage of the case, the court takes RIM's pleadings as true. RIM has adequately pled that Motorola did not honor its promise to license on FRAND terms...

644 F. Supp. 2d at 797; *see also Devon Robotics v. DeViedma*, No. 09-3552, 2010 WL 300347, at *2 (E.D. Pa. Jan. 25, 2010) (general allegations regarding "sequence of events," "context of the alleged breach," and "time frame in which the breach occurred" sufficient to state a breach of contract claim under *Twombly*).

Nokia's insistence upon more specific allegations about its own excessive royalty demands, *see* MTD at 15, is also disingenuous. In the same brief, Nokia threatens to bring legal action against Apple for allegedly violating the parties' NDA by revealing *too much* about the negotiations. *Id.* at 5 n.3 (reserving right to enforce NDA). Nokia cannot have it both ways.

Nokia also asks the Court to disregard the grant-back allegations because Nokia made one prohibitive offer that was not conditioned on grant-backs, and because there is nothing inherently unlawful about including grant-back licenses for non-essential patents in licenses for essential patents as a substitute for cash payments. MTD at 18. This misses the point completely: *all* Nokia's offers were excessive in the aggregate, and it is no answer that Nokia on one occasion offered to drop its demand for grant-backs in exchange for an even more excessive royalty rate. CC ¶¶ 87-91. In any event, these are factual disputes that are "entitled to no weight on a Rule 12(b)(6) motion." *See RIM*, 644 F. Supp. 2d at 797. [6]

> e)   *Apple Adequately Pleads That Nokia's Infringement Claims Were Baseless*

Nokia does not dispute that Apple has a license to Nokia's purported standards essential patents by virtue of its FRAND commitments, *see infra* IV(C), but asserts that its patent infringement claims cannot be baseless because, according to Nokia, a patentee may bring an infringement action in response to the breach of such a licensing agreement. *See* MTD at 16-17. Nokia had it right when it argued earlier that the only remedy for use of ETSI declared-essential patents "is a FRAND royalty, to be determined *ex post* by a court in the event of a dispute . . ." *See* Ex. E, *Nokia Corp. v. Qualcomm Inc.*, C.A. No. 2330 (Del. Ch. Aug. 8, 2006) ("Nokia's Op. Compl.") at ¶ 31. Moreover, Nokia has not yet offered FRAND licensing terms that could be

---

[6]   Nokia also claims that the terms "fair, reasonable, and non-discriminatory" are not definite enough on their face to support a contract or antitrust claim. MTD at 15. But Nokia *concedes* the existence of a contract, MTD at 10, 19, so its argument as to insufficient terms is beside the point. Moreover, the Third Circuit squarely rejected the same argument in *Broadcom*, holding: "We are unpersuaded by Qualcomm's argument that antitrust liability cannot turn on so vague a concept as whether licensing terms are 'reasonable,' although, in other contexts, we have summarily dismissed claims that turn on similarly ambiguous terms.... The reasonableness of royalties is an inquiry that courts routinely undertake using the 15-factor test set forth in [*Georgia-Pacific*], and some courts have already applied this test in the FRAND context. Their success persuades us that, given a fully-developed factual record, the same can be done here." *Broadcom*, 501 F.3d at 314 n.8 (citations omitted).

breached. Put another way, Nokia's breach of its FRAND obligation is the reason Apple has not performed. Thus, Apple has a right to implement the relevant standards and cannot be liable for patent infringement as a matter of law. *Glass Equip. Dev., Inc. v. Besten, Inc.*, 174 F.3d 1337, 1341 (Fed. Cir. 1999) (where defendant has a lawful license to the asserted patent, licensor is "estopped from maintaining a suit against [defendant] for infringement").[7] Under these facts, "no reasonable litigant could realistically expect" to succeed in proving patent infringement. *See Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60 (1993).[8]

## C.   Apple States A Claim For Breach Of Contract Based On Nokia's Attempt To Extract Excessive Royalties Despite Its FRAND Commitments

Nokia also half-heartedly moves to dismiss the breach of contract counterclaim, even though it concedes the existence of an enforceable contract. MTD at 19 ("[T]he parties agree that there is an enforceable contract ....."). In fact, Nokia sought to enforce compliance with the very same type of FRAND commitments at issue here in its litigation against Qualcomm. *See infra* § IV(D). Despite its concessions and its own past claims against Qualcomm, Nokia now claims that the "contours" of the FRAND commitment are not sufficiently well-defined and the specifics of the alleged breach are not adequately detailed. MTD at 17-18. As Apple explained above concerning the same challenges to its antitrust claim, *supra* § V(B)(2)(d), Apple has amply satisfied the pleading standard required by *Twombly* and Rule 8.

---

[7] At the very least, Nokia's apparent position that *Apple* breached by declining Nokia's terms raises factual questions about whether Nokia had any reasonable grounds to sue Apple for patent infringement. While objective baselessness in other contexts might properly be resolved as a matter of law, objective baselessness of Nokia's infringement claims in these circumstances – involving factual disputes on complex issues that impact the propriety of Nokia's infringement claims against an admitted licensed party – should not be adjudicated on a motion to dismiss. *See In re Neurontin Antitrust Litig.*, 2009 WL 2751029, at *23 (D.N.J. Aug. 28, 2009).

[8] Nokia also contends Apple lacks standing, arguing that its conduct was not harmful to competition. MTD at 8 n.10. This argument, therefore, fails along with Nokia's challenge to the exclusionary conduct allegations. The counterclaims amply establish antitrust standing. *See DiscoVision Assocs. v. Disc Mfg., Inc.*, C.A. Nos. 95-21, 95-345, 1997 WL 309499, at *10 (D. Del. Apr. 3, 1997).

Nokia also argues that Apple fails to allege that it performed its own obligations under the relevant contract, and therefore is not entitled to relief for Nokia's breach. MTD at 19 n.24. However, the essence of Apple's claim – which mirrors Nokia's core allegations against Qualcomm – is that Nokia, by refusing to make a FRAND offer, has *prevented* Apple from performing (by paying FRAND royalties). *See* Nokia's *Qualcomm* Compl., ¶ 138 (Ex. B) (alleging that Qualcomm "has an obligation . . . to propose terms and conditions that are compliant with FRAND"). Nokia hardly can prevent Apple from performing, then seek to dismiss Apple's counterclaim for breach on the ground that it did not perform. *In re Gen. Datacomm Indus., Inc.*, 309 B.R. 848 (D. Del. 2004) (under "prevention doctrine," party cannot escape contractual liability on basis of another party's failure to perform where it prevented that performance); 8-40 Corbin on Contracts § 40.17 (2009) ("[O]ne party cannot use the other party's induced failure to perform on time as an excuse for avoiding performance.").[9]

### D.   The Declaratory Judgment Claims Are Not Duplicative And There Is No Reason To Dismiss Them

Nokia's arguments for dismissal of Counts IV and VI read those claims too narrowly. Count VI seeks a declaration of patent misuse with respect to Nokia's *entire portfolio* of purportedly-essential patents that Nokia asserted against Apple in the license negotiation. CC ¶ 138. The defense of patent misuse only applies to the Nokia Asserted Patents – a tiny fraction of that portfolio. The claim is not duplicative of the defense, and it should not be dismissed.

Count IV seeks a declaration that Nokia's demands have not been on FRAND terms. *See* CC ¶ 128. This claim is not duplicative of the breach of contract claims, and will "serve a useful

---

[9] Nokia correctly states that, while breach of contract and promissory estoppel may be pleaded in the alternative, where there is an enforceable contract, the equitable claim for promissory estoppel should be dismissed. MTD at 19. To the extent Nokia concedes that its FRAND commitments to ETSI and IEEE create binding contractual obligations enforceable by Apple, Apple will withdraw its promissory estoppel claim (Count II).

purpose" because (unlike the contract claim based solely on concluded negotiations) it potentially will guide future negotiations between the parties. *Gruntal*, 837 F. Supp. at 89 (D.N.J. 1993); *see also Del. State Univ. Student Hous. Found. v. Ambling Mgmt. Co.*, 556 F. Supp. 2d 367, 374-75 (D. Del. 2008) (noting that courts dismiss declaratory judgment claims when duplicative of claims for breach of an *expired* contract, but allow both sets of claims where contract rights are, or may be, ongoing). Indeed, Nokia itself believed this type of declaration sufficiently "useful" that it made similar claims against Qualcomm while also seeking contract-based remedies. *See* Nokia's *Qualcomm* Compl., at ¶ 142 (Ex. B.).

Moreover, the Declaratory Judgment Act provides that "any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, *whether or not further relief is or could be sought*." 28 U.S.C. § 2201(a) (emphasis added). At this stage of the proceedings, the declaratory judgment claim is no burden to Nokia, and there is no reason to dismiss it particularly where it might serve as a vehicle for additional relief at trial. *See* Fed. R. Civ. P. 54(c) (final judgments "should grant the relief to which each party is entitled, even if the party has not demanded the relief in its pleadings."). [10]

## VI.   CONCLUSION

For the reasons set forth above, Nokia's motion to dismiss should be denied.

---

[10] Nokia states that it seeks only FRAND royalties for alleged infringement of the Nokia Asserted Patents, and injunctive relief only to the extent that Apple refused to pay a court ordered royalty. MTD at 18. To the extent that Nokia will stipulate that it is not entitled to injunctive relief as a remedy on its patent claims, Apple will withdraw Count V.

OF COUNSEL:

William F. Lee
Mark D. Selwyn
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, MA  02109
Tel:  617 526 6000

Mark D. Selwyn
WILMER CUTLER PICKERING
   HALE AND DORR LLP
1117 California Avenue
Palo Alto, CA  94304
Tel:  (650) 858-6000

Kenneth H. Bridges
Michael T. Pieja
WONG CABELLO
540 Cowper Street, Suite 100
Palo Alto, CA
Tel:  (650) 681-4475

Dated:  March 29, 2010
959209 / 35035

POTTER ANDERSON & CORROON LLP


By:   /s/ David E. Moore
      Richard L. Horwitz (#2246)
      David E. Moore (#3983)
      Hercules Plaza, 6th Floor
      1313 N. Market Street
      Wilmington, DE  19899
      Tel:  (302) 984-6000
      rhorwitz@potteranderson.com
      dmoore@potteranderson.com

*Attorneys for Defendant/Counterclaim-Plaintiff
Apple Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on March 29, 2010, the attached document was

electronically filed with the Clerk of the Court using CM/ECF which will send notification to the

registered attorney(s) of record that the document has been filed and is available for viewing and

downloading.

I hereby certify that on March 29, 2010, the attached document was electronically mailed

to the following person(s)

Jack B. Blumenfeld
Rodger D. Smith II
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
Wilmington, DE  19899
jblumenfeld@mnat.com
rsmith@mnat.com

Patrick J. Flinn
John D. Haynes
Keith E. Broyles
Mark A. McCarty
Alston & Bird LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA  30309
patrick.flinn@alston.com
john.haynes@alston.com
keith.broyles@alston.com
mark.mccarty@alston.com

Alan L. Whitehurst
The Atlantic Building
950 F Street, NW
Washington, DC  20004-1404
alan.whitehurst@alston.com

/s/ David E. Moore
Richard L. Horwitz
David E. Moore
POTTER ANDERSON & CORROON LLP
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

941557/35035