**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| NOKIA CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 09-791-GMS |
| | ) | |
| APPLE INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| APPLE INC. | ) | |
| | ) | |
| Counterclaim-Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| NOKIA CORPORATION and NOKIA INC. | ) | |
| | ) | |
| Counterclaim-Defendants. | ) | |

**APPLE'S OPPOSITION TO NOKIA'S MOTION TO BIFURCATE AND CROSS-
MOTION TO BIFURCATE CERTAIN ISSUES FOR TRIAL**

OF COUNSEL:
William F. Lee
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA  02109
Tel:  617 526 6000

Mark D. Selwyn
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1117 California Avenue
Palo Alto, CA  94304
Tel:  (650) 858-6000

Kenneth H. Bridges
Michael T. Pieja
WONG CABELLO
540 Cowper Street, Suite 100
Palo Alto, CA  94304
Tel:  (650) 681-4475

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE  19899
Tel:  (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant and
Counterclaim-Plaintiff Apple Inc.*

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................1

II.    NATURE AND STAGE OF THE PROCEEDINGS .........................................3

III.   SUMMARY OF THE ARGUMENT .................................................................5

IV.    STATEMENT OF FACTS .................................................................................6

     A.   Nokia's Breach Of Its FRAND Contract .................................................6

V.     ARGUMENT ......................................................................................................7

     A.   The Contract Claim Should Be Tried First ................................................7

         1.   The Contract Claim Is Far Simpler Than The Patent Claims ......................8

         2.   Nokia's Argument That The Contract Claim Will Require Resolving The Infringement And Validity of "Hundreds" Of Nokia Patents Is Both Wrong and Inconsistent With Nokia's Arguments – Adopted By This District – In Its Dispute With Qualcomm ............................................9

         3.   The Contract Claim Is At The Heart Of the Parties' Dispute, And Resolving The Contract Claim Is Likely To Promote Settlement .............12

         4.   In Contrast, Resolving The Patent Claims Will Not Resolve The Contract Claim ........................................................................................13

         5.   Bifurcating The Contract Claim Will Minimize Any Prejudice To The Parties ..................................................................................................14

     B.   The Patent Claims And Antitrust Claims Should Be Tried Together, In a Second Phase ........................................................................................14

     C.   Nokia's Request To Indefinitely Postpone Discovery On Apple's Contract and Antitrust Claims Should Be Denied ...................................16

VI.    CONCLUSION ................................................................................................17

## TABLE OF AUTHORITIES

Federal Cases

*Abbott Labs. v. Teva Pharms. USA, Inc.,*
   C.A. v. No. 02-1512-KAJ, 2005 WL 6225546 (D. Del. May 6, 2005) ..................................... 17

*Arendi Holding Ltd. v. Microsoft Corp.,*
   C.A. No. 09-119-JJF, 2009 WL 3535460 (D. Del. Oct. 27, 2009)..................................... 14, 17

*ASM Am., Inc. v. Genus, Inc.,*
   No. 01-2190 E, 2002 WL 24444 (N.D. Cal. Jan. 9, 2002) ........................................ 16

*B. Braun Med., Inc. v. Abbott Labs.,*
   124 F.3d 1419 (Fed. Cir. 1997)................................................................................. 15

*Broadcom Corp. v. Qualcomm Inc.,*
   501 F.3d 297 (3d Cir. 2007)...................................................................................... 15

*Enzo Life Sciences, Inc. v. Digene Corp.,*
   C.A. No. Civ. A. 02-212-JJF, 2003 WL 21402512 (D. Del. June 10, 2003) ........................ 17

*Ericsson Inc. v. Samsung Elecs. Co., Ltd.,*
   No. 2:06-CV-63, 2007 WL 1202728 (E.D. Tex. Apr. 20, 2007)............................. 2, 11, 12, 13

*Eurand Inc. v. Mylan Pharms. Inc.,*
   C.A. No. 08-889-SLR, 2009 WL 3172197 (D. Del. Oct. 1, 2009)........................................ 16

*Lucent Techs., Inc. v. Gateway, Inc.,*
   580 F.3d 1301 (Fed. Cir. 2009)................................................................................... 8

*Nokia Corp. v. Qualcomm, Inc.,*
   C.A. No. 06-509-JJF, 2007 WL 2521328 (D. Del. Aug. 29, 2006)............................. 10, 11, 13

*Qualcomm v. Broadcom, Inc.,*
   548 F.3d 1004 (Fed. Cir. 2008)................................................................................... 15

*Research In Motion Ltd. v. Motorola, Inc.,*
   644 F. Supp. 2d 788 (N.D. Tex. 2008) ...................................................................... 15

*Synopsys, Inc. v. Magma Design Automation,*
   C. A. No. 05-701(GMS), 2006 WL 1452803 (D. Del. May 25, 2006)..................................... 15

*WebXchange v. Dell, Inc.,*
   C.A. Nos. 08-132-JJF, 08-133-JJF, 2009 WL 5173485 (D. Del. Dec. 30, 2009)................. 3, 15

*Willemijn Hous. v. Apollo Comp., Inc.,*
   707 F. Supp. 1429 (D. Del. 1989)........................................................................... 15, 17

Other Authorities

9A Wright & Miller, Fed. Prac. & Proc. Civ. § 2388 (3d ed.) ....................................................... 13

## I.    INTRODUCTION

This case arises out of a significant licensing dispute between the parties. Nokia convinced major wireless standard-setting organizations to adopt technologies over which it claims to have patent rights by concealing its relevant intellectual property rights, and by falsely promising to license its patents to others on fair, reasonable, and non-discriminatory, or reasonable and non-discriminatory (collectively, "FRAND") terms. Since Apple has emerged as a major competitive threat, however, Nokia has violated its contractual obligation to license its patents on FRAND terms by demanding excessive royalties from Apple, and by attempting to use the parties' negotiations to coerce Apple into granting Nokia rights to Apple's highly valuable, non-essential patents.

After Apple refused to accede to Nokia's unreasonable demands, Nokia filed this lawsuit, claiming that Apple is infringing ten of the hundreds of Nokia patents that Nokia claims are essential to practice wireless standards, even though Nokia concedes that it has an obligation to license these patents to others, including Apple, on FRAND terms. Nokia Corporation's and Nokia Inc.'s Opening Brief In Support of Their Motion to Dismiss, D.I. 26 ("MTD") at 19. Apple responded by filing counterclaims for Nokia's breach of its FRAND commitment, promissory estoppel, monopolization of the relevant technology markets, Nokia's infringement of nine Apple patents, and declaratory relief.

The dispute between the parties centers on Nokia's commitment to license its patents on FRAND terms – and its refusal to do so. Nokia nevertheless urges the Court to defer adjudication of this fundamental dispute until *after* the Court has resolved the parties' claims for infringement of nineteen patents. Nokia's proposal not only would put the most fact-intensive and complex claims first, but also offers no real hope of resolving the larger dispute between the

parties given Nokia's claim that it owns hundreds of standards-essential patents. The much more reasonable candidate for a first trial is Apple's breach of contract claim (Court I) and related equitable claim for a declaration that Nokia's licensing offers were not FRAND (Count IV) (collectively, "contract claim").[1] This claim is not only at the core of the parties' dispute, but also is far simpler than the patent claims, and has the potential to resolve the entire dispute between the parties. This claim presents just one, straightforward question – namely, whether Nokia's offers to license its purported standards-essential patents to Apple were FRAND. Prioritizing trial of the straightforward contract claim has the potential to resolve this litigation, and thus conserve judicial and party resources.

In nearly identical circumstances, a Texas federal court bifurcated a FRAND contract claim from a large number of cross-patent claims – as Apple suggests is appropriate here – and deferred trial of the infringement claims. *Ericsson Inc. v. Samsung Elecs. Co., Ltd.*, C.A. No. 2:06-CV-63, 2007 WL 1202728, at *2-3 (E.D. Tex. Apr. 20, 2007). The Court concluded that the FRAND contract issues were separable and should be tried first because "the resolution of the FRAND case might alleviate many of the primary differences between these two parties." *Id.* at *3. The entire matter – including all patent claims – settled within three months of the order granting an early trial on the FRAND questions. *See* Ex. B, Joint Mot. To Dismiss Without Prejudice, *Ericsson Inc. v. Samsung Telecomms.*, No. 2-06-CV-63-TJW (E.D. Tex. Jul.

---

[1]     Nokia acknowledges that its commitments to the relevant SSOs created "binding contractual obligations." MTD at 19. As indicated in Apple's Opposition to Nokia's Motion to Dismiss, D.I. 29 ("Opp. MTD"), to the extent Nokia concedes that its FRAND commitments to ETSI and IEEE create binding contractual obligations enforceable by Apple, Apple will withdraw its promissory estoppel claim. Opp. MTD at 19 n.9. If despite this acknowledgment Nokia were to deny that a FRAND contract exists, Apple requests that the first trial also include its claim for promissory estoppel (Count II).

11, 2007).[2] The rationale – and beneficial effects – of the Texas court's holding are fully applicable here.

Moreover, unlike Nokia, Apple does not request a stay of the deferred claims.[3]  Instead, to ensure disposition of the entire case expeditiously, and to avoid unnecessary repetition of discovery and unduly burdening deponents and the parties, Apple proposes a schedule wherein all remaining claims could be tried – if necessary – within a reasonable time after trial on the contract claim.  For these and other reasons set forth below, Nokia's motion should be denied and Apple's cross-motion should be granted.

## II.    NATURE AND STAGE OF THE PROCEEDINGS

On October 22, 2009, Nokia filed its Complaint alleging infringement of ten of the hundreds of Nokia patents that Nokia claims to be "essential to one or more of" ETSI's GSM, GPRS, EDGE, and UMTS standards, and IEEE's Wi-Fi standards.  Nokia claims that Apple has infringed U.S. Patent No. 7,092,672 (reporting cell measurement results in a cellular communication system); U.S. Patent No. 6,694,135 (measurement report transmission in a telecommunications system); U.S. Patent No. 5,802,465 (data transmission in a radio telephone network); U.S. Patent No. 6,359,904 (data transfer in a mobile telephone network); U.S. Patent No. 6,775,548 (access channel for reduced access delay in a telecommunications system); U.S. Patent No. 5,862,178 (method and apparatus for speech transmission in a telecommunications

---

[2]     For the Court's convenience this and other materials have been filed herewith as lettered Exhibits A through D.

[3]     As explained more fully in Section V B *infra*, due to the substantial factual overlap between the parties' patent infringement claims and defenses and Apple's antitrust claims, the infringement and antitrust claims should be tried together.  *See, e.g., WebXchange v. Dell, Inc.*, C.A. Nos. 08-132-JJF, 08-133-JJF, 2009 WL 5173485, at *3 (D. Del. Dec. 30, 2009) (holding that where evidence will be duplicative, the claims should be tried together).  However, Apple submits that all such patent and antitrust claims should be deferred until the second stage of trial.

system); U.S. Patent No. 5,946,651 (speech synthesizer employing post-processing for enhancing the quality of the synthesized speech); U.S. Patent No. 6,882,727 (method of ciphering data transmission in a radio system); U.S. Patent No. 7,403,621 (system for ensuring encrypted communication after handover); U.S. Patent No. 7,009,940 (integrity check in a communication system).

In its First Amended Answer and Counterclaims, D.I. 21 ("CC"), filed on February 19, 2010, Apple asserts numerous defenses to each of these patent claims, including that the patents are not infringed, invalid, and unenforceable due to Nokia's misconduct in connection with the standards-setting process, raising the equitable defenses of waiver, estoppel, and patent misuse. Apple also asserts the defense of license on the basis that Apple is licensed to Nokia's asserted patents by virtue of Nokia's FRAND commitments to the relevant standards-setting organizations ("SSOs").

In addition to these defenses, Apple also asserts counterclaims for infringement of nine proprietary, non-essential Apple patents, and for breach of contract (Count I), promissory estoppel (Count II), and violation of Section 2 of the Sherman Act (Count III), as well as declarations that Nokia's licensing demands were not FRAND (Count IV), that Nokia is not entitled to injunctive relief (Count V), and that Nokia's exclusionary conduct constitutes misuse of its purported standards-essential patent portfolio (Count VI). Apple's asserted patents are U.S. Patent No. 5,634,074 (serial I/O device identifies itself to a computer through a serial interface during power on reset then it is being configured by the computer); U.S. Patent No. 5,555,369 (method of creating packages for a pointer-based computer system); U.S. Patent No. 6,239,795 B1 (pattern and color abstraction in a graphical user interface); U.S. Patent No. 5,315,703 (object-oriented notification framework system); U.S. Patent No. 6,189,034 B1

(method and apparatus for dynamic launching of a teleconferencing application upon receipt of a call); U.S. Patent No. 7,469,381 B2 (list scrolling and document translation, scaling, and rotation on a touch-screen display); U.S. Patent No. 5,455,854 (object-oriented telephony system); U.S. Patent No. 7,383,453 B2 (conserving power by reducing voltage supplied to an instruction-processing portion of a processor); U.S. Patent No. 5,848,105 (GMSK signal processors for improved communications capacity and quality).

On March 11, 2010, Nokia moved to dismiss Counts I-VI, MTD at 2-4, and on March 29, 2010 Apple submitted its opposition to that motion (D.I. 29). On March 18, 2010, Nokia filed a Motion to Bifurcate and Stay, D.I. 27 ("Nokia Mot."), which Apple hereby opposes.

## III.   SUMMARY OF THE ARGUMENT

1.      Apple's contract claim not only goes to the heart of the parties' dispute, but involves a much more straightforward question than any of the nineteen patent claims. Given Nokia's concession that a binding contract exists, MTD at 19, the only issue to be determined is whether Nokia's proposed royalty rate for its portfolio of purportedly standards-essential patents was FRAND. As the Eastern District of Texas correctly determined in a recent, comparable case, adjudication of this issue is easily separable and likely to promote a global resolution of the parties' dispute.

2.      In contrast, Nokia's proposal would require a trial on a host of issues of tremendous complexity – including the infringement, enforceability, and validity, and potentially the appropriate damages and/or reasonable royalty rates – for nineteen separate patents. Moreover, because Apple asserts that Nokia's patents are unenforceable due to misuse, and that it is licensed to the patents because of Nokia's FRAND commitments, trial of the patent claims

would require the presentation of evidence during this initial phase concerning many of the issues raised by Apple's antitrust and contract claims.

3.    No efficiency is gained by adopting Nokia's proposal. Even if Nokia were to prevail on its infringement allegations related to the ten patents it has asserted, such a finding would be of little to no use to the parties in resolving their portfolio-wide dispute. Indeed, Nokia claims to have "hundreds" of patents that are essential to ETSI and IEEE wireless standards. Nokia Mot. at 11.

4.    Finally, however the Court resolves the issue of bifurcation, it would be highly inefficient to stay discovery. Nokia's request for a stay of discovery on Apple's breach of contract, antitrust, and declaratory judgment claims not only raises the potential for a second round of duplicative discovery, but also would undermine resolution of the parties' dispute by unduly delaying adjudication of the fundamental issue – whether Nokia's offers were FRAND.

## IV.    STATEMENT OF FACTS

### A.    Nokia's Breach Of Its FRAND Contract

This dispute arises out of two years of licensing negotiations between the parties. In mid-2007, Apple launched the iPhone, which combines in a single handheld product a mobile phone, a widescreen iPod with touch controls, and an Internet communications platform capable of high-speed email and GPS navigation. CC at ¶ 22. At that time, Nokia's executive vice president candidly admitted that, with the launch of the iPhone, "the market changed suddenly and [Nokia was] not fast enough changing with it." Id. at ¶ 25. Nokia concedes in its Complaint, at ¶ 40, that Apple had a license to Nokia's patents sufficient to launch the iPhone, and that the parties could later agree upon specific FRAND terms.

After the launch of the iPhone, Nokia approached Apple to negotiate a license to Nokia's portfolio of patents that it had promised two SSOs, the European Telecommunications Standards

Institute ("ETSI") and the Institute of Electrical Engineers ("IEEE"), it would license on FRAND terms.[4]  CC ¶¶ 86, 92.  But instead of complying with its FRAND commitments to ETSI and IEEE, Nokia demanded excessive, non-FRAND royalties from Apple, in order to make up for Nokia's losses in the marketplace, and sought to coerce Apple into granting Nokia rights to Apple's highly valuable, non-essential patents to help Nokia catch up to Apple in the market.  CC ¶¶ 29, 85-92.  Nokia also demanded that Apple sign a non-disclosure agreement ("NDA"), cloaking the details of the parties' negotiation in secrecy.  *Id.* at ¶ 92; *see also* MTD at 5 n.3.  Over the course of the negotiations, Nokia demanded excessive royalties and grant-backs of Apple's non-essential patents.  In fact, a year into the negotiations, Nokia tripled its already excessive royalty demand without justification.  CC ¶¶ 85-92.

Finally, when Apple refused to accede, Nokia brought infringement claims against Apple in this Court.  Notwithstanding Nokia's admission that Apple is licensed to Nokia's claimed standards-essential patents subject to payment of a FRAND royalty, Nokia's suit does not merely seek determination of a FRAND royalty, but instead claims infringement of ten of its purported standards-essential patents.  Compl. at ¶ 40.

## V.      ARGUMENT

### A.      The Contract Claim Should Be Tried First

---

[4]      These SSOs facilitated the development of the GSM, GPRS, EDGE, and UMTS mobile telecommunications standards and the WLAN Wi-Fi standard that are at issue in the litigation.  As discussed in detail in Apple's Opposition to Nokia's Motion to Dismiss, ETSI and IEEE employed significant institutional safeguards, such as required disclosure of purported essential intellectual property rights ("IPR") and FRAND licensing commitments, to ensure that participants in the standardization process cannot "hold up" adopters of the eventual standard by demanding exorbitant royalties for their purported essential patents.  CC ¶¶ 36-37, 64-65.  According to Nokia, it is bound to offer FRAND licensing terms for patents that it purports to be essential to the GSM, UMTS, GPRS, EDGE, and WLAN standards – including but not limited to the ten patents it has asserted against Apple.  *Id.* at ¶¶ 63, 78; MTD at 19.

The parties agree on the relevant standard to be employed in determining whether bifurcation is warranted. They dispute, however, the application of the standard to the claims before the Court. As set out below, Apple's cross-motion should be granted because, in contrast to the parties' claims for infringement of nineteen patents, Apple's contract claim raises only one basic question – whether Nokia's proposed royalty rate for its portfolio of claimed essential patents was FRAND. Trial of this one issue, which is central to the parties' dispute, is likely to promote the settlement of any remaining claims.

### 1. The Contract Claim Is Far Simpler Than The Patent Claims

Nokia has conceded the existence of a valid, enforceable FRAND contract. Compl. ¶¶ 39-42; MTD at 19. Thus, Apple's breach of contract claim will focus narrowly on the principles that guide determination of a FRAND royalty rate for a portfolio of purported standards-essential patents, and whether Nokia's license demands complied with those principles – in other words, whether Nokia breached its conceded contractual commitment to license this portfolio on FRAND terms.

Apple expects the relevant factual and expert testimony could be presented in a **four-day trial**. In addition to evidence about the negotiations themselves, the evidence presented will be limited and primarily commercial in nature, as is the case in many reasonable royalty determinations. Apple expects that its proof principally will include evidence pertaining to the terms of Nokia's offers, valuation of Nokia's overall portfolio, examination of the parties' comparable licenses, evaluation of the drivers of demand for the products covered by the proposed license, including the iPhone, and the competitive factors driving Nokia to demand non-FRAND royalties. *See, e.g., Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1336-39 (Fed. Cir. 2009) (damages award based on the entire value of Microsoft's Outlook software

constituted legal error because the patented function was "but a very small component of a much larger software program").

In contrast, resolution of the parties' patent infringement claims and defenses will require trial on exponentially more questions of fact and law. For each of the nineteen patents-in-suit, the Court will have to consider the complicated technologies underlying the patents and the accused products, conduct *Markman* hearings on a large volume of disputed claim constructions, and eventually need to make determinations of infringement, validity, and enforceability, as well as damages, for each of the asserted patents.

Moreover, because Apple has raised the defense of patent misuse based, *inter alia*, on Nokia's deliberate and deceptive non-disclosure of purported essential intellectual property rights ("IPR") during the standard-setting process, the trial on Nokia's patents will inevitably involve many of the same issues that underlie Apple's antitrust counterclaims. Such overlapping issues may include whether Nokia timely disclosed its IPR to ETSI and IEEE, and the existence of viable technical alternatives to any Nokia technologies that were adopted into the relevant standards.

    2.    Nokia's Argument That The Contract Claim Will Require Resolving The Infringement And Validity of "Hundreds" Of Nokia Patents Is Both Wrong and Inconsistent With Nokia's Arguments – Adopted By This District – In Its Dispute With Qualcomm

Nokia's argument that trial of the contract claim necessarily requires resolution of the "individual essentiality, scope, validity, and potentially the value of [] hundreds of Nokia patents" (Nokia Mot. at 11) seriously mischaracterizes the nature of the parties' dispute and Apple's claims, and is the exact opposite of the position Nokia took in its litigation with

Qualcomm.[5]  Although valuing Nokia's portfolio may require some analysis of the relative

strengths and weaknesses of its purportedly essential IPR, this can be done – and routinely is

done in the course of licensing negotiations – at the portfolio-wide level, without resolving

essentiality, infringement, and validity of every patent in Nokia's portfolio.

Nokia's present posture represents a dramatic departure from its position in litigation it

filed in the Chancery Court against Qualcomm, where it sought multiple declarations, including

that Qualcomm "failed to provide FRAND terms and conditions for the use of [its] declared

essential patents"[6] – the very mirror of Apple's contract claim in this litigation.  Qualcomm had

removed the case to the District of Delaware, arguing that the case "arose under" federal law

because each of Nokia's claims necessarily raised issues of patent law (i.e., whether Qualcomm's

declared patents are technically essential to practice the relevant standards).  *Nokia Corp. v.*

*Qualcomm, Inc.*, C.A. No. 06-509-JJF, 2007 WL 2521328, at *1-2 (D. Del. Aug. 29, 2006).

Nokia moved to remand and sharply disputed this argument as "***plainly false***," stating that:

> [Qualcomm] incorrectly argues that [Nokia's] breach of contract
> claim will require the court to determine whether [Qualcomm's]
> declared essential patents are in fact essential and infringed.
> [Qualcomm] is wrong. . . .  [T]he Chancery Court has [] been
> asked to . . . ***resolve a dispute over the interpretation of***

---

[5]      Nokia is correct that the trial will involve some analysis of its essential patent portfolio,
but its suggestion that the parties will need to try hundreds of validity, infringement, essentiality,
and reasonable royalty questions in one proceeding is meritless and inconsistent with its own
prior acknowledgment that parties never negotiate portfolio licenses by engaging in a granular
patent-by-patent assessment.  See Ex. D to Opp. MTD (Nokia Ltr. to Vice Chancellor Strine, CA
No. 2330-N, at 2 (Del. Chan. Ct. Mar. 2, 2007).  Instead, Apple expects that the technical
assessment of the portfolio will be limited to an analysis, in general, of the breadth of Nokia's
essential patent holdings as a whole, the relative importance of the claimed technology to the
standard, and the availability (pre-standardization) of technical alternatives.

[6]      *See* Ex. B to Opp. MTD (Nokia First Amended Compl., Count IV, at ¶¶ 135-142 (Del.
Chan. Ct. Feb. 29, 2008)).

> *[Qualcomm's] commitment to license its declared-essential
> patents for a 'fair, reasonable, and non-discriminatory royalty.'*[7]

This District, in a decision by Judge Farnan, agreed with Nokia and remanded because

the FRAND claims did not require adjudication of patent issues:

> It is not necessary, as Defendant contends, to determine whether
> the patents at issue are in fact "essential" because Defendant has
> already voluntarily declared them essential. . . . In sum, [Nokia]
> seeks a determination . . . of the terms of the contractual agreement
> undertaken by [Qualcomm] as a result of declaring certain patents
> essential. . . . In the Court's view, *resolution of this claim depends*
> *on interpretation of the terms of the licensing agreement, rather*
> *than interpretation of the patents. Nokia Corp.*, 2006 WL
> 2521328, at *1-2 (internal record citations omitted) (emphasis
> added).

Like Nokia's claim against Qualcomm, Apple's contract claim is based on Nokia's

exorbitant demands for the entire *portfolio* of patents that Nokia has declared essential to ETSI

and the IEEE.  Although Nokia argues now that individual patent determinations are required

because one of its offers during the negotiations was for individual patents, it told the Delaware

Chancery Court: "[There is] no[] dispute that in the real world the practice among companies

with huge patent portfolios is to *determine reasonable royalties based on criteria that are*

*applied to an entire portfolio*."[8]

As discussed in detail *infra*, a Texas federal court relied on Judge Farnan's decision to

remand Nokia's contract claims to the Chancery Court, in its decision to bifurcate and try first a

FRAND contract claim where the parties had each alleged infringement of dozens of patents.

*Ericsson Inc. v.*, 2007 WL 1202728, at *2-3.  As the Texas court explained:

---

[7]  *See* Ex. C, Nokia Open. Br. In Supp. Of Mot. to Remand, *Nokia Corp. v. Qualcomm, Inc.*, C.A. No. 06-509, at 6, 1 (D. Del. Aug. 18, 2006) (emphasis added).

[8]  *See* Ex. D to Opp. MTD, Nokia Ltr. to Vice Chancellor Strine, at 2 (Del. Chan. Mar. 2, 2007).

> *Nokia Corp.* counsels the court to conclude that the issues are
> separable. If a FRAND dispute, standing alone, implicates no
> substantial question of federal patent law, it is difficult to
> understand how the issues in such a case could not be separated
> from the issues in a patent infringement case. The court therefore
> concludes that the issues are separable and rejects Samsung's
> argument to the contrary. *Ericsson*, 2007 WL 1202728, at *2.

3.   The Contract Claim Is At The Heart Of the Parties' Dispute, And
     Resolving The Contract Claim Is Likely To Promote Settlement

As discussed above, the parties' dispute over a FRAND license for Nokia's portfolio of

purported standards-essential patents resulted in this litigation. The FRAND contract claim – not

the discrete patents – is at the heart of the dispute, and resolution of this claim may enable the

parties to reach a global settlement of the remaining patent infringement and antitrust claims.

Such potential for settlement should weigh in favor of Apple's proposal for bifurcation. As

discussed above, the Eastern District of Texas recently adopted exactly this approach in a

FRAND dispute between Ericsson and Samsung. In that case, Ericsson brought suit against

Samsung for infringement of fifteen Ericsson patents, and sought declaratory judgments on non-

infringement and invalidity of twelve Samsung patents. Samsung responded by counterclaiming

for infringement of twenty-two Samsung patents, and lodged numerous equitable defenses –

including patent misuse – to Ericsson's patent claims. Samsung further asserted a breach of

contract claim for Ericsson's purported failure to comply with its FRAND licensing

commitments. Samsung requested that the Court enter judgment "requiring Ericsson's specific

performance under its contract with ETSI . . . to grant a license to Samsung under the purported

Ericsson essential patents on FRAND terms and conditions."[9] Ericsson then countersued for

---

[9]   *See* Ex. D, Answer, Affirmative Defenses, and Counterclaims of Samsung, at 25, CA No.
2-06-CV-00063-TJW (E.D. Tex. May 15, 2006).

Samsung's purported parallel failure to offer FRAND licensing terms, and for the infringement of additional patents.

The court concluded that that FRAND contract issues were separable from the patent claims, and agreed that they were the "crux" of the dispute. It accordingly decided to try the contract claim before the pending patent infringement claims, because "resolution of the FRAND case might alleviate many of the primary differences between these two parties." *Id.* The parties settled the entire matter within three months of the order granting an early trial on the FRAND contract claim. *See* Ex. B (Parties' Joint Mot. to Dis. w/o Prejudice);

*see also* 9A Wright & Miller, Fed. Prac. & Proc. Civ. § 2388 (3d ed.) ("If a single issue … is likely to lead the parties to negotiate a settlement, and resolution of it might make it unnecessary to try the other issues in the litigation, separate trial of that issue may be desirable to save the time of the court and reduce the expenses of the parties.").

As discussed above, the *Ericsson* court ***premised*** this approach on this District's decision in Nokia's lawsuit against Qualcomm, in which the court concluded that Nokia's FRAND-based claims did not require a patent-by-patent analysis of declared-essential patents. *Nokia Corp.*, 2006 WL 2521328, at *1-2.

> 4.   In Contrast, Resolving The Patent Claims Will Not Resolve The Contract Claim

Although resolving Apple's contract claim will necessarily inform resolution of the parties' dispute as to the appropriate royalty rate for the patents-in-suit (they will be subsumed into any portfolio-wide license), the reverse is not also true: resolution of Nokia's ten infringement claims will not aid the parties in determining a FRAND rate for Nokia's entire portfolio of hundreds of purported standards-essential patents. To the contrary, resolution of Nokia's ten infringement claims – even in the remote instance in which Nokia prevails on all ten

– would only invite Nokia to bring additional piecemeal infringement lawsuits for ten, twenty, or one-hundred purported-essential patents at a time. Resolving Apple's contract claim – which would guide the parties in their negotiation of a portfolio-wide FRAND rate – would moot such a trickle of infringement claims, and may allow the parties to resolve the litigation.

5.    Bifurcating The Contract Claim Will Minimize Any Prejudice To The Parties

As discussed above, Apple submits that bifurcation of its contract claim will avoid the intensive patent-by-patent inquiry that trial on the parties' nineteen infringement claims will entail. Thus, a first determination on the contract claim would alleviate the burden to Apple of defending against Nokia's patent infringement claims, especially where – as here – the claims are baseless because Apple has a license to Nokia's declared essential patents. CC at ¶¶ 85-92, 103. Further, Nokia will suffer no prejudice if the Court first tries Apple's contract claim; indeed, in its Complaint and Motion to Dismiss, Nokia repeatedly states that the only relief it seeks is the payment of a FRAND royalty rate for the patents-in-suit. Compl. at p. 29; Opp. MTD at 18-19. Under Apple's proposal, the Court would consider this very question first -- thus allowing the possibility that Nokia may be awarded the relief it purports to seek without a full-blown patent trial on the nineteen patents-in-suit (and possibly more patents in later-filed actions).

**B.    The Patent Claims And Antitrust Claims Should Be Tried Together, In a Second Phase**

Nokia is also fundamentally wrong in suggesting its patent claims can be separated from Apple's antitrust claims. *See, e.g., Arendi Holding Ltd. v. Microsoft Corp.,* C.A. No. 09-119-JJF, 2009 WL 3535460, at *1 (D. Del. Oct. 27, 2009) (denying motion to bifurcate where no efficiencies would be gained from separate trials). Even if valid and infringed, a patent is unenforceable if it has been misused, or if the patentee has waived its right to enforce it, or if the

patentee is estopped from enforcing it. *See, e.g., B. Braun Med., Inc. v. Abbott Labs.*, 124 F.3d

1419, 1427 (Fed. Cir. 1997); *Qualcomm v. Broadcom, Inc.*, 548 F.3d 1004, 1024-26 (Fed. Cir.

2008) (finding waiver, equitable estoppel and "exceptional case" warranting award of attorneys'

fees where Qualcomm failed to disclose asserted IPR to SSO).   Apple has asserted and intends to

litigate these defenses vigorously. CC at p. 21.  And – critically – resolution of these defenses

will involve all or most of the issues raised by Apple's antitrust claims, because the essence of

the defenses is that Nokia wrongfully acquired monopoly power by deceiving SSOs and then

abused that power by reneging on its FRAND commitment and failing to offer Apple a FRAND

rate. CC ¶ 64-65, 66-72; *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 314 (3d Cir. 2007);

*Research In Motion Ltd. v. Motorola, Inc.*, 644 F. Supp. 2d 788 (N.D. Tex. 2008).

  Thus, the very issues Nokia itself suggests should be deferred because they "depend on a

wide array of factual documentary evidence and testimony dating from the 1990s and 2000s,"

Nokia Mot. 10-11, are inherently bound up with the patent claims. Such claims – with inherently

intertwined factual issues – should not be tried separately. *See, e.g., Synopsys, Inc. v. Magma

Design Automation*, C.A. No. 05-701(GMS), 2006 WL 1452803, at *4-5 (D. Del. May 25, 2006)

(denying bifurcation of infringement and antitrust claims due to substantial overlap of predicate

facts); *WebXchange v. Dell, Inc.*, C.A. Nos. 08-132-JJF, 08-133-JJF, 2009 WL 5173485, at *3

(D. Del. Dec. 30, 2009) (presentation of duplicative evidence favors simultaneous trial);

*Willemijn Hous. v. Apollo Comp., Inc.*, 707 F. Supp. 1429, 1433 (D. Del. 1989) (overlap in

evidence weighs against bifurcation).

This case accordingly presents a strong contrast to the "sham litigation" based antitrust cases that Nokia cites.[10] Apple's antitrust claim does not depend on the merits of Nokia's patent lawsuit but instead challenges a broad course of misconduct before SSOs that is viable even if each of Nokia's patents is valid and infringed. Moreover, even if Apple's misuse claims were to fail as to the ten asserted Nokia patents, its Sherman Act claims would not be foreclosed because they are based on conduct with respect to Nokia's entire portfolio of purported essential patents.

### C.    Nokia's Request To Indefinitely Postpone Discovery On Apple's Contract and Antitrust Claims Should Be Denied

Unlike Apple, which believes that discovery on the parties' claims and counterclaims should proceed concurrently, Nokia seeks to stay discovery related to Apple's non-patent counterclaims until resolution of the parties' nineteen infringement claims. According to Nokia's own proposed schedule, it hopes to defer discovery on Apple's counterclaims until Spring 2012 – at the earliest. Initial Joint Status Rep., D.I. 23 at 16 (Mar 8, 2010). But this request fails to acknowledge the substantial overlap between Apple's defenses to Nokia's infringement claims – particularly Apple's patent misuse defense – and its affirmative contract and antitrust claims. Thus, if granted, a stay of discovery related to Apple's antitrust claims would not preclude Apple from pursuing the very same discovery in support of its infringement defenses.

While Apple believes that separate trials, first of the contract claim, and then – if necessary – the patent and antitrust claims, are appropriate for the reasons set out above, it would

---

[10]    See, e.g., ASM Am., Inc. v. Genus, Inc., No. 01-2190 E, 2002 WL 24444, at *6 (N.D. Cal. Jan. 9, 2002) (sham litigation antitrust claims may be mooted or narrowed by patent claims); Eurand Inc. v. Mylan Pharms. Inc., C.A. No. 08-889-SLR, 2009 WL 3172197, at *1 (D. Del. Oct. 1, 2009) (defendants' antitrust and misuse claims that plaintiff's claims are "objectively baseless" may be mooted by trial on patent claims).

be inefficient and potentially unfair to witnesses to begin discovery from scratch in the event

resolution of the first-tried claims does not result in global settlement. *See, e.g., Abbott Labs. v.

Teva Pharms. USA, Inc.*, C.A. No. 02-1512-KAJ, 2005 WL 6225546, at *3 (D. Del. May 6,

2005) (denying stay of discovery and bifurcation where there is significant overlap of evidence);

*Enzo Life Sciences, Inc. v. Digene Corp.*, C.A. No. 02-212-JJF, 2003 WL 21402512, at *5 (D.

Del. June 10, 2003) (though granting bifurcation of patent and Lanham Act claims, the Court

denied a requested stay of discovery related to the claims to be tried second); *Arendi Holdings

Ltd. v. Microsoft Corp.*, C.A. No. 09-119-JJF, 2009 WL 3535460, at *1 (D. Del. Oct. 27, 2009)

(denying motion to stay discovery where infringement and damages would be tried

concurrently); *Willemijn Hous. v. Apollo Comp., Inc.*, 707 F. Supp. 1429, 1433 (D. Del. 1989)

(same).

Apple submits herewith as Exhibit A a proposed schedule that provides for sequencing of

separate trials without a stay of discovery.

## VI.   CONCLUSION

For the for reasons set forth above, Nokia's Motion to Bifurcate and Stay should be

denied, and Apple's Cross-Motion to Bifurcate should be granted.

OF COUNSEL:

William F. Lee
Mark D. Selwyn
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA  02109
Tel:  617 526 6000

Mark D. Selwyn
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1117 California Avenue
Palo Alto, CA  94304
Tel:  (650) 858-6000

Kenneth H. Bridges
Michael T. Pieja
WONG CABELLO
540 Cowper Street, Suite 100
Palo Alto, CA 94304
Tel:  (650) 681-4475

Dated:  April 5, 2010
960360 / 35035

POTTER ANDERSON & CORROON LLP

By:  */s/ Richard L. Horwitz*
    Richard L. Horwitz (#2246)
    David E. Moore (#3983)
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    Wilmington, DE  19899
    Tel:  (302) 984-6000
    rhorwitz@potteranderson.com
    dmoore@potteranderson.com

*Attorneys for Defendant/Counterclaim-Plaintiff Apple Inc.*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I, Richard L. Horwitz, hereby certify that on April 5, 2010, the attached document was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

I hereby certify that on April 5, 2010, the attached document was electronically mailed to the following person(s)

Jack B. Blumenfeld
Rodger D. Smith II
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
Wilmington, DE 19899
jblumenfeld@mnat.com
rsmith@mnat.com

Patrick J. Flinn
John D. Haynes
Keith E. Broyles
Mark A. McCarty
Alston & Bird LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309
patrick.flinn@alston.com
john.haynes@alston.com
keith.broyles@alston.com
mark.mccarty@alston.com

Alan L. Whitehurst
The Atlantic Building
950 F Street, NW
Washington, DC 20004-1404
alan.whitehurst@alston.com

/s/ Richard L. Horwitz
Richard L. Horwitz
David E. Moore
POTTER ANDERSON & CORROON LLP
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

941557/35035