IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

NOKIA CORPORATION,

Plaintiff,

v.

APPLE INC.,

Defendant.

---

APPLE INC.,

Counterclaim Plaintiff,

v.

NOKIA CORPORATION and NOKIA INC.,

Counterclaim Defendants.

C.A. No. 09-791 (GMS)

**NOKIA CORPORATION'S AND NOKIA INC.'S**
**REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
rsmith@mnat.com

*Attorneys for Nokia Corporation and Nokia Inc.*

OF COUNSEL:

Patrick J. Flinn
Peter Kontio
John D. Haynes
Mark A. McCarty
Adam J. Biegel
ALSTON & BIRD LLP
1201 W. Peachtree Street
Atlanta, GA 30309-3424
(404) 881-7000

April 8, 2010

## TABLE OF CONTENTS

INTRODUCTION ........ 1

ARGUMENT ........ 2

I. APPLE FAILS TO MEET THE *TWOMBLY* AND *IQBAL* STANDARD ........ 2

II. APPLE'S RELIANCE ON *BROADCOM* AND NOKIA'S AMICUS POSITIONS IN THAT CASE IS UNDERCUT BY THE VASTLY DIFFERENT FACTUAL CONTEXT HERE ........ 8

III. APPLE'S CITATION TO THE DISTRICT COURT DECISION IN *RIM V. MOTOROLA* UNDERCUTS APPLE'S ATTEMPTS TO AVOID DISMISSAL ........ 10

CONCLUSION ........ 10

**TABLE OF AUTHORITIES**


| **Cases** | **Page(s)** |
| --- | --- |
| *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) | 2, 3, 7 |
| *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) | 2, 3, 6, 7 |
| *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297 (3d Cir. 2007) | *passim* |
| *Glass Equipment Development, Inc. v. Besten, Inc.*, 174 F.3d 1337 (Fed. Cir. 1999) | 7 |
| *Hancock v. Hood*, No. 09-00026, 2010 WL 653758 (S.D. Ala. Feb. 18, 2010) | 2 |
| *Hopper v. Banana Republic, LLC*, No. 07 Civ. 8526, 2008 WL 490613 (S.D.N.Y. Feb. 25, 2008) | 2 |
| *Research in Motion Ltd. v. Motorola, Inc.*, 644 F. Supp. 2d 788 (N.D. Tex. 2008) | 10 |
| *St. Clair v. Citizens Financial Group*, 340 F. App'x 62 (3d Cir. 2009) | 7 |

## INTRODUCTION

Apple's arguments against dismissal of its antitrust, contract, and declaratory judgment counterclaims can be succinctly summed up as follows: (i) Apple's allegations are sufficient simply because Apple says they are; and (ii) Apple (or any litigant for that matter) can pursue complicated, time-consuming, and costly antitrust, breach of contract, and patent misuse claims against an essential patent holder so long as it invokes the words "unfair, unreasonable, or discriminatory" in describing any license offer made by the essential patent holder in the course of license negotiations. Try as it might, Apple cannot escape the fact that these arguments cannot save a claim from the pleading requirements laid out by *Iqbal* and *Twombly*.

Because Apple's counterclaims cannot satisfy this burden on their own merits, Apple leans heavily on prior decisions in cases where specific anticompetitive behavior was alleged, and has framed its counterclaims and arguments around the language in those decisions. In doing so, Apple attempts to point out similarities on a very vague and generic level while carefully avoiding the comparison to actual underlying facts that will demonstrate the emptiness of its claims. Even if its substantive counterclaim allegations are credited, Apple's "antitrust case" lacks any evidence of market power, antitrust offense, exclusion or consumer harm. This is not surprising as this litigation is a dispute over price: Apple is unwilling to pay fair and reasonable royalties.

If Apple's version of the law were correct, recalcitrant negotiating parties (like Apple here) could clog up the courts with antitrust, contract and patent misuse claims in every patent infringement case involving patents essential to industry standards and federal courts would be powerless to weed out those claims that lack substance or plausibility. That, of course, is not the law – and it is precisely what *Twombly* intended to avoid. Nokia requests that this Court exercise its power to dismiss Apple's antitrust, contract, and patent misuse claims.

## ARGUMENT

### I. APPLE FAILS TO MEET THE *TWOMBLY* AND *IQBAL* STANDARD

Apple cites *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), and argues in conclusory fashion that its allegations meet the stringent tests established in these two landmark pleading cases. Apple ignores, however, the real import of these cases and the effect they have on Apple's counterclaims. In *Iqbal*, the Supreme Court unequivocally stated that a complaint must contain more than a simple "the-defendant-unlawfully-harmed-me accusation." 129 S. Ct. at 1949. A complaint that offers "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" is insufficient as a matter of law. *Id.* Where "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the plaintiff has failed to state a legally cognizable claim for relief, and dismissal is appropriate. *Id.* at 1950. In the end, "[d]etermining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950.[1]

Taken as a whole, Apple's counterclaims offer nothing but "labels," "conclusions," and "formulaic recitations of the elements" and they fail the test of common sense. That point is made clear by certain gaping holes in Apple's pleading and certain critical bits of reality that Apple concedes in its own allegations. First, although Apple uses every adjective it can muster ("excessive", "exorbitant", "unreasonable", "highly unreasonable") to disparage Nokia's licensing offers, it provides no explanation how those offers breached Nokia's commitments to

---

1 *See, e.g., Hancock v. Hood*, No. 09-00026, 2010 WL 653758, at *13 (S.D. Ala. Feb. 18, 2010) (dismissing with prejudice implausible claims based on multiple inconsistencies); *Hopper v. Banana Republic, LLC*, No. 07 Civ. 8526, 2008 WL 490613, at *2 (S.D.N.Y. Feb. 25, 2008) (dismissing claim based on "inherently contradictory and therefore implausible" facts).

license its patents on fair, reasonable, and non-discriminatory ("FRAND") terms (*see* Op. Br. p. 15). Apple refuses to describe in any way the mechanism of Nokia's purported breach. In stark contrast, the *Broadcom* complaint under review by the Third Circuit described the exact mechanism of Qualcomm's alleged breach with regard to both unreasonableness and discrimination. There, without citing to specific terms offered to Broadcom, Broadcom asserted that Qualcomm: (i) required licensees to pay a standard rate covering Qualcomm's entire patent portfolio, even if they only infringed "one claim of one patent;" (ii) charged the same rate for its portfolio covering the WCDMA standards at issue in the case as it charged for its more extensive portfolio of patents covering the CDMA 2000 standard; (iii) charged licensees discriminatory rates based on whether they purchased products from Qualcomm. Apple has not pled anything remotely comparable. So, try as it might to shelter its claims under the *Broadcom* decision, Apple simply has not explained the ways in which Nokia purportedly breached its FRAND commitment and Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal,* 129 S. Ct. at 1949. *See also Twombly*, 550 U.S. at 558 (noting that "proceeding to antitrust discovery can be expensive" and reiterating that "a district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed").

Second, Apple knows that the *sine qua non* of market power (an essential element of an antitrust claim) is the essentiality of the patent at issue to an industry standard. If the patent is not essential, it possesses little power to hold-up manufacturers of standards-compliant products. But Apple argues repeatedly that the ten Nokia patents in suit are not essential and that Nokia's infringement claims brought to enforce Nokia's right to FRAND compensation for the use of those patents are "baseless" (*see* Op. Br. p. 9). And with regard to the remaining essential

patents in Nokia's portfolio, Apple confesses in its Opposition that it has no clue whether any of those patents are essential or not (Opp. p. 12). In this context, it is wholly appropriate for this Court to determine that Apple's antitrust counterclaims are not plausible.[2]

Apple seeks to avoid that result by clinging to its right under the Federal Rules of Civil Procedure to plead in the alternative, and Nokia does not dispute that right within certain limits. But in the context of this dispute, Apple's counterclaims convert this case from one of permitted alternative pleading to sheer implausibility. Apple pleads (as it must) that Nokia has done nothing more to enforce its essential patent portfolio against Apple than: (i) make licensing offers to Apple; and then (ii) ask this Court to explicitly request judicially-approved FRAND compensation for ten of Nokia's essential patents if Apple infringes them. This latter action by Nokia renders Apple's antitrust claims utterly implausible. If, as Apple alleges, Nokia hatched some secret plan to make false FRAND commitments and then collect royalties in excess of FRAND for its essential patents, Nokia foiled its own plan by filing the lawsuit now before the Court. By filing this action (where, as Apple points out, Nokia has consistently taken the position that FRAND obligations are enforceable) and explicitly asking the Court to review infringement, validity and enforceability of the patents-in-suit and award FRAND compensation,

---

2 Apple claims in its Opposition that Nokia was unwilling to concede the essentiality of Qualcomm's patents but still pursued remedies against Qualcomm in litigation in the Chancery Court. The letter attached as Exhibit D to Apple's Opposition addressed interrogatories Qualcomm served on Nokia asking Nokia to concede that certain Qualcomm patents were essential. Nokia's point in the letter was that answering the interrogatories would not materially advance the parties' dispute because Nokia challenged Qualcomm licensing practices other than just price, such as Qualcomm's pursuit of injunctions and insistence that Nokia take a license to a bundle of all Qualcomm's patents covering various standards and grant Qualcomm a royalty-free grant back to Nokia's own patents – all issues that Nokia plead with specificity in its Delaware complaint. In addition to the factual differences in these cases, what Apple also misses is that Nokia did not assert an antitrust claim in that litigation and, therefore, the actual essentiality of patents and their hold-up power – an essential element under the *Broadcom* court's antitrust analysis – was not an essential element of Nokia's claim.

Nokia has taken the ability to collect royalties in excess of FRAND out of its own hands and ensured that it will have no chance of collecting royalties in excess of FRAND for the patents-in-suit. Indeed, because Nokia is asking this court to award FRAND compensation consistent with the antitrust laws and the parties' obligations, the prior negotiations between the parties cannot, as a matter of law, support claims for breach of contract or antitrust violations,

With regard to the remainder of Nokia's essential patents, there is no allegation that Nokia has taken legal action to enforce them against Apple (because it has not), or that Nokia demanded Apple take a bundled portfolio license to Nokia's essential patents (because, as Apple concedes in its allegations, Nokia made a separate unbundled, *a la carte* offer for any essential patent Apple chose to license). Moreover, Apple has paid nothing for the ten essential patents-in-suit or any of Nokia's other essential patents either to Nokia or to an escrow account.

These points are important because, absent any legal enforcement activity by Nokia to seek something more than FRAND compensation or an exclusionary remedy and absent actual harm or loss to Apple, all Apple can claim is that somehow the *in terrorem* value of Nokia's essential patent portfolio has constrained its actions and caused harm. But Apple boasts in its allegations that it was willing to launch the iPhone without concluding FRAND terms for use of Nokia's essential patents and has enjoyed great success with sales of the iPhone in the absence of any agreement to FRAND licensing terms with Nokia (*see* Op. Br. p. 5, Amended Counterclaims ¶ 22-23). In this context, Apple's claim that it has somehow been harmed by: (i) patents Apple believes are not essential and have no hold-up or market power; or (ii) other patents that Apple has not even taken the time to consider does not pass the plausibility test.

In addition, Apple does not deny that it is required to pay Nokia FRAND compensation in exchange for the right to practice an essential patent. Yet Apple takes the remarkable position

that Nokia has breached contracts and violated antitrust laws through the simple acts of (i) trying to establish what that compensation should be; and (ii) attempting to collect it. In other words, under Apple's down-is-up-and-up-is-down view of contract and antitrust law, although Apple would owe Nokia money for using Nokia's essential patents, Nokia is barred from determining how much or from collecting it. No doubt every debtor would like this to be the law, but it is not. Instead, it is simply an example of how Apple's threadbare allegations fall short of the plausibility standard set forth in *Twombly*.[3]

In addition to not pleading any actual harm to itself, Apple also does not plead any actual harm to competition from Nokia's essential patent portfolio or Nokia's purported breach of its FRAND commitments. Apple does not allege that Nokia has repudiated the enforceability of any FRAND commitments or tried to water down their content. Quite to the contrary, Apple cites various instances where Nokia has firmly and unequivocally advocated that FRAND commitments mean something and should be enforceable (including asserting a claim in the Qualcomm litigation that Qualcomm was entitled to FRAND rights with regard to Nokia's own essential patents) (Opp. pp. 6-7). Nokia's claims in this very case likewise reinforce that view.

Apple also does not allege that Nokia has extracted from other manufacturers of standards-compliant products royalties or license terms violative of Nokia's FRAND commitments. Apple does not point to any standards-compliant products that Nokia has blocked from sale through use of its essential patents. And Apple points to no discrimination between

---

3 Indeed, the contrast between Apple's behavior and Nokia's behavior in FRAND disputes is stark. Nokia acknowledges that both parties have rights and obligations, including the obligation to act in good faith. See, e.g., Ex. B to Apple's Opposition to Nokia's Motion to Dismiss, ¶ 71, where Nokia notes it had made a $20 million prepayment to Qualcomm and had paid an additional $80 million into escrow to cover possible FRAND compensation for essential patents. Apple has never alleged that it has paid any royalties to Nokia, either directly or into escrow.

potential licensees by Nokia. These are the types of allegations, directed at true abuses of hold-up power, that were pled in *Broadcom* and were held to be sufficient to support an antitrust claim.

Thus, Apple's statements that its allegations "clearly," "easily," and "surely" meet the stringent requirements of *Twombly* and *Iqbal* ring hollow, especially given the Supreme Court's analyses, in which it systematically unpacked the respective plaintiffs' allegations. The Court determined which allegations were not supported by well-pled facts and described how plaintiffs' various theories were not supported by sufficiently plausible facts in order to determine that the complaints did not state a claim. *Iqbal*, 129 S. Ct. at 1951-52; *Twombly*, 550 U.S. at 564-69*; see also St. Clair v. Citizens Financial Group,* 340 F. App'x 62, 65-67 (3d Cir. 2009) (dismissing Sherman Act Section 1 and 2 and RICO claims based on *Twombly*).

Apple also does not attempt to address or distinguish the clear authority cited by Nokia, including recent district and circuit court decisions applying these Supreme Court decisions to dismiss putative antitrust claims based on failed contractual negotiations, or to dismiss complaints where fundamental inconsistencies rendered the claims implausible (*see* Op. Br. pp. 7-10, 14). And it makes no real attempt to address Nokia's claims that its patent infringement litigation is protected under the *Noerr-Pennington* doctrine[4] (*id.* pp 16-17).

4 Apple cites *Glass Equipment Development, Inc. v. Besten, Inc.* for the proposition that a licensor cannot sue a licensee for patent infringement, but the case is entirely inapposite, as it merely holds that an *implied* license can serve as a defense to patent infringement and does not deal with whether an infringement suit would constitute "sham litigation" that would strip a party of *Noerr-Pennington* immunity. 174 F.3d 1337, 1341 (Fed. Cir. 1999).

## II. APPLE'S RELIANCE ON *BROADCOM* AND NOKIA'S AMICUS POSITIONS IN THAT CASE IS UNDERCUT BY THE VASTLY DIFFERENT FACTUAL CONTEXT HERE

To the extent Apple's Opposition looks to any authority in support of its antitrust counterclaim, it is the Third Circuit's decision in *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297 (3d Cir. 2007), which it cites more than 10 times. For a precedent to dictate the same result in a subsequent case, however, it must do more than involve the same subject matter as the second case. It must be applied to the circumstances of the second case. When that is done here, it is apparent that comparing the activities of the defendant described in the complaint under review in *Broadcom* to Apple's allegations regarding Nokia is like comparing apples to oranges.

As described in Nokia's opening brief, the *Broadcom* case involved a motion to dismiss an antitrust claim Broadcom asserted against Qualcomm for using the hold-up power of its essential patents to harm competition in various technology and product markets. A simple comparison of the allegations contained in Broadcom's complaint against Qualcomm (Exhibit A hereto) and in Apple's complaint against Nokia demonstrate why Broadcom's complaint was sufficient and Apple's is not:

| Broadcom's allegations of misconduct by Qualcomm | Apple's allegations of misconduct by Nokia |
|---|---|
| Charged lower royalties to licensees that purchased its chipset than it did to licensees that refused to purchase its chipsets (FAC 14-15, 74) | No such allegation |
| Demanded that it receive the same royalties for one technology subject to FRAND commitment (UMTS) as it received for another technology (CDMA2000) even though patent portfolio covering second technology was clearly stronger than portfolio covering first technology (FAC 99-100) | No such allegations |
| Demanded that it receive a fixed royalty percentage for license to entire essential patent portfolio even if the potential licensee only used "one claim of one patent." restrict the competitor's market to customers licensed by Qualcomm (FAC 99) | No similar allegations (only concerns FRAND terms) |

| Broadcom's allegations of misconduct by Qualcomm | Apple's allegations of misconduct by Nokia |
|---|---|
| Successfully forced multiple competitors to assent to non-FRAND demands (FAC 15, 72-74, 92-95, 104-09) | No similar allegations (Apple has not assented to anything, and Nokia only seeks payment of FRAND compensation) |
| Imposed contractual terms requiring competitors to disclose to Qualcomm their price information for customers Qualcomm competed for (FAC 102) | No similar allegations of request for any price information by Nokia |
| Bullied other SSO members, by threatening price increases or supply cutbacks, into supporting its technology for inclusion in a standard (FAC 78-80) | No similar allegation of threats or coercive activity during standard setting process |

Specific allegations of actual actions taken by Qualcomm in violation of its FRAND commitments that were hurting competition and competitors led to the result in Broadcom.[5] In contrast, here Apple has alleged only that Nokia made certain license offers to Apple, Apple rejected them, and Nokia then sought judicially-approved FRAND compensation for the patents in suit in this Court. During that entire period, Apple forged ahead with design and sales of the iPhone, paid Nokia nothing for use of its essential patents, and apparently, according to Apple's own allegations, never viewed Nokia's essential patents as any form of impediment.

When these distinctions are analyzed, despite Apple's assertion that its claims here "mirror" the antitrust claims brought against Qualcomm by Broadcom (Opp. p. 2), these claims look nothing alike. *Broadcom* must be viewed for what it is, namely a ruling by the Third Circuit on the antitrust pleading standards for standard-setting abuses in light of the detailed substantive claims asserted against Qualcomm. Conclusory invocations of *Broadcom*'s holding cannot defeat a motion to dismiss allegations of purported antitrust abuses in the standard setting context that a party may seek to assert (no matter how sparse or implausible). And *Broadcom*

5 In addition, as Nokia noted in its litigation against Qualcomm, Qualcomm explicitly disavowed that it was required to grant any licenses under FRAND and sought injunctions *instead of* asking the court to determine the amount of FRAND compensation at issue for its essential patents (*see* Exhibit D to Apple's Opposition).

does not permit a party to pursue antitrust claims by simply alleging, without explanation, that a party breached a FRAND commitment.

## III. APPLE'S CITATION TO THE DISTRICT COURT DECISION IN *RIM V. MOTOROLA* UNDERCUTS APPLE'S ATTEMPTS TO AVOID DISMISSAL

Apple also cites the district court opinion in *Research in Motion Ltd. v. Motorola, Inc.*, 644 F. Supp. 2d 788 (N.D. Tex. 2008), as a case allowing claims to proceed under "generalized allegations" of failure to extend FRAND terms. In that case, however, the complaint contained more specific and particularized allegations regarding purported FRAND misconduct. RIM alleged that Motorola sought royalty rates that were 1) "multiple times" the amount Motorola had previously charged RIM, 2) "substantially in excess of royalties RIM has paid and is paying other parties claiming to own patents essential to the same widely-implemented standards as those Motorola claims to own," 3) "multiple times greater than the royalty rates of FRAND licenses in the industry," and 4) "far above the imputed licensing royalty rate that Motorola incurs for its own downstream products that compete with RIM." *Research in Motion Ltd. v. Motorola, Inc.* complaint filed Feb. 16, 2008, at ¶¶89, 93. (Exhibit B hereto). Apple makes no such allegations in its complaint and does not, even in general terms, cite to any benchmarks that should be used to measure Nokia's offers to Apple.[6]

## CONCLUSION

For the reasons set forth in its Opening Brief and herein, Nokia's Motion to Dismiss should be granted.

---

6 Apple cites restrictions it believes have been placed on it by the parties' non-disclosure agreement. But counsel for Broadcom and RIM were able to allege specific, particularized facts about comparable FRAND rates in the industry when they apparently believed the facts supported such allegations.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ Jack B. Blumenfeld

Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
rsmith@mnat.com

*Attorneys for Nokia Corporation and Nokia Inc.*

OF COUNSEL:

Patrick J. Flinn
Peter Kontio
John D. Haynes
Mark A. McCarty
Adam J. Biegel
ALSTON & BIRD LLP
1201 W. Peachtree Street
Atlanta, GA 30309-3424
(404) 881-7000

April 8, 2010

**CERTIFICATE OF SERVICE**

I hereby certify that on April 8, 2010, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to:

Richard L. Horwitz, Esquire
David E. Moore, Esquire
POTTER ANDERSON & CORROON LLP

I further certify that I caused to be served copies of the foregoing document on April 8, 2010, upon the following in the manner indicated:

Richard L. Horwitz, Esquire
David E. Moore, Esquire
POTTER ANDERSON & CORROON LLP
Hercules Plaza – 6th Floor
1313 North Market Street
Wilmington, DE 19801

*VIA ELECTRONIC MAIL*

William F. Lee, Esquire
Mark D. Selwyn, Esquire
WILMERHALE
60 State Street
Boston, MA 02109

*VIA ELECTRONIC MAIL*

Kenneth H. Bridges, Esquire
Michael T. Pieja, Esquire
WONG, CABELLO, LUTSCH, RUTHERFORD & BRUCCULERI, LLP
540 Cowper Street
Palo Alto, CA 94301

*VIA ELECTRONIC MAIL*

Jack B. Blumenfeld (#1014)