IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

NOKIA CORPORATION,               )
                                 )
                Plaintiff,       )
                                 )
        v.                       )
                                 )
APPLE INC.,                      )
                                 )
                Defendant.       )
_____)   C.A. No. 09-791 (GMS)
APPLE INC.,                      )
                                 )
                Counterclaim Plaintiff,  )
                                 )
        v.                       )
                                 )
NOKIA CORPORATION and NOKIA INC.,  )
                                 )
                Counterclaim Defendants.  )

### NOKIA CORPORATION'S AND NOKIA INC.'S
### ANSWER TO APPLE'S FIRST AMENDED COUNTERCLAIMS

Defendants Nokia Corporation and Nokia Inc. (collectively, "Nokia") hereby respond to

Counterclaim-Plaintiff Apple Inc.'s ("Apple") Counterclaims as follows:

### NATURE OF THE ACTION

1.      Nokia denies the allegations contained in Paragraph 1 of Apple's Counterclaims.

2.      Nokia admits the allegations contained in Paragraph 2 of Apple's Counterclaims.

3.      Nokia admits the allegations contained in Paragraph 3 of Apple's Counterclaims.

4.      Nokia admits the allegations contained in Paragraph 4 of Apple's Counterclaims.

5.      Nokia admits that the ETSI IPR Policy contains rules regarding the disclosure of

essential IPR, and that those rules obligate members to use their reasonable endeavors to inform

ETSI of essential IPRs in a timely manner.  Nokia is without knowledge or information sufficient

to form a belief as to the remaining allegations contained in Paragraph 5 of Apple's Counterclaims, and on that basis, denies them.

6.      Nokia admits that an IPR holder that has voluntarily undertaken to license its IPRs on F/RAND terms (instead of keeping the inventions proprietary) has irrevocably committed to allow the standard to be implemented under its IPR on F/RAND basis and thereby waived – absent exceptional circumstances – its legally defined right to exclude others from practicing the standard under its IPR. Nokia further admits that this also means that the IPR holder cannot use its hold-up power resulting from the incorporation of its technology into the standard and the IPR holder's right to exclude to extort royalties that do not comply with F/RAND. Nokia further admits that in return for the right to practice the standard under the essential IPRs, the parties must agree upon appropriate F/RAND terms and conditions, and that implementing manufacturers have the obligation to pay F/RAND compensation for the IPR used (to the extent not invalid or unenforceable). Except as otherwise admitted, Nokia denies the allegations contained in Paragraph 6 of Apple's Counterclaims.

7.      Nokia denies the allegations contained in Paragraph 7 of Apple's Counterclaims.

8.      Nokia admits that it has declared each of the patents-in-suit as essential to the GSM, UMTS, and/or 802.11 Standards, where applicable, and undertaken – in accordance with the applicable rules of the standard setting organizations ("SSO") – to grant licenses under each of the patents-in-suit on fair, reasonable, and nondiscriminatory ("FRAND") terms and conditions (in some cases, alternatively referred to as "reasonable and non-discriminatory," or "RAND," terms). Except as otherwise admitted, Nokia denies the allegations contained in Paragraph 8 of Apple's Counterclaims.

9.    Nokia admits that an IPR holder that has voluntarily undertaken to license its IPRs on F/RAND terms has irrevocably committed to allow the standard to be implemented under its IPR on F/RAND basis and thereby waived – absent exceptional circumstances – its legally defined right to exclude others from practicing the standard under its IPR.  Nokia further admits that in return for the right to practice the standard under the essential IPRs, implementing manufacturers have the obligation to pay F/RAND compensation for the IPR used (to the extent not invalid or unenforceable).  Except as otherwise admitted, Nokia denies the allegations contained in Paragraph 9 of Apple's Counterclaims.

10.    Nokia admits that prior to filing this Complaint, it made various offers to Apple for the F/RAND terms and conditions of a license agreement under which each of the patents-in-suit could be licensed either individually or together with other Nokia essential patents (i.e., a portfolio license).  In its offers to Apple, Nokia has specified both a portfolio rate and an average per-patent royalty rate which Apple could have accepted within a reasonable time for each of the patents-in-suit.  Except as otherwise admitted, Nokia denies the allegations contained in Paragraph 10 of Apple's Counterclaims.

11.    Nokia denies the allegations contained in Paragraph 11 of Apple's Counterclaims.

12.    Nokia denies the allegations contained in Paragraph 12 of Apple's Counterclaims.

## PARTIES

13.    Nokia is without knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 13 of Apple's Counterclaims, and on that basis, denies them.

14.    Nokia admits that Apple sells products including personal computers, portable digital music players, mobile communications devices, and other products and services.  Except

as otherwise admitted, Nokia denies the allegations contained in Paragraph 14 of Apple's
Counterclaims.

15.     Nokia denies that Nokia Inc.'s principal place of business is located in Texas.
Nokia admits the remaining allegations contained in Paragraph 15 of Apple's Counterclaims.

16.     Nokia admits the allegations contained in Paragraph 16 of Apple's Counterclaims.

## JURISDICTION AND VENUE

17.     Nokia admits that this Court has jurisdiction over Apple's counterclaims to the
extent that Apple's claims relate to Nokia's United States patents.  Nokia denies that this Court
has jurisdiction to adjudicate Apple's claims to the extent that they relate to Nokia's foreign
patents.

18.     Nokia admits that Apple and Nokia are citizens of different states.  Nokia further
admits that Apple seeks in excess of $75,000 through its Counterclaims, but Nokia denies that
Apple is entitled to any judgment against Nokia in any sum or sums whatsoever, including
damages, injunctive relief, declaratory relief, prejudgment interest, post-judgment interest, costs,
attorneys' fees, or any of the other various forms of relief requested.  Except as otherwise
admitted, Nokia denies the allegations contained in Paragraph 18 of Apple's Counterclaims.

19.     Because Paragraph 19 purports to assert legal conclusions, Nokia is not obligated
to respond and, on that basis, denies the allegations contained in Paragraph 19 of Apple's
Counterclaims.

20.     Nokia admits that this Court may exercise personal jurisdiction over Nokia.
Except as otherwise admitted, Nokia denies the allegations contained in Paragraph 20 of Apple's
Counterclaims.

21.     Nokia admits that venue is proper in this District.

## BACKGROUND

22.    Nokia admits that Apple sells mobile communications devices such as the Apple iPhone, Apple iPhone 3G, and Apple iPhone 3GS.  Nokia is without knowledge or information sufficient to form a belief as to the remaining allegations contained in Paragraph 22 of Apple's Counterclaims, and on that basis, denies them.

23.    Nokia admits that Apple sells mobile communications devices in the United States, Canada, Europe, and Asia.  Nokia is without knowledge or information sufficient to form a belief as to the remaining allegations contained in Paragraph 23 of Apple's Counterclaims, and on that basis, denies them.

24.    Nokia admits that it is the world's largest manufacturer of mobile telephones and that its mobile telephones compete with Apple's iPhones.  Nokia also admits that it manufactures smartphones and devices in Nokia's ESeries, NSeries and 5000 Series that include email, Internet, and multimedia capability  Except as otherwise admitted, Nokia denies the allegations contained in Paragraph 24 of Apple's Counterclaims.

25.    Nokia admits that the quote set out in Paragraph 24 appeared in the Guardian on September 2, 2009.  Except as otherwise admitted, Nokia denies the allegations contained in Paragraph 25 of Apple's Counterclaims.

26.    Nokia admits that its market share in the fourth quarter of 2008 was 40.8%.  Nokia is without knowledge or information sufficient to form a belief as to the remaining allegations contained in Paragraph 26 of Apple's Counterclaims, and on that basis, denies them.

27.    Nokia admits hat it launched the N97 in June 2009 and that Nokia has sold millions of N97s since that time.  Nokia is without knowledge or information sufficient to form a

belief as to the remaining allegations contained in Paragraph 27 of Apple's Counterclaims, and on that basis, denies them.

28.    Nokia admits that its market share in the third quarter of 2009 was 39.3%.  Except as otherwise admitted, Nokia denies the allegations contained in Paragraph 28 of Apple's Counterclaims.

29.    Nokia denies the allegations contained in Paragraph 29 of Apple's Counterclaims.

30.    Nokia admits the allegations contained in the first sentence of Paragraph 30. Nokia also admits that its handsets include "a computer chipset that enables the handset to communicate with the carriers' networks" and that Nokia purchases such chipsets from third-party manufacturers.  Except as otherwise admitted, Nokia denies the allegations contained in Paragraph 30 of Apple's Counterclaims.

31.    Nokia admits the allegations contained in Paragraph 31 of Apple's Counterclaims.

32.    Nokia admits that technical standards are important to wireless technologies, that technical standards are generally published and available to members of the wireless industry, and that wireless standards encourage investment in standards-compliant products.  Except as otherwise admitted, Nokia denies the allegations contained in Paragraph 32 of Apple's Counterclaims.

33.    Nokia admits that adoption of wireless standards, in general, tend to lower costs of producing standards-compliant products due to economies of scale and permit multiple manufacturers to enter the market for standards compliant products.   Except as otherwise admitted, Nokia denies the allegations contained in Paragraph 33 of Apple's Counterclaims.

34.     Nokia admits that adoption of wireless standards can lead in some circumstances to the risk of patent hold-up.  Except as otherwise admitted, Nokia denies the allegations contained in Paragraph 34 of Apple's Counterclaims..

35.     Nokia admits that, once a standard is widely adopted, there can be switching costs involved if the standard must be changed.   Except as otherwise admitted, Nokia denies the allegations contained in Paragraph 35 of Apple's Counterclaims.

36.     Nokia admits that the SSO's relevant to this action have adopted Patent or IPR policies and states that those policies speak for themselves.  Except as otherwise admitted, Nokia denies the allegations contained in Paragraph 36 of Apple's Counterclaims.

37.     Nokia admits that the ETSI IPR Policy contains rules regarding the disclosure of essential IPR and rules regarding their licensing on FRAND terms.  Nokia further admits that members are obligated to use their reasonable endeavors to inform ETSI of essential IPRs in a timely manner, and voluntarily undertake to grant licenses on FRAND terms and conditions.  Except as otherwise admitted, Nokia denies the allegations contained in Paragraph 37 of Apple's Counterclaims.

38.     Nokia admits that the ETSI IPR Policy contains rules regarding the disclosure of essential IPR and rules regarding their licensing on FRAND terms.  Nokia further admits that members are obligated to use their reasonable endeavors to inform ETSI of essential IPRs in a timely manner, and voluntarily undertake to grant licenses on FRAND terms and conditions.  Except as otherwise admitted, Nokia denies the allegations contained in Paragraph 38 of Apple's Counterclaims.

39.     Nokia denies the allegations contained in Paragraph 39 of Apple's Counterclaims.

40.     Nokia admits the allegations contained in Paragraph 40 of Apple's Counterclaims.

41.    Nokia admits the allegations contained in Paragraph 41 of Apple's Counterclaims.

42.    Nokia admits the allegations contained in Paragraph 42 of Apple's Counterclaims.

43.    Nokia admits the allegations contained in Paragraph 43 of Apple's Counterclaims.

44.    Nokia admits the allegations contained in Paragraph 44 of Apple's Counterclaims.

45.    Nokia admits the allegations contained in Paragraph 45 of Apple's Counterclaims.

46.    Nokia admits the allegations contained in Paragraph 46 of Apple's Counterclaims.

47.    Nokia admits the allegations contained in Paragraph 47 of Apple's Counterclaims.

48.    Nokia admits the allegations contained in Paragraph 48 of Apple's Counterclaims.

49.    Nokia admits the allegations contained in Paragraph 49 of Apple's Counterclaims.

50.    Nokia admits that some smartphones include Wi-Fi compatibility.  Except as otherwise admitted, Nokia denies the allegations contained in Paragraph 50 of Apple's Counterclaims.

51.    Nokia admits the allegations contained in Paragraph 51 of Apple's Counterclaims.

52.    Nokia admits the allegations contained in Paragraph 52 of Apple's Counterclaims.

53.    Nokia denies the allegations contained in Paragraph 53 of Apple's Counterclaims.

54.    Nokia denies the allegations contained in Paragraph 54 of Apple's Counterclaims.

55.    Nokia denies the allegations contained in Paragraph 55 of Apple's Counterclaims.

56.    Nokia denies the allegations contained in Paragraph 56 of Apple's Counterclaims.

57.    Nokia admits the allegations contained in Paragraph 57 of Apple's Counterclaims.

58.    Nokia states that Clause 4 of the ETSI IPR Policy speaks for itself.  Except as otherwise admitted, Nokia denies the allegations contained in Paragraph 58 of Apple's Counterclaims.

59.     Nokia states that Clause 6 of the ETSI IPR Policy speaks for itself.  Except as otherwise admitted, Nokia denies the allegations contained in Paragraph 59 of Apple's Counterclaims.

60.     Nokia states that Clause 8 of the ETSI IPR Policy speaks for itself.  Except as otherwise admitted, Nokia denies the allegations contained in Paragraph 60 of Apple's Counterclaims.

61.     Nokia states that Clause 3.1 of the ETSI IPR Policy speaks for itself.  Except as otherwise admitted, Nokia denies the allegations contained in Paragraph 61 of Apple's Counterclaims.

62.     Nokia admits that it has been a member of ETSI at all relevant times.  Nokia further states that the ETSI Rules of Procedure and the ETSI IPR Policy speak for themselves.  Except as otherwise admitted, Nokia denies the allegations contained in Paragraph 62 of Apple's Counterclaims.

63.     Nokia admits the allegations contained in Paragraph 63 of Apple's Counterclaims.

64.     Nokia denies the allegations contained in Paragraph 64 of Apple's Counterclaims.

        a.     Nokia denies the allegations contained in the first sentence of section (a) in Paragraph 64 of Apple's Counterclaims.  Nokia admits that it participated in SA WG3 and TSG-RAN #11, and that it made contributions to those working groups, but denies that it improperly failed to disclose essential IPR.  Except as otherwise admitted, Nokia denies the allegations contained in section (a) in Paragraph 64 of Apple's Counterclaims.

        b.     Nokia denies the allegations contained in the first sentence of section (b) in Paragraph 64 of Apple's Counterclaims.  Nokia admits that it participated in SMG2-32, SMG2-33, and SMG2-32, and that it made contributions to those working groups, but

denies that it improperly failed to disclose essential IPR. Except as otherwise admitted, Nokia denies the allegations contained in section (b) in Paragraph 64 of Apple's Counterclaims.

      c.     Nokia denies the allegations contained in the first sentence of section (c) in Paragraph 64 of Apple's Counterclaims. Nokia admits that it participated in SMG2-19, but denies that it improperly failed to disclose essential IPR. Except as otherwise admitted, Nokia denies the allegations contained in section (c) in Paragraph 64 of Apple's Counterclaims.

      d.     Nokia denies the allegations contained in the first sentence of section (d) in Paragraph 64 of Apple's Counterclaims. Nokia admits that it participated in 3GPP TSG SA WG3, and that it made contributions to that working group, but denies that it improperly failed to disclose essential IPR. Except as otherwise admitted, Nokia denies the allegations contained in section (d) in Paragraph 64 of Apple's Counterclaims.

65.     Nokia denies the allegations contained in Paragraph 65 of Apple's Counterclaims.

66.     Nokia admits that it has declared patents essential to ETSI. Nokia further admits that in declaring patents as essential, Nokia has irrevocably committed to allow the standard to be implemented under its IPR on a F/RAND basis and thereby waived – absent exceptional circumstances – its legally defined right to exclude others from practicing the standard under its IPR. Nokia further admits that in return for the right to practice the standard under the essential IPRs, implementing manufacturers have the obligation to pay F/RAND compensation for the IPR used (to the extent not invalid or unenforceable). Except as otherwise admitted, Nokia denies the allegations contained in Paragraph 66 of Apple's Counterclaims.

67.     Nokia denies the allegations contained in Paragraph 67 of Apple's Counterclaims.

68.     Nokia denies the allegations contained in Paragraph 68 of Apple's Counterclaims.

69.     Nokia denies the allegations contained in Paragraph 69 of Apple's Counterclaims.

70.     Nokia admits that it has declared patents essential to ETSI.  Nokia further admits that in declaring patents as essential, Nokia has irrevocably committed to allow the standard to be implemented under its IPR on F/RAND basis and thereby waived – absent exceptional circumstances – its legally defined right to exclude others from practicing the standard under its IPR.  Nokia further admits that in return for the right to practice the standard under the essential IPRs, implementing manufacturers have the obligation to pay F/RAND compensation for the IPR used (to the extent not invalid or unenforceable).  Except as otherwise admitted, Nokia denies the allegations contained in Paragraph 70 of Apple's Counterclaims.

71.     Nokia is without knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 71 of Apple's Counterclaims, and on that basis, denies them.

72.     Nokia is without knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 72 of Apple's Counterclaims, and on that basis, denies them.

73.     Nokia admits the allegations contained in the first sentence of Paragraph 73 of Apple's Counterclaims.  Nokia further states that the IEEE's Bylaws speak for themselves. Except as otherwise admitted, Nokia denies the allegations contained in Paragraph 73 of Apple's Counterclaims.

74.     Nokia states that the IEEE's Bylaws speak for themselves.  Except as otherwise admitted, Nokia denies the allegations contained in Paragraph 74 of Apple's Counterclaims.

75.     Nokia states that the IEEE's Bylaws speak for themselves.  Except as otherwise admitted, Nokia denies the allegations contained in Paragraph 75 of Apple's Counterclaims.

76.     Nokia states that the IEEE's Bylaws speak for themselves. Except as otherwise admitted, Nokia denies the allegations contained in Paragraph 76 of Apple's Counterclaims.

77.     Nokia is without knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 77 of Apple's Counterclaims, and on that basis, denies them.

78.     Nokia admits the allegations contained in Paragraph 78 of Apple's Counterclaims.

79.     Nokia admits the allegations contained in Paragraph 79 of Apple's Counterclaims.

80.     Nokia denies the allegations contained in Paragraph 80 of Apple's Counterclaims.

81.     Nokia denies the allegations contained in Paragraph 81 of Apple's Counterclaims.

82.     Nokia admits that it has submitted letters of assurance for certain of the patents-in-suit pursuant to the IEEE-SA Bylaws. Nokia further admits that in so doing, Nokia has irrevocably committed to allow the standard to be implemented under its IPR on a F/RAND basis and thereby waived – absent exceptional circumstances – its legally defined right to exclude others from practicing the standard under its IPR. Nokia further admits that in return for the right to practice the standard under the essential IPRs, implementing manufacturers have the obligation to pay F/RAND compensation for the IPR used (to the extent not invalid or unenforceable). Except as otherwise admitted, Nokia denies the allegations contained in Paragraph 82 of Apple's Counterclaims.

83.     Nokia is without knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 83 of Apple's Counterclaims, and on that basis, denies them.

84.     Nokia is without knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 84 of Apple's Counterclaims, and on that basis, denies them.

85.     Nokia denies the allegations contained in Paragraph 85 of Apple's Counterclaims.

86.     Nokia admits the allegations contained in Paragraph 86 of Apple's Counterclaims.

87.     Nokia denies the allegations contained in Paragraph 87 of Apple's Counterclaims.

88.     Nokia is without knowledge or information sufficient to form a belief as to the allegations contained in the first sentence of Paragraph 84 of Apple's Counterclaims, and on that basis, denies them.  Nokia denies the remaining allegations contained in Paragraph 88 of Apple's Counterclaims.

89.     Nokia admits that it made a FRAND offer to Apple in or about spring 2008, and that Apple rejected that offer.  Nokia further admits that it proposed that Apple grant Nokia a license to certain Apple non-essential patents.  Except as otherwise admitted, Nokia denies the allegations contained in Paragraph 89 of Apple's Counterclaims.

90.     Nokia admits that it made a FRAND offer to Apple in or about May 2009, and that Apple rejected that offer.  Except as otherwise admitted, Nokia denies the allegations contained in Paragraph 90 of Apple's Counterclaims.

91.     Nokia admits that it made a FRAND offer to Apple in or about May 2009, and that Apple rejected that offer.  Except as otherwise admitted, Nokia denies the allegations contained in Paragraph 91 of Apple's Counterclaims.

92.     Nokia admits that, in the course of negotiations with Apple, Nokia informed Apple that it was unable to disclose the terms of licenses Nokia entered into with third parties because of confidentiality provisions in those licenses.  Nokia further admits that Nokia and Apple entered into a Non-Disclosure Agreement in connection with the parties' license negotiations.  Except as otherwise admitted, Nokia denies the allegations contained in Paragraph 92 of Apple's Counterclaims.

93.     Nokia denies the allegations contained in Paragraph 93 of Apple's Counterclaims.

94.     Nokia is without knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 94 of Apple's Counterclaims, and on that basis, denies them.

95.     Nokia is without knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 95 of Apple's Counterclaims, and on that basis, denies them.

96.     Nokia is without knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 96 of Apple's Counterclaims, and on that basis, denies them.

97.     Nokia is without knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 97 of Apple's Counterclaims, and on that basis, denies them.

98.     Nokia is without knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 98 of Apple's Counterclaims, and on that basis, denies them.

99.     Nokia admits the allegations contained in Paragraph 99 of Apple's Counterclaims.

100.     Because Paragraph 100 purports to assert legal conclusions, Nokia is not obligated to respond and, on that basis, denies the allegations contained in Paragraph 100 of Apple's Counterclaims.

101.     Nokia admits that GSM, GPRS, EDGE, UMTS and WLAN are used throughout the world.  Except as otherwise admitted, Nokia denies the allegations contained in Paragraph 101 of Apple's Counterclaims.

102.     Nokia denies the allegations contained in Paragraph 102 of Apple's Counterclaims.

103.     Nokia denies the allegations contained in Paragraph 103 of Apple's Counterclaims.

104.     Nokia denies the allegations contained in Paragraph 104 of Apple's Counterclaims.

105.    Nokia denies the allegations contained in Paragraph 105 of Apple's Counterclaims.

106.    Nokia denies the allegations contained in Paragraph 106 of Apple's Counterclaims.

## CLAIMS FOR RELIEF
## FIRST CAUSE OF ACTION
### (Breach of Contract – F/RAND)

107.    Nokia incorporates by reference its responses to Paragraphs 1 through 106 as if fully set forth herein.

108.    Nokia admits that an IPR holder that has voluntarily undertaken to license its IPRs on F/RAND terms (instead of keeping the inventions proprietary) has irrevocably committed to allow the standard to be implemented under its IPR on F/RAND basis and thereby waived – absent exceptional circumstances – its legally defined right to exclude others from practicing the standard under its IPR.  Nokia further admits that in return for the right to practice the standard under the essential IPRs, implementing manufacturers have the obligation to pay F/RAND compensation for the IPR used (to the extent not invalid or unenforceable).  Except as otherwise admitted, Nokia denies the allegations contained in Paragraph 108 of Apple's Counterclaims.

109.    Nokia admits that it has submitted letters of assurance for certain of the patents-in-suit pursuant to the IEEE-SA Bylaws.  Nokia further admits that in so doing, Nokia has irrevocably committed to allow the standard to be implemented under its IPR on F/RAND basis and thereby waived – absent exceptional circumstances – its legally defined right to exclude others from practicing the standard under its IPR.  Nokia further admits that in return for the right to practice the standard under the essential IPRs, implementing manufacturers have the

- 15 -

obligation to pay F/RAND compensation for the IPR used (to the extent not invalid or unenforceable). Except as otherwise admitted, Nokia denies the allegations contained in Paragraph 109 of Apple's Counterclaims.

110.    Because Paragraph 110 purports to assert legal conclusions, Nokia is not obligated to respond and, on that basis, denies the allegations contained in Paragraph 100 of Apple's Counterclaims.

111.    Nokia denies the allegations contained in Paragraph 111 of Apple's Counterclaims.

112.    Nokia denies the allegations contained in Paragraph 112 of Apple's Counterclaims.

## SECOND CAUSE OF ACTION
### (Promissory Estoppel)

113.    Nokia incorporates by reference its responses to Paragraphs 1 through 112 as if fully set forth herein.

114.    Nokia admits that an IPR holder that has voluntarily undertaken to license its IPRs on F/RAND terms (instead of keeping the inventions proprietary) has irrevocably committed to allow the standard to be implemented under its IPR on F/RAND basis and thereby waived – absent exceptional circumstances – its legally defined right to exclude others from practicing the standard under its IPR. Nokia further admits that in return for the right to practice the standard under the essential IPRs, implementing manufacturers have the obligation to pay F/RAND compensation for the IPR used (to the extent not invalid or unenforceable). Except as otherwise admitted, Nokia denies the allegations contained in Paragraph 114 of Apple's Counterclaims.

115.   Nokia denies the allegations contained in Paragraph 115 of Apple's Counterclaims.

116.   Nokia denies the allegations contained in Paragraph 116 of Apple's Counterclaims.

117.   Nokia denies the allegations contained in Paragraph 117 of Apple's Counterclaims.

118.   Nokia denies the allegations contained in Paragraph 118 of Apple's Counterclaims.

## THIRD CAUSE OF ACTION
### (Violation of Section 2 of the Sherman Act, 15 U.S.C. § 2)

119.   Nokia restates and incorporates by reference its answers to the allegations in Paragraphs 1 through 118 as if set forth fully herein.

120.   Nokia denies the allegations contained in Paragraph 120 of Apple's Counterclaims.

121.   Nokia denies the allegations contained in Paragraph 121 of Apple's Counterclaims.

122.   Nokia denies the allegations contained in Paragraph 122 of Apple's Counterclaims.

123.   Nokia denies the allegations contained in Paragraph 123 of Apple's Counterclaims.

124.   Nokia denies the allegations contained in Paragraph 124 of Apple's Counterclaims.

## FOURTH CAUSE OF ACTION
### (Declaratory Judgment that Nokia's Offers Have Not Been on F/RAND Terms)

125.    Nokia restates and incorporates by reference its answers to the allegations in Paragraphs 1 through 124 as if set forth fully herein.

126.    Nokia denies the allegations contained in Paragraph 126 of Apple's Counterclaims.

127.    Nokia denies the allegations contained in Paragraph 127 of Apple's Counterclaims.

128.    Nokia denies the allegations contained in Paragraph 128 of Apple's Counterclaims.

## FIFTH CAUSE OF ACTION
### (Declaratory Judgment of No Entitlement to Injunctive Relief)

129.    Nokia restates and incorporates by reference its answers to the allegations in Paragraphs 1 through 128 as if set forth fully herein.

130.    Nokia denies the allegations contained in Paragraph 130 of Apple's Counterclaims.

131.    Nokia denies the allegations contained in Paragraph 131 of Apple's Counterclaims.

132.    Nokia denies the allegations contained in Paragraph 132 of Apple's Counterclaims.

## SIXTH CAUSE OF ACTION
### (Declaratory Judgment of Patent Misuse)

133.    Nokia restates and incorporates by reference its answers to the allegations in Paragraphs 1 through 132 as if set forth fully herein.

134.    Nokia admits that it has sued Apple for patent infringement and that Apple disputes its infringement of the patents Nokia has asserted in this action.  Except as otherwise admitted, Nokia denies the allegations contained in Paragraph 134 of Apple's Counterclaims.

135.    Nokia denies the allegations contained in Paragraph 135 of Apple's Counterclaims.

136.    Nokia denies the allegations contained in Paragraph 136 of Apple's Counterclaims.

137.    Nokia denies the allegations contained in Paragraph 137 of Apple's Counterclaims.

138.    Nokia denies the allegations contained in Paragraph 138 of Apple's Counterclaims.

## SEVENTH CAUSE OF ACTION
### (Declaratory Judgment of Non-Infringement of the '465 Patent)

139.    Nokia restates and incorporates by reference its answers to the allegations in Paragraphs 1 through 138 as if set forth fully herein.

140.    Nokia denies the allegations contained in Paragraph 140 of Apple's Counterclaims.

141.    Nokia denies the allegations contained in Paragraph 141 of Apple's Counterclaims.

## EIGHTH CAUSE OF ACTION
### (Declaratory Judgment of Invalidity of the '465 Patent)

142.    Nokia restates and incorporates by reference its answers to the allegations in Paragraphs 1 through 141 as if set forth fully herein.

143.    Nokia denies the allegations contained in Paragraph 143 of Apple's Counterclaims.

144.    Nokia denies the allegations contained in Paragraph 144 of Apple's Counterclaims.

## NINTH CAUSE OF ACTION
### (Declaratory Judgment of Non-Infringement of the '178 Patent)

145.    Nokia restates and incorporates by reference its answers to the allegations in Paragraphs 1 through 144 as if set forth fully herein.

146.    Nokia denies the allegations contained in Paragraph 146 of Apple's Counterclaims.

147.    Nokia denies the allegations contained in Paragraph 147 of Apple's Counterclaims.

## TENTH CAUSE OF ACTION
### (Declaratory Judgment of Invalidity of the '178 Patent)

148.    Nokia restates and incorporates by reference its answers to the allegations in Paragraphs 1 through 147 as if set forth fully herein.

149.    Nokia denies the allegations contained in Paragraph 149 of Apple's Counterclaims.

150.    Nokia denies the allegations contained in Paragraph 150 of Apple's Counterclaims.

## ELEVENTH CAUSE OF ACTION
### (Declaratory Judgment of Non-Infringement of the '651 Patent)

151.    Nokia restates and incorporates by reference its answers to the allegations in Paragraphs 1 through 150 as if set forth fully herein.

152.     Nokia denies the allegations contained in Paragraph 152 of Apple's Counterclaims.

153.     Nokia denies the allegations contained in Paragraph 153 of Apple's Counterclaims.

## TWELFTH CAUSE OF ACTION
### (Declaratory Judgment of Invalidity of the '651 Patent)

154.     Nokia restates and incorporates by reference its answers to the allegations in Paragraphs 1 through 153 as if set forth fully herein.

155.     Nokia denies the allegations contained in Paragraph 155 of Apple's Counterclaims.

156.     Nokia denies the allegations contained in Paragraph 156 of Apple's Counterclaims.

## THIRTEENTH CAUSE OF ACTION
### (Declaratory Judgment of Non-Infringement of the '904 Patent)

157.     Nokia restates and incorporates by reference its answers to the allegations in Paragraphs 1 through 156 as if set forth fully herein.

158.     Nokia denies the allegations contained in Paragraph 158 of Apple's Counterclaims.

159.     Nokia denies the allegations contained in Paragraph 159 of Apple's Counterclaims.

## FOURTEENTH CAUSE OF ACTION
### (Declaratory Judgment of Invalidity of the '904 Patent)

160.     Nokia restates and incorporates by reference its answers to the allegations in Paragraphs 1 through 159 as if set forth fully herein.

161.    Nokia denies the allegations contained in Paragraph 161 of Apple's Counterclaims.

162.    Nokia denies the allegations contained in Paragraph 162 of Apple's Counterclaims.

### FIFTEENTH CAUSE OF ACTION
### (Declaratory Judgment of Non-Infringement of the '135 Patent)

163.    Nokia restates and incorporates by reference its answers to the allegations in Paragraphs 1 through 162 as if set forth fully herein.

164.    Nokia denies the allegations contained in Paragraph 164 of Apple's Counterclaims.

165.    Nokia denies the allegations contained in Paragraph 165 of Apple's Counterclaims.

### SIXTEENTH CAUSE OF ACTION
### (Declaratory Judgment of Invalidity of the '135 Patent)

166.    Nokia restates and incorporates by reference its answers to the allegations in Paragraphs 1 through 165 as if set forth fully herein.

167.    Nokia denies the allegations contained in Paragraph 167 of Apple's Counterclaims.

168.    Nokia denies the allegations contained in Paragraph 168 of Apple's Counterclaims.

### SEVENTEENTH CAUSE OF ACTION
### (Declaratory Judgment of Non-Infringement of the '548 Patent)

169.    Nokia restates and incorporates by reference its answers to the allegations in Paragraphs 1 through 168 as if set forth fully herein.

170.    Nokia denies the allegations contained in Paragraph 170 of Apple's Counterclaims.

171.    Nokia denies the allegations contained in Paragraph 171 of Apple's Counterclaims.

## EIGHTEENTH CAUSE OF ACTION
### (Declaratory Judgment of Invalidity of the '548 Patent)

172.    Nokia restates and incorporates by reference its answers to the allegations in Paragraphs 1 through 171 as if set forth fully herein.

173.    Nokia denies the allegations contained in Paragraph 173 of Apple's Counterclaims.

174.    Nokia denies the allegations contained in Paragraph 174 of Apple's Counterclaims.

## NINETEENTH CAUSE OF ACTION
### (Declaratory Judgment of Non-Infringement of the '727 Patent)

175.    Nokia restates and incorporates by reference its answers to the allegations in Paragraphs 1 through 174 as if set forth fully herein.

176.    Nokia denies the allegations contained in Paragraph 176 of Apple's Counterclaims.

177.    Nokia denies the allegations contained in Paragraph 177 of Apple's Counterclaims.

## TWENTIETH CAUSE OF ACTION
### (Declaratory Judgment of Invalidity of the '727 Patent)

178.    Nokia restates and incorporates by reference its answers to the allegations in Paragraphs 1 through 177 as if set forth fully herein.

179.    Nokia denies the allegations contained in Paragraph 179 of Apple's Counterclaims.

180.    Nokia denies the allegations contained in Paragraph 180 of Apple's Counterclaims.

## TWENTY-FIRST CAUSE OF ACTION
### (Declaratory Judgment of Non-Infringement of the '940 Patent)

181.    Nokia restates and incorporates by reference its answers to the allegations in Paragraphs 1 through 180 as if set forth fully herein.

182.    Nokia denies the allegations contained in Paragraph 182 of Apple's Counterclaims.

183.    Nokia denies the allegations contained in Paragraph 183 of Apple's Counterclaims.

## TWENTY-SECOND CAUSE OF ACTION
### (Declaratory Judgment of Invalidity of the '940 Patent)

184.    Nokia restates and incorporates by reference its answers to the allegations in Paragraphs 1 through 183 as if set forth fully herein.

185.    Nokia denies the allegations contained in Paragraph 185 of Apple's Counterclaims.

186.    Nokia denies the allegations contained in Paragraph 186 of Apple's Counterclaims.

## TWENTY-THIRD CAUSE OF ACTION
### (Declaratory Judgment of Non-Infringement of the '672 Patent)

187.    Nokia restates and incorporates by reference its answers to the allegations in Paragraphs 1 through 186 as if set forth fully herein.

188.    Nokia denies the allegations contained in Paragraph 188 of Apple's Counterclaims.

189.    Nokia denies the allegations contained in Paragraph 189 of Apple's Counterclaims.

## TWENTH-FOURTH CAUSE OF ACTION
### (Declaratory Judgment of Invalidity of the '672 Patent)

190.    Nokia restates and incorporates by reference its answers to the allegations in Paragraphs 1 through 189 as if set forth fully herein.

191.    Nokia denies the allegations contained in Paragraph 191 of Apple's Counterclaims.

192.    Nokia denies the allegations contained in Paragraph 192 of Apple's Counterclaims.

## TWENTY-FIFTH CAUSE OF ACTION
### (Declaratory Judgment of Non-Infringement of the '621 Patent)

193.    Nokia restates and incorporates by reference its answers to the allegations in Paragraphs 1 through 192 as if set forth fully herein.

194.    Nokia denies the allegations contained in Paragraph 194 of Apple's Counterclaims.

195.    Nokia denies the allegations contained in Paragraph 195 of Apple's Counterclaims.

## TWENTY-SIXTH CAUSE OF ACTION
### (Declaratory Judgment of Invalidity of the '621 Patent)

196.    Nokia restates and incorporates by reference its answers to the allegations in Paragraphs 1 through 195 as if set forth fully herein.

197. Nokia denies the allegations contained in Paragraph 197 of Apple's Counterclaims.

198. Nokia denies the allegations contained in Paragraph 198 of Apple's Counterclaims.

## TWENTY-SEVENTH CAUSE OF ACTION
### (Infringement of U.S. Patent No. 5,634,074)

199. Nokia restates and incorporates by reference its answers to the allegations in Paragraphs 1 through 198 as if set forth fully herein.

200. Nokia admits that the Counterclaims purport to attach a copy of the 074 Patent as Exhibit A. Nokia admits that the face of the 074 Patent states that it (i) is entitled "Serial I/O Device Identifies Itself To A Computer Through A Serial Interface During Power On Reset Then It Is Being Configured By The Computer" and (ii) issued on May 27, 1997. Nokia is without knowledge or information sufficient to form a belief as to whether the 074 Patent was duly and legally issued and as to any of the remaining allegations contained in Paragraph 200 of Apple's Counterclaims, and on that basis, denies the same.

201. Nokia denies the allegations contained in Paragraph 201 of Apple's Counterclaims.

202. Nokia admits that Apple identified various specific patents to Nokia prior to commencement of this lawsuit. Except as otherwise admitted, Nokia denies the allegations contained in Paragraph 202 of Apple's Counterclaims.

203. Nokia denies the allegations contained in Paragraph 203 of Apple's Counterclaims.

204. Nokia denies the allegations contained in Paragraph 204 of Apple's Counterclaims.

## TWENTY-EIGHTH CAUSE OF ACTION
### (Infringement of U.S. Patent No. 5,555,369)

205.   Nokia restates and incorporates by reference its answers to the allegations in Paragraphs 1 through 204 as if set forth fully herein.

206.   Nokia admits that the Counterclaims purport to attach a copy of the 369 Patent as Exhibit B.  Nokia admits that the face of the 369 Patent states that it (i) is entitled "Method Of Creating Packages For A Pointer-Based Computer System" and (ii) issued on September 10, 1996.  Nokia is without knowledge or information sufficient to form a belief as to whether the 369 Patent was duly and legally issued and as to any of the remaining allegations contained in Paragraph 206 of Apple's Counterclaims, and on that basis, denies the same.

207.   Nokia denies the allegations contained in Paragraph 207 of Apple's Counterclaims.

208.   Nokia admits that Apple identified various specific patents to Nokia prior to commencement of this lawsuit.  Except as otherwise admitted, Nokia denies the allegations contained in Paragraph 208 of Apple's Counterclaims.

209.   Nokia denies the allegations contained in Paragraph 209 of Apple's Counterclaims.

210.   Nokia denies the allegations contained in Paragraph 210 of Apple's Counterclaims.

## TWENTY-NINTH CAUSE OF ACTION
### (Infringement of U.S. Patent No. 6,239,795 B1)

211.   Nokia restates and incorporates by reference its answers to the allegations in Paragraphs 1 through 210 as if set forth fully herein.

212.   Nokia admits that the Counterclaims purport to attach a copy of the 795 Patent as Exhibit C. Nokia admits that the face of the 795 Patent states that it (i) is entitled "Pattern And Color Abstraction In A Graphical User Interface" and (ii) issued on May 29, 2001. Nokia is without knowledge or information sufficient to form a belief as to whether the 795 Patent was duly and legally issued and as to any of the remaining allegations contained in Paragraph 212 of Apple's Counterclaims, and on that basis, denies the same.

213.   Nokia denies the allegations contained in Paragraph 213 of Apple's Counterclaims.

214.   Nokia admits that Apple identified various specific patents to Nokia prior to commencement of this lawsuit. Except as otherwise admitted, Nokia denies the allegations contained in Paragraph 214 of Apple's Counterclaims.

215.   Nokia denies the allegations contained in Paragraph 215 of Apple's Counterclaims.

216.   Nokia denies the allegations contained in Paragraph 216 of Apple's Counterclaims.

## THIRTIETH CAUSE OF ACTION
### (Infringement of U.S. Patent No. 5,315,703)

217.   Nokia restates and incorporates by reference its answers to the allegations in Paragraphs 1 through 216 as if set forth fully herein.

218.   Nokia admits that the Counterclaims purport to attach a copy of the 703 Patent as Exhibit D. Nokia admits that the face of the 703 Patent states that it (i) is entitled "Object-Oriented Notification Framework System" and (ii) issued on May 24, 1994. Nokia is without knowledge or information sufficient to form a belief as to whether the 703 Patent was duly and

legally issued and as to any of the remaining allegations contained in Paragraph 218 of Apple's

Counterclaims, and on that basis, denies the same.

219.    Nokia denies the allegations contained in Paragraph 219 of Apple's

Counterclaims.

220.    Nokia admits that Apple identified various specific patents to Nokia prior to

commencement of this lawsuit.  Except as otherwise admitted, Nokia denies the allegations

contained in Paragraph 220 of Apple's Counterclaims.

221.    Nokia denies the allegations contained in Paragraph 221 of Apple's

Counterclaims.

222.    Nokia denies the allegations contained in Paragraph 222 of Apple's

Counterclaims.

### THIRTY-FIRST CAUSE OF ACTION
### (Infringement of U.S. Patent No. 6,189,034 B1)

223.    Nokia restates and incorporates by reference its answers to the allegations in

Paragraphs 1 through 222 as if set forth fully herein.

224.    Nokia admits that the Counterclaims purport to attach a copy of the 034 Patent as

Exhibit E.  Nokia admits that the face of the 034 Patent states that it (i) is entitled "Method And

Apparatus For Dynamic Launching Of A Teleconferencing Application Upon Receipt Of A

Call" and (ii) issued on February 13, 2001.  Nokia is without knowledge or information

sufficient to form a belief as to whether the 034 Patent was duly and legally issued and as to any

of the remaining allegations contained in Paragraph 224 of Apple's Counterclaims, and on that

basis, denies the same.

225.    Nokia denies the allegations contained in Paragraph 225 of Apple's

Counterclaims.

226.     Nokia admits that Apple identified various specific patents to Nokia prior to commencement of this lawsuit.  Except as otherwise admitted, Nokia denies the allegations contained in Paragraph 226 of Apple's Counterclaims.

227.     Nokia denies the allegations contained in Paragraph 227 of Apple's Counterclaims.

228.     Nokia denies the allegations contained in Paragraph 228 of Apple's Counterclaims.

**THIRTY-SECOND CAUSE OF ACTION**
**(Infringement of U.S. Patent No. 7,469,381 B2)**

229.     Nokia restates and incorporates by reference its answers to the allegations in Paragraphs 1 through 228 as if set forth fully herein.

230.     Nokia admits that the Counterclaims purport to attach a copy of the 381 Patent as Exhibit F.  Nokia admits that the face of the 381 Patent states that it (i) is entitled "List Scrolling And Document Translation, Scaling, And Rotation On A Touch-Screen Display" and (ii) issued on December 23, 2008.  Nokia is without knowledge or information sufficient to form a belief as to whether the 381 Patent was duly and legally issued and as to any of the remaining allegations contained in Paragraph 230 of Apple's Counterclaims, and on that basis, denies the same.

231.     Nokia denies the allegations contained in Paragraph 231 of Apple's Counterclaims.

232.     Nokia admits that Apple identified various specific patents to Nokia prior to commencement of this lawsuit.  Except as otherwise admitted, Nokia denies the allegations contained in Paragraph 232 of Apple's Counterclaims.

233.     Nokia denies the allegations contained in Paragraph 233 of Apple's Counterclaims.

234.    Nokia denies the allegations contained in Paragraph 234 of Apple's Counterclaims.

## THIRTY-THIRD CAUSE OF ACTION
### (Infringement of U.S. Patent No. 5,455,854)

235.    Nokia restates and incorporates by reference its answers to the allegations in Paragraphs 1 through 234 as if set forth fully herein.

236.    Nokia admits that the Counterclaims purport to attach a copy of the 854 Patent as Exhibit G. Nokia admits that the face of the 854 Patent states that it (i) is entitled "Object-Oriented Telephony System" and (ii) issued on October 3, 1995. Nokia is without knowledge or information sufficient to form a belief as to whether the 854 Patent was duly and legally issued and as to any of the remaining allegations contained in Paragraph 236 of Apple's Counterclaims, and on that basis, denies the same.

237.    Nokia denies the allegations contained in Paragraph 237 of Apple's Counterclaims.

238.    Nokia admits that Apple identified various specific patents to Nokia prior to commencement of this lawsuit. Except as otherwise admitted, Nokia denies the allegations contained in Paragraph 238 of Apple's Counterclaims.

239.    Nokia denies the allegations contained in Paragraph 239 of Apple's Counterclaims.

240.    Nokia denies the allegations contained in Paragraph 240 of Apple's Counterclaims.

## THIRTY-FOURTH CAUSE OF ACTION
### (Infringement of U.S. Patent No. 7,383,453 B2)

241.    Nokia restates and incorporates by reference its answers to the allegations in
Paragraphs 1 through 240 as if set forth fully herein.

242.    Nokia admits that the Counterclaims purport to attach a copy of the 453 Patent as
Exhibit H.  Nokia admits that the face of the 453 Patent states that it (i) is entitled "Conserving
Power By Reducing Voltage Supplied To An Instruction-Processing Portion Of A Processor"
and (ii) issued on June 3, 2008.  Nokia is without knowledge or information sufficient to form a
belief as to whether the 453 Patent was duly and legally issued and as to any of the remaining
allegations contained in Paragraph 242 of Apple's Counterclaims, and on that basis, denies the
same.

243.    Nokia denies the allegations contained in Paragraph 243 of Apple's
Counterclaims.

244.    Nokia admits that Apple identified various specific patents to Nokia prior to
commencement of this lawsuit.  Except as otherwise admitted, Nokia denies the allegations
contained in Paragraph 244 of Apple's Counterclaims.

245.    Nokia denies the allegations contained in Paragraph 245 of Apple's
Counterclaims.

246.    Nokia denies the allegations contained in Paragraph 246 of Apple's
Counterclaims.

## THIRTY-FIFTH CAUSE OF ACTION
### (Infringement of U.S. Patent No. 5,848,105)

247.    Nokia restates and incorporates by reference its answers to the allegations in
Paragraphs 1 through 246 as if set forth fully herein.

248.   Nokia admits that the Counterclaims purport to attach a copy of the 105 Patent as Exhibit I.  Nokia admits that the face of the 105 Patent states that it (i) is entitled "GMSK Signal Processors For Improved Communications Capacity And Quality" and (ii) issued on December 8, 1998.  Nokia is without knowledge or information sufficient to form a belief as to whether the 105 Patent was duly and legally issued and as to any of the remaining allegations contained in Paragraph 248 of Apple's Counterclaims, and on that basis, denies the same.

249.   Nokia denies the allegations contained in Paragraph 249 of Apple's Counterclaims.

250.   Nokia admits that Apple identified various specific patents to Nokia prior to commencement of this lawsuit.  Except as otherwise admitted, Nokia denies the allegations contained in Paragraph 250 of Apple's Counterclaims.

251.   Nokia denies the allegations contained in Paragraph 251 of Apple's Counterclaims.

252.   Nokia denies the allegations contained in Paragraph 252 of Apple's Counterclaims.

## NOKIA'S AFFIRMATIVE DEFENSES TO APPLE'S COUNTERCLAIMS

### First Defense (Non-Infringement)

Apple is not entitled to any relief against Nokia because Nokia has not directly or indirectly infringed any valid claim of the '074 Patent, '369 Patent, '795 B1 Patent, '703 Patent, '034 B1 Patent, '381 B2 Patent, '854 Patent, '453 B2 Patent, and '105 Patent (collectively, the "Apple Asserted Patents").

### Second Defense (Invalidity)

One or more of the claims of the Apple Asserted Patents are invalid for failing to meet one or more of the requisite statutory and decisional requirements and/or conditions for

patentability under Title 35 of the United States Code, including without limitation, §§ 101, 102, 103, and 112.

### Third Defense (Unenforceability)

One or more of the Apple Asserted Patents are unenforceable against Apple because of estoppel, laches, waiver, unclean hands, and/or other applicable equitable doctrines.

### Fourth Defense (Limitation of Damages)

Apple's right to seek damages is limited, including without limitation by 35 U.S.C. §§ 286 and 287.

### Fifth Defense (License and Patent Exhaustion)

Apple's claims for patent infringement are precluded in whole or in part (i) to the extent that any allegedly infringing products or components thereof are supplied, directly or indirectly, to Nokia by any entity or entities having express or implied licenses to the Apple Asserted Patents and/or (ii) under the doctrine of patent exhaustion.

### Sixth Defense (Waiver)

Apple has waived its right to assert that Nokia may not seek an injunction for Apple's infringement of Nokia's essential patents.

### Seventh Defense (Estoppel)

Apple is estopped from alleging that Nokia engaged in anticompetitive misconduct by failing to disclose declared-essential patents because Apple has engaged . in similar but more egregious misconduct.  Under Apple's theories asserted against Nokia in this case, Apple has improperly delayed or its disclosure or failed to disclose twelve patents that Apple believes are essential to practicing certain telecommunications standards.  Apple has deliberately delayed disclosing eleven of its purportedly essential patents until the eve of the iPhone's release, and has

yet to disclose a twelfth patent. Apple should be estopped from asserting that Nokia's alleged failure to properly disclose essential patents renders Nokia's conduct anticompetitive.

WHEREFORE, Nokia denies that that Apple is entitled to any judgment against it in any sum or sums whatsoever, including damages, punitive damages, pre-judgment interest, post-judgment interest, costs, attorneys' fees, injunctive or equitable relief, or any of the various other relief requested.

## COUNTERCLAIMS

### INTRODUCTION

1.      This is an action brought by Nokia against Apple for Apple's repudiation and/or rejection of its rights under certain undertakings Nokia made to certain standards-setting organizations ("SSO").

2.      Nokia has declared each of the Essential Patents-in-Suit[1] as essential to the GSM, or UMTS, and/or 802.11 Standards, where applicable, and undertaken – in accordance with the applicable rules of the applicable SSO – to grant licenses under each of the Essential Patents-in-Suit on fair, reasonable, and nondiscriminatory ("FRAND") terms and conditions (in some cases, alternatively referred to as "reasonable and non-discriminatory," or "RAND," terms).

3.      On the basis of Nokia's licensing commitments, Apple has the right to be granted license(s) under F/RAND terms and conditions with respect to a Standard.

4.      Nokia has complied with its obligations under the F/RAND commitments with respect to Apple (who is claiming the benefit thereof). For example, prior to filing this

---

1.      Nokia seeks remedies for Apple's infringement of Nokia's U.S. Patent Nos. 5,802,465 ("the 465 Patent"), 5,862,178 ("the 178 Patent"), 5,946,651 ("the 651 Patent"), 6,359,904 ("the 904 Patent"), 6,694,135 ("the 135 Patent"), 6,775,548 ("the 548 Patent"), 6,882,727 ("the 727 Patent"), 7,009,940 ("the 940 Patent"), 7,092,672 ("the 672 Patent"), and 7,403,621 ("the 621 Patent") (collectively, "the Essential Patents-in-Suit").

Complaint, Nokia made various offers to Apple for the F/RAND terms and conditions of a license agreement under which each of the Essential Patents-in-Suit could be licensed either individually or together with other Nokia essential patents (i.e., a portfolio license). Nokia made these offers in good faith.

5.      In its offers to Apple, Nokia has specified both a portfolio rate for a portfolio of essential patents that includes the Essential Patents-in-Suit and an average per-patent royalty rate which Apple could have accepted within a reasonable time for each of the Essential Patents-in-Suit.

6.      In its discussions with Apple, Nokia has, on more than one occasion, offered Apple terms and conditions that would not require Apple to grant Nokia a license to any Apple patents other than patents that are essential to the GSM or UMTS standards.

7.      Apple has rejected Nokia's offers for F/RAND terms and conditions both on a portfolio and on a per patent basis. Over the course of the last three years, Apple has not, among other things:

    i.      Accepted Nokia's FRAND offers;

    ii.     Paid Nokia any compensation for Apple's use of the Essential Patents-in-Suit;

    iii.    Offered to pay Nokia F/RAND compensation for Apple's use of the Essential Patents-In-Suit;

    iv.    Paid into escrow what Apple believes in good faith to be a F/RAND royalty for Apple's use of the Essential Patents-in-Suit;

    v.     Committed to pay F/RAND compensation for Apple's use of the Essential Patents-in-Suit (even subject to infringement, validity, and enforceability of the Essential Patents-in-Suit being reviewed by this Court); or

    vi.    Agreed to be bound by and pay any F/RAND royalty determination for Apple's use of the Essential Patents-In-Suit (even subject to infringement,

validity and enforceability of the Essential Patents-In-Suit being reviewed by this Court).

8.     Apple may not claim the benefit of Nokia's F/RAND commitment while simultaneously refusing to undertake any of the corresponding obligations.  Where, as here, the facts are such that a party, among other things, refuses to accept or make a F/RAND offer, refuses to participate in the negotiation process in good faith, refuses to pay royalties it deems in good faith to be F/RAND (into escrow or directly to the patentee), and refuses to even concede that it has a payment obligation with respect to valid and infringed patents that are subject to F/RAND undertakings (even where the obligation would be conditioned upon a judicial review of the patents' validity and essentiality), that party can be characterized as an unwilling licensee and has in those circumstances repudiation and/or rejection the benefits of the patent-holders F/RAND undertakings.

9.     Nokia seeks in this Counterclaim a declaration (i) that the Essential Patents-in-Suit are infringed by Apple's products complying with the respective Standards and that the Essential Patents-in-Suit are not invalid or unenforceable; (ii) that Nokia has complied with its obligations under the F/RAND undertakings by negotiating in good faith and offering and specifying F/RAND terms and conditions for the Essential Patents-in-Suit; (iii) that Apple has refused to compensate Nokia on F/RAND terms for Apple's use of the Essential Patents-in-Suit and has otherwise repudiated and/or rejected its F/RAND rights based on its conduct; and (iv) that Nokia is entitled to an injunction for Apple's infringement of the Essential Patents-in-Suit and damages for such infringement.

**PARTIES**

10.     Plaintiff Nokia is incorporated under the laws of Finland and has its principal place of business at Keilalahdentie 4, Espoo, Finland.

11.     Nokia was founded in 1865 and is the world's largest manufacturer of mobile telephones. Nokia is one of the champions of wireless cellular communications and has received numerous awards and accolades for its achievements, including introducing the first car phone on the first international cellular mobile network in 1981.

12.     Nokia's innovations continue today. In 1991, the world's first genuine call on GSM was made with a Nokia phone. In 1996, Nokia introduced the Nokia 9000 Communicator, which was the first all-in-one phone, fax, calendar, e-mail and Internet device in a hand-portable size. The Nokia 8110i, introduced in 1997, was the first mobile phone with a dynamic menu supporting Smart Messaging. Just two years later, Nokia introduced the Nokia 7110, which was the first mobile phone compliant with the Wireless Application Protocol 1.1, which provided access to mobile Internet services, such as banking, e-mail, and news, as well as the first phone with predictive text input.

13.     In 2001, Nokia made the world's first 3G WCDMA voice call on a commercial system, and launched its first imaging phone with an integrated camera, the Nokia 7650. In 2002, Nokia introduced the world's first UMTS/GSM dual mode phone, and the first Nokia phone to record video simultaneously with sound. The Nokia 5140, launched in 2003 was the first Push-to-Talk GSM handset. In 2006, Nokia introduced the N95, which was the first Nokia phone with built-in GPS.

14.     Research is one of the keys to Nokia's success. As of December 2008, Nokia had research and development presence in 16 countries and employed over 39,000 people in research and development. Such research and development led to the innovations found in the Nokia Patents-in-Suit.

15.     In the 1980s, Nokia led the charge to establish the communications protocols that are still used today.  Without Nokia's contributions and innovation, the world would not have the communications standards that it has today.  Nokia continues to be a leader in mobile communications worldwide and continues to invest millions of dollars annually in new developments in mobile communications.

16.     Upon information and belief, Defendant Apple is a corporation duly organized and existing under the laws of the state of California and has a principal place of business at 1 Infinite Loop, Cupertino, California 95014.

17.     Upon information and belief, Apple did not make telephones, much less mobile telephones, until 2007.  Apple's lack of experience in the wireless area was recently demonstrated at the 2010 Apple Worldwide Developers' Conference during the keynote address by Apple's CEO, Steve Jobs.  In demonstrating the latest version iPhone, Apple was unable to establish a wireless connection to the Internet on its flagship handset.

18.     When Apple's wireless communication devices work, they take advantage of the decades of continued investments by Nokia to build today's communication protocols and advance cellular communications.  By refusing to compensate Nokia for its patented technologies, Apple is attempting to get a "free-ride" on the billions of dollars that Nokia has invested in research and development to provide the public with the wireless communications it enjoys today.

## JURISDICTION AND VENUE

19.     The Court has jurisdiction over Nokia's declaratory judgment Counterclaim pursuant to 28 U.S.C. §§ 2201 and 2202.

20.     This Court has personal jurisdiction over Apple because Apple has established minimum contacts with the forum.  Apple manufactures (directly or indirectly through third party manufacturers)and/or assembles products that are and have been used, offered for sale, sold, and purchased in Delaware.  Apple, directly and/or through its distribution network, places wireless communication devices within the stream of commerce, which stream is directed at this district, with the knowledge and/or understanding that such products will be sold in the State of Delaware.  Therefore, the exercise of jurisdiction over Apple would not offend traditional notions of fair play and substantial justice.

21.     Apple does business in this district, including providing products that are used, offered for sale, sold, and have been purchased in Delaware.  Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b), (c), (d) and 1400(b).

## FACTUAL BACKGROUND

### The Importance of Standards

22.     The UMTS and GSM standards, as well as other mobile radio standards, were developed under the patronage of the European Telecommunications Standards Institute ("ETSI").  ETSI is a non-profit institution that was founded in 1988 through an initiative of the European Commission by several companies active in mobile communication with the objective to develop a common mobile radio standard for Europe.  Since it was founded, ETSI has grown to include approximately 700 members from 56 countries.  Among these members are virtually every company active in the mobile radio sector, who together account for a substantial share of the supply of mobile telecommunications equipment and services.  Nokia and Apple are both members of ETSI.

23.   ETSI brings important market participants in the mobile radio sector together. Within the context of ETSI, the members develop technical standards, which often lead to a factually binding industry standard.  In some cases, national or international regulatory bodies require adherence to particular ETSI standards.

24.   Many ETSI members, including Nokia, are engaged in research and development of new telecommunications technologies, and own intellectual property rights relating to different elements of such technologies.  Accordingly, when ETSI adopts technical standards, it must take into account that many elements of the standards are likely to be covered by such intellectual property rights.  Therefore, others wishing to exploit the standard may need licenses for the essential intellectual property rights to do so.  ETSI has therefore adopted an Intellectual Property Policy ("the ETSI IPR Policy") to govern the manner in which ETSI will take account of such intellectual property rights in the process leading to the adoption of ETSI standards.

25.   The ETSI IPR policy was adopted in 1994 and the policy has been part of the "ETSI Directives" since December 2004.  Its provisions are further explained in the ETSI Guide on Intellectual Property Rights.

26.   The objectives of the ETSI IPR Policy are defined in its Clause 3. Clause 3.1 provides as follows:

> It is ETSI's objective to create STANDARDS and TECHNICAL SPECIFICATIONS that are based on solutions which best meet the technical objectives of the European telecommunications sector, as defined by the General Assembly. In order to further this objective the ETSI IPR POLICY seeks to reduce the risk to ETSI, MEMBERS, and others applying ETSI STANDARDS and TECHNICAL SPECIFICATIONS, that investment in the preparation, adoption and application of STANDARDS could be wasted as a result of an ESSENTIAL IPR for a STANDARD or TECHNICAL SPECIFICATION being unavailable. In achieving this objective, the ETSI IPR POLICY seeks a balance between the needs of standardization for public use in the field of telecommunications and the rights of the owners of IPRs.

27.    In order to achieve its objectives, the ETSI IPR Policy contains rules regarding

the disclosure of essential IPR and rules regarding their licensing on FRAND terms. Members

are obligated to use their reasonable endeavors to inform ETSI of essential IPRs in a timely

manner, and voluntarily undertake to grant licenses on FRAND terms and conditions. Therefore,

ETSI allows its members to hold and benefit from any IPRs which they may own, including the

right to refuse the granting of licenses.

28.    Clause 6.1 of the ETSI IPR Policy provides:

When an essential IPR relating to a particular standard or technical specification
is brought to the attention of ETSI, the director-general of ETSI shall immediately
request the owner to give within three months an irrevocable undertaking in
writing that it is prepared to grant irrevocable licenses on fair, reasonable, and
non-discriminatory terms and conditions under such IPR to at least the following
extent . . .

29.    The ETSI IPR Policy provides that firms owning potentially essential patents will

provide undertakings of the kind envisaged by clause 6.1 of the ETSI IPR Policy preferably

before adoption of the respective standard.  If an owner of an essential IPR does not submit this

declaration, keeping its technology proprietary, alternatives are sought to the essential

technology, which would not require the infringement of the IPR, pursuant to Clause 8.1.1 of the

ETSI IPR Policy.  If no technical alternative is available, the development of the respective

standards is ceased, under Clause 8.1.2 of the ETSI IPR Policy.

30.    Pursuant to the ETSI IPR Policy, Nokia has submitted declarations for certain of

the Essential Patents-in-Suit.  For example, with respect to the 465 Patent, Nokia submitted a

declaration stating the following;

The signatory has notified ETSI that it is the proprietor of the IPRs listed above
and has informed ETSI that it believes that the IPRs may be considered
ESSENTIAL to the Standards listed above.  The SIGNATORY and/or its
AFFILIATES hereby declare that they are prepared to grant irrevocable licences
under the IPRs on terms and conditions which are in accordance with Clause 6.1

of the ETSI IPR Policy, in respect of the STANDARD, to the extent that the IPRs remain essential. ...

The construction, validity and performance of this DECLARATION shall be governed by the laws of France.

31.     Nokia has also submitted declarations with similar terms and conditions for hundreds of other Nokia patents that are essential to the GSM and UMTS standards.  In addition, Nokia submitted a general declaration to ETSI in 1997 that Nokia was willing to license on FRAND terms all of Nokia's patents that are essential to any ETSI standard.

32.     Like ETSI, the Institute of Electrical and Electronics Standards Association (IEEE-SA) is a developer of industry standards in a number of industries, including telecommunications, information technology, nanotechnology, and information assurance. Among the standards developed by IEEE-SA is IEEE 802.11, the standard for WLAN and IEEE 802.16, the standard for WiMax.

33.     Like ETSI, many IEEE-SA members, including Nokia, are engaged in the research and development of new technologies and own intellectual property rights relating to different elements of such technologies.  Accordingly, IEEE-SA has adopted a similar intellectual property policy as ETSI in the IEEE-SA Standards Board Bylaws ("IEEE-SA Bylaws").

34.     Clause 6.2 of the IEEE-SA Bylaws states that when a standard includes the use of Essential Patent Claims, a "letter of assurance" with regard to the essential patent may be requested.  That letter of assurance may include:

    . . . .

    A statement that a license for a compliant implementation of the standard will be
    made available to an unrestricted number of applicants on a worldwide basis
    without compensation or under reasonable rates, with reasonable terms and
    conditions that are demonstrably free of any unfair discrimination.  At its sole
    option, the Submitter may provide with its assurance any of the following: (i) a

not-to-exceed license fee or rate commitment, (ii) a sample license agreement, or (iii) one or more material licensing terms.

35.     Clause 6.2 of the IEEE-SA Bylaws further provides for an instance where a party providing a letter of assurance discovers additional claims that are essential to a standard:

> If, after providing a Letter of Assurance to the IEEE, the Submitter becomes aware of additional Patent Claim(s) not already covered by an existing Letter of Assurance that are owned, controlled, or licensable by the Submitter that may be or become Essential Patent Claim(s) for the same IEEE Standard but are not the subject of an existing Letter of Assurance, then such Submitter shall submit a Letter of Assurance stating its position regarding enforcement or licensing of such Patent Claims. For the purposes of this commitment, the Submitter is deemed to be aware if any of the following individuals who are from, employed by, or otherwise represent the Submitter have personal knowledge of additional potential Essential Patent Claims, owned or controlled by the Submitter, related to a [Proposed] IEEE Standard and not already the subject of a previously submitted Letter of Assurance: (a) past or present participants in the development of the [Proposed] IEEE Standard, or (b) the individual executing the previously submitted Letter of Assurance.

36.     Clause 6.2 of the IEEE-SA Bylaws also provides that a letter of assurance, once submitted, is irrevocable.

37.     Pursuant to the IEEE-SA Bylaws, Nokia has submitted letters of assurance for certain of the Essential Patents-in-Suit.  For example, with respect to the 465 Patent, Nokia submitted a letter of assurance stating the following;

> In accordance with Clause 6.2 of the *IEEE-SA Standards Board Bylaws*, the Submitter hereby declares the following: …

> The Submitter may own, control or have the right to license Patent Claims that might be or become Essential Patent Claims. With respect to such Essential Patent Claims, the submitter's licensing position is as follows: …

> The Submitter will grant a license under reasonable rates to an unrestricted number of applicants on a worldwide basis with reasonable terms and conditions that are demonstrably free of unfair discrimination.

**F/RAND**

38.     SSOs are formed to allow wide promulgation and utilization of commonly

defined standards.  These standards must be available and accessible in order to produce the

intended efficiency gains and benefits and thereby for the standardization process itself to

comply with competition law.  Intellectual Property Rights policies ("IPR Policies"), like those

described above, provide essential IPR holders committing to license on F/RAND terms with the

benefit of collecting F/RAND compensation from a far larger market than they would have

enjoyed if the protected technology had not been incorporated in the standard.  Because

competing proprietary technologies and systems have been abandoned in favor of a single,

universal, and standardized system and set of technologies, a holder of an essential IPR can

collect royalties on a large volume of standards-compliant products from a wide variety of

manufacturers worldwide.  In contrast, if the IPR holder's protected technology was only used in

one of a number of competing systems or proprietary technologies, the patent holder could only

generate returns on its R&D investments through differentiation and - if it chose to license - only

collect royalties from manufacturers who chose to market and sell products for the narrow

proprietary technology.  This is why committing to F/RAND licensing is advantageous and

rarely refused by essential IPR holders.

39.     An IPR holder that has voluntarily undertaken to license its IPRs on F/RAND

terms (instead of keeping the inventions proprietary) has irrevocably committed to allow the

standard to be implemented under its IPR on F/RAND basis and thereby waived – absent

exceptional circumstances - its legally defined right to exclude others from practicing the

standard under its IPR.  This also means that the IPR holder cannot use its hold-up power

resulting from the incorporation of its technology into the standard against willing licensees and the IPR holder's right to exclude to extort royalties that do not comply with F/RAND.

40.     Once an IPR holder has made a F/RAND commitment, all manufacturers may implement the standard in their products and use the inventions from any declared essential IPRs. There is no need to wait until all the particular F/RAND terms and conditions have been negotiated with the IPR holder or until a definitive license agreement is executed setting out those terms. However, it is clear that in return for the right to practice the standard under the essential IPRs, implementing manufacturers have the obligation to pay F/RAND compensation for the IPR used (to the extent not invalid or unenforceable). For example, according to the ETSI IPR Policy Clause 3.2:

> IPR holders whether members of ETSI and their AFFILIATES or third parties, should be adequately and fairly rewarded for the use of their IPRs in the implementation of STANDARDS and TECHNICAL SPECIFICATIONS.

41.     Save for cases where the manufacturer refuses to take a license altogether, it follows from F/RAND licensing commitments that the IPR holder has a duty to negotiate in good faith and propose F/RAND terms. Negotiations over F/RAND terms may cover the essential IPR portfolio as a whole but, if requested, F/RAND terms should be available for each patent separately.

42.     If the implementer refuses to take a license altogether or refuses to pay F/RAND compensation for valid and enforceable IPRs used by it, exceptional circumstances are present and the IPR holder may seek an injunction to prevent the implementer from continuing to manufacture standard-compliant products without payment.

**Nokia's F/RAND Commitments and Apple's Wholesale Refusal to pay F/RAND
Compensation or Negotiate in Good Faith**

43.     Nokia has irrevocably undertaken the obligation to grant license(s) on F/RAND
terms and conditions to its essential patents, including the Essential Patents-in-Suit, and Apple
has the corresponding right to claim licenses on F/RAND terms on the basis of Nokia's
undertakings.

44.     The ETSI IPR Policy is, in accordance with its Article 12 governed by the laws of
France.

45.     Under French law, Nokia's undertakings made to ETSI in writing pursuant to
Article 6.1 of the ETSI IPR Policy give manufacturers a right to a license on FRAND terms and
conditions. This takes place by a "stipulation pour autrui" where the promisor (Nokia) is bound
to the stipulator (ETSI) to the benefit of third party beneficiaries (manufacturers, such as Apple).

46.     Third parties are entitled, but never obliged, to accept the benefit of a FRAND
undertaking. However, to the extent they exercise their right to a FRAND license, they also
undertake the obligation to compensate the IPR holder on a FRAND basis (to the extent the IPR
is not invalid or unenforceable) and to negotiate the license terms in good faith.  Acting in good
faith does not only mean that both sides must deal fairly with one another, but each side must
also act in a way that facilitates the counter-party's performance of its obligations.

47.     IEEE declarations create a similar mechanism where patent holders enter into
binding relationships with IEEE for the benefit of third parties, and third parties can accept the
benefit of that relationship only if they also accept the corresponding obligations.

48.     In compliance with the declarations and undertakings which Nokia submitted with
regard to its essential patents, including the Essential Patents-in-Suit, prior to filing this
complaint Nokia has negotiated in good faith over the F/RAND licensing terms with Apple.

49.     Nokia has made various offers to Apple for the F/RAND terms and conditions of a license agreement under which Nokia's declared essential patents could be licensed either individually or in combination with other Nokia essential patents.

50.     In its offers, Nokia has defined both a portfolio rate and an average per patent royalty rate which Apple could have accepted within a reasonable time.

51.     Nokia has also provided Apple with information on the method used to calculate royalties as well as claim charts assisting Apple with its technical analysis.

52.     In its discussions with Apple, Nokia has, on more than one occasion, offered Apple terms and conditions that would not require Apple to grant Nokia a license to any Apple patents other than patents that are essential to the GSM or UMTS standards.

53.     Apple claims the benefits under Nokia's F/RAND undertakings, but has wholly failed to undertake and honor the obligations attached.

54.     Apple has repeatedly rejected Nokia's offers both on a portfolio and on a per patent basis.  Over the course of the last three years, Apple has not, among other things:

    i.     Accepted Nokia's offers of a F/RAND royalty rate;

    ii.     Paid Nokia F/RAND compensation;

    iii.     Offered to pay Nokia F/RAND compensation;

    iv.     Paid into escrow what Apple believes in good faith to be a F/RAND;

    v.     Committed to pay F/RAND compensation (even subject to validity and essentiality of the Essential Patents-in-Suit being reviewed, in case of a dispute, by a court);

    vi.     Agreed to be bound by and pay any F/RAND royalty determination (even when that FRAND royalty is reviewed by a court).

55.     Apple has continued this pattern of obstinacy even during the pendency of this lawsuit.  At the same time that it seeks to claim the benefits of Nokia's FRAND undertakings,

Apple has chosen to sit on its hands with regard to any corresponding obligations under those F/RAND undertakings.

56.     Had Apple wanted to avail itself of the benefits of the F/RAND undertaking, it could have done so.  Apple could have taken any number steps to demonstrate that it was willing to abide by its obligations.  What Apple cannot do is seek to enforce Nokia's F/RAND undertakings while refusing to compensate Nokia for its essential patents, including the Essential Patents-in-Suit.  Apple may not have its cake and eat it too.  In the present circumstances Nokia is free from its obligations under its F/RAND undertakings and is free, in particular, to seek an injunction to halt Apple's infringement of the Essential Patents-in-Suit.

### COUNTERCLAIM I
### DECLARATORY JUDGEMENT THAT APPLE HAS REPUDIATED AND/OR REJECTED THE BENEFITS OF NOKIA'S F/RAND COMMITMENT

57.     Nokia incorporates by reference the allegations set forth in Paragraphs 1-56 of its Counterclaims as though fully set forth herein.

58.     As a result of Nokia's declaration of its essential patents to ETSI and submission of an undertaking to grant licenses to its essential patents on F/RAND terms, Apple has the right to be granted a license under each of such patent on F/RAND basis.

59.     Nokia has met its obligations under its F/RAND undertakings through, among other things, the offers made by Nokia to Apple and negotiating in good faith.

60.     Apple has repudiated and/or rejected its rights under Nokia's F/RAND undertakings by, among other things, not:

      i.       Accepting Nokia's offers of a F/RAND royalty rate;

      ii.      Paying Nokia F/RAND compensation;

      iii.     Offering to pay Nokia F/RAND compensation;

iv.     Paying into escrow what Apple believes in good faith to be a F/RAND;

v.      Committing to pay F/RAND compensation (even subject to validity and essentiality of the Essential Patents-in-Suit being reviewed, in case of a dispute, by a court);

vi.     Agreeing to be bound by and pay any F/RAND royalty determination (even when that FRAND royalty is reviewed by a court).

61.     Under the present circumstances, Apple's conduct is a repudiation and/or rejection by Apple to be bound by its obligation to compensate Nokia on F/RAND terms for its use of the Essential Patents-In-Suit.

62.     Nokia seeks a declaration that by claiming the benefit of the F/RAND commitment while refusing to undertake any of the obligations, Apple is an unwilling licensee that has based on the facts of this case repudiated and/or rejected its rights associated with Nokia's F/RAND commitments.

63.     If the Court concludes that Nokia's Essential Patents-in-Suit are infringed by Apple's products complying with the respective Standards, and that the Essential Patents-in-Suit are valid and enforceable, Nokia seeks an injunction enjoining Apple from importing, making, using, selling, or offering for sale products and services embodying the claimed inventions of the Essential Patents-in-Suit.

64.     This Court's equitable powers are hereby invoked by this Count, and Nokia accordingly requests that the Court consider such other relief, equitable or otherwise, as it may find appropriate at the time for entry of judgment in this case.

## DEMAND FOR JURY TRIAL

65.     Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Nokia demands a trial by jury of this action.

## PRAYER FOR RELIEF

WHEREFORE, Nokia prays for judgment and seeks relief against Apple as follows:

(a)    For judgment that Apple's counterclaims be dismissed with prejudice;

(b)    For judgment that Apple has repudiated and/or rejected the benefit of Nokia's

F/RAND commitment and thus under the present circumstances Nokia is free to seek an

injunction for Apple's infringement of the Essential Patents-in-Suit;

(c)    If the Court concludes that Nokia's Essential Patents-in-Suit are infringed by

Apple's products complying with the respective Standards, and that the Essential Patents-in-Suit

are valid and enforceable, an injunction enjoining Apple from importing, making, using, selling,

or offering for sale products and services embodying the claimed inventions of the Essential

Patents-in-Suit; and

(d)    For such other and further relief as the Court may deem just and proper.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
1201 North Market Street
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
rsmith@mnat.com

*Attorneys for Nokia Corporation and Nokia Inc.*

OF COUNSEL:

Patrick J. Flinn
Peter Kontio
John D. Haynes
Mark A. McCarty
Adam J. Biegel
ALSTON & BIRD LLP
1201 W. Peachtree Street
Atlanta, GA  30309-3424
(404) 881-7000

July 1, 2010

## CERTIFICATE OF SERVICE

I hereby certify that on July 1, 2010, I caused the foregoing to be electronically

filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to:

> Richard L. Horwitz, Esquire
> David E. Moore, Esquire
> POTTER ANDERSON & CORROON LLP

I further certify that I caused to be served copies of the foregoing document on

July 1, 2010, upon the following in the manner indicated:

| | |
|---|---|
| Richard L. Horwitz, Esquire<br>David E. Moore, Esquire<br>POTTER ANDERSON & CORROON LLP<br>Hercules Plaza – 6th Floor<br>1313 North Market Street<br>Wilmington, DE  19801 | *VIA ELECTRONIC MAIL* |
| William F. Lee, Esquire<br>Mark D. Selwyn, Esquire<br>WILMERHALE<br>60 State Street<br>Boston, MA  02109 | *VIA ELECTRONIC MAIL* |
| Kenneth H. Bridges, Esquire<br>Michael T. Pieja, Esquire<br>WONG, CABELLO, LUTSCH, RUTHERFORD<br>  & BRUCCULERI, LLP<br>540 Cowper Street<br>Palo Alto, CA  94301 | *VIA ELECTRONIC MAIL* |

Jack B. Blumenfeld (#1014)